**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| RENUKA MISRA, | Civil Action No.: 08 CV 03231 |
| Plaintiff, | |
| v. | |
| XECHEM INTERNATIONAL, INC., | |
| Defendant. | |

**PLAINTIFF RENUKA MISRA'S OPPOSITION TO DEFENDANT XECHEM INTERNATIONAL, INC.'S MOTIONTO VACATE DEFAULT JUDGMENT**

Jeremy W. Schulman (*pro hac vice*)
Leslie G. Moylan (*pro hac vice*)
SHULMAN, ROGERS, GANDAL,
 PORDY & ECKER, P.A.
11921 Rockville Pike
Rockville, Maryland 20852

Gini Marziani, Esq.
Davis McGrath LLC
125 S. Wacker Dr.
Suite 1700
Chicago, IL 60606

August 1, 2008                    *Attorneys for Plaintiff Renuka Misra*

# TABLE OF CONTENTS

I.    Introduction…………………………………………………………………………… 1

II.   Factual Background………………………………………………………….... 3

III.  Procedural Background…………………………………….……………………… 5

IV.   Argument ……………………………………………………….................. 6

    A.  Xechem's Motion to Quash Service Is Barred by Collateral Estoppel
    And Should Be Denied …………………………………………………………8

        1.  Xechem May Not re-Litigate Service Upon Mudry………………………… 8

        2.  Even If Not Barred By Collateral Estoppel, The Motion
        To Quash Service Should Be Denied For The Same Reasons
        As in the NJ Action……………………………………………………………12

    B.  Xechem Has Not Met It High Burden For Vacating The Default Judgment………..15

        1.  Standard Review ……………………………………………..…....... 15

        2.  Xechem Does Not Have A Meritorious Defense …………………….…….. 16

            a. The Maryland District Court Properly Exercised
            Personal Jurisdiction Over Xechem………………………………… 16

            b. Xechem Has Presented No Other Meritorious Defense ………….. . 19

        3.  Xechem Can Not  Demonstrate Good Cause To Vacate The
        Default Judgment……………………………………………………… 21

        4.  Xechem Did Not Take Quick Action To Vacate the Default ……………. . 22

Conclusion ………………………………………………………………………… . 24

## TABLE OF AUTHORITIES

**Cases:**

*Baade v. Price*,
    175 F.R.D. 403 (D.D.C. 1997)……………………………………………………...…...11

*Board of Trustees, Sheet Metal Workers' Nat'l Pension Fund v. Elite Erectors, Inc.*,
    212 F.3d 1031(7th Cir. 2000) ……………………………………………………………7

*Breuer Elec. Mfg. v. Toronado Sys. of Am.*,
    687 F.2d 182 (7th Cir. 1982)………………………………………………………………15

*Burger King Corp. v. Rudzewicz*,
    471 U.S. 462 (1985)………………………………………………………………………16

*Casio Computer Co. v. Noren*,
    2001 WL 893813 (N.D. Ill. Aug.6, 2001)………………………………………………24

*Carpenters Fringe Benefits Funds of Illinois v. Royal Builders, Inc.*,
    2007 WL 404038 (N.D. Ill. Feb. 2, 2007)………………………………………………21

*Chandler Leasing Corp. v. UCC, Inc.*,
    91 F.R.D. 81 (N.D.Ill. 1981)……………………………………………………… 21, 24

*Cobin v. Rice*,
    823 F.Supp. 1419 (N.D.Ind. 1993)…………………………………………………17, 19

*Covington Industries v. Resintex A.G.*,
    629 F.2d 730 (2d Cir. 1980)……………………………………………………………7, 16

*Davis v. DNA/Fidoreo, Inc.*,
    317 N.J. Super. 92 (App. Div. 1988)…………………………………………………13

*Ellicott Mach. Corp. v. John Holland Party Ltd.*,
    995 F.2d 474 (4th Cir. 1993)……………………………………………………………16, 19

*Fuhrman v. Lividaitis*,
    611 F.2d 203 (7th Cir. 1979)………………………………………………….......6, 7

*Gomes v. Williams*,
    420 F.2d 1364 (10th Cir. 1970)…………………………………………………………21

*Hansford v. District of Columbia,*
    329 Md. 112 (1993)………………………………………………………………………… 16

*International Shoe Co. v. Washington,*
    326 U.S. 310 (1945)………………………………………………………………………… 16, 17

*Jones v. Phipps,*
    39 F.3d 158 (7th Cir. 1994)………………………………………………………………15, 23, 24

*Leadership Council for Metro. Open Communities, Inc. v. Quality Realty, Inc.,*
    1999 WL 1046431 (N.D. Ill. Nov.10, 1999)………………………………………………………24

*Madsen v. Bumb,*
    419 F.2d 4 (9th Cir. 1969)…………………………………………………………………21

*Merrill Lynch Mortg. Corp. v. Narayan,*
    908 F.2d 246 (7th Cir. 1990)………………………………………………………..… 16, 21

*Mininberg v. Kresch*
    863 F.Supp. 261 (D.Md. 1994)……………………………………………………………… 19

*Moldwood Corp. v. Stutts,*
    410 F.2d 351 (5th Cir. 1969)……………………………………………………….. 21

*O'Brien v. O'Brien,*
    998 F.2d 1394 (7th Cir. 1993)…………………………………………………………… 14

*Roman v. Zimmerman,*
    81 F. Supp 806 (N.D.N.Y. 1995)………………………………………………………... 11

*Shaffer v. Heitner,*
    433 U.S. 186 (1977)………………………………………………………………………..16

*Sullivan v. General Plumbing, Inc.,*
    2007 WL 1030236 (N.D. Ill. Mar.31, 2007)……………………………………………… 24

*Trustees of Local 478 Trucking and Allied Indus. Pension Fund v. Baron Holding Corp.,*
    224 N.J. Super. 485 (App. Div. 1988)……………………………………………………… 13

*United States ex rel Mosher Steel Co. v. Fluor Corp.,*
    436 F.2d 383 (2d Cir. 1970)………………………………………………………………7

*United States v. Mendoza,*
    464 U.S. 154 (1984)………………………………………………………………………8

*United States v. Topeka Livestock Auction, Inc.,*
  392 F.Supp. 944 (N.D.Ind.1975)……………………………………………………………… 21

*Vasile v. Dean Witter Reynolds, Inc.,*
  20 F. Supp.2d 465 (E.D.N.Y. 1008)……………………………………………………………12

*Wash. Group Int'l, Inc. v. Bell, Boyd, & Lloyd LLC,*
  383 F.3d 633 (7th Cir. 2004)……………………………………………………………………..9

*Winfield Assoc., Inc. v. Stonecipher,*
  429 F.2d 1087 (10th Cir. 1970)…………………………………………………………………..7

*WPS Energy Services, Inc. v. Ravenna Aluminum, Inc.,*
  2007 WL 1655157 (E.D. Wis. June 6, 2007)…………………………………………………….20

*Zahran v. Cleary Bldg. Corp.,*
  1999 WL 439402 (7th Cir. 1999)………………………………………………………………….8

## Statues and Rules

Md. Code (Ct. & Jud. Proc.) Ann. § 6-103(b)……………………………………………………19

Federal Rules of Civil Procedure, Rule 4(e)(1)………………………………………..……...…..12

Federal Rules of Civil Procedure, Rule 4(h)…………………………………………..…5, 8, 11, 12

Federal Rules of Civil Procedure, Rule 55(c)…………………………………………...…...…15

Federal Rules of Civil Procedure, Rule 56(e)……………………………………………………17, 19

Federal Rules of Civil Procedure, Rule 60(b)……………………………………………….7, 15

New Jersey Statutes 14A:4-1(1)…………………………………………………………..12

## Other Authorities

11 Wright & Miller, Federal Practice and Procedure: Civil § 2857 (1973) …………………….………7

**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**

RENUKA MISRA,

    Plaintiff,

  v.

XECHEM INTERNATIONAL, INC.,

    Defendant.

Civil Action No.: 08 CV 03231

**PLAINTIFF RENUKA MISRA'S OPPOSITION TO DEFENDANT XECHEM INTERNATIONAL, INC.'S MOTION TO VACATE DEFAULT JUDGMENT**

  Plaintiff Renuka Misra ("Misra"), by undersigned counsel, hereby submits this opposition to Defendant Xechem International, Inc.'s ("Xechem") Motion to Vacate Default Judgment, as Amended, to Stay Supplemental Proceedings, and for Other Relief (the "Motion").[1]

## I.  INTRODUCTION

  Xechem's extremely belated Motion is its first response to a lawsuit initiated by Misra against Xechem in the United States District Court for the District of Maryland. Despite numerous opportunities to appear and respond to the lawsuit, and publicly acknowledging the existence of the lawsuit in a public filing with the U.S. Securities and Exchange Commission, Xechem chose instead to lie in wait while Misra jumped through numerous procedural hurdles to obtain a default judgment. Misra expended valuable time and resources to obtain the judgment and seek enforcement. Now, many months after publicly acknowledging notice of the lawsuit, Xechem seeks to quash service of process in the lawsuit and vacate the default judgment.

---

[1] Xechem initially filed its motion and memorandum to vacate the default judgment, with accompanying exhibits, on July 7, 2008. Before a briefing schedule was established, Xechem filed another memorandum in support of its motion on July 23, 2008. For ease of reference, the July 7, 2008 submission is referred to herein as the "Motion," and the July 23, 2008 submission is referred to as the "Memorandum."

This is not the first time Xechem has flouted a court's rules by defaulting in a federal lawsuit.  Indeed, this appears to be Xechem's *modus operandi*.  Apart from its default here, Xechem recently defaulted in a lawsuit in New Jersey federal court, and belatedly (and unsuccessfully) appeared to quash service, submitting the exact same brief and affidavit that it submitted here in purported "support" of its Motion.  Xechem's default here is, thus, no innocent mistake.  Xechem is a frequent litigant, has a host of lawyers, and knows how the court process works.

As to the merits (*vel non*) of Xechem's Motion, Xechem cannot meet its high burden for establishing that the default judgment should be vacated, or that service of process should be quashed.  First, Xechem's motion to quash service is barred by the doctrine of collateral estoppel.  The exact same issue has already been decided adversely to Xechem in the New Jersey action.  Even if the issue were not barred by collateral estoppel, the motion still fails because, as a matter of well-settled law, the individual served in the Maryland action is so integrated with Xechem that he knew full well what to do with the litigation papers and stood in a position as to render it fair, reasonable and just to imply the authority to receive service.  Moreover, it is indisputable that Xechem had actual notice of the lawsuit.  Next, Xechem's motion to vacate the default judgment should be denied because it cannot satisfy any of the three necessary elements established by law, namely: Xechem does not have a meritorious defense, does not have good cause to vacate the default judgment, and certainly did not take quick action to vacate the default.

Accordingly, Xechem's Motion should be denied.

## II.    FACTUAL BACKGROUND

This action was brought by Misra to recover in excess of $1 million, consisting of principal and interest due and owing from Xechem pursuant to two promissory notes, the value of stock options that were granted to and exercised by Misra, overdue salary payments and work-related reimbursements, and the value of Misra's personal items converted by Xechem.  A complete recitation of the facts underlying this action can be found in the Complaint filed by Misra in the United States District Court for the District of Maryland, *Renuka Misra v. Xechem International, Inc.*, Case. No. AMD 08 DV 307 (the "Maryland Action").  (*See* Affidavit of Leslie G. Moylan, dated August 1, 2008 ("Moylan Aff.") at ¶ 3, Exhibit 2 (Complaint in the Maryland Action).)  A brief recitation of the facts relevant to Xechem's Motion is set forth below.

Xechem is a development-stage biopharmaceutical company engaged in the research, development and production of niche generic and proprietary drugs from natural sources.  (*See* Affidavit of Ramesh Pandey, dated August 1, 2008 ("Pandey Aff.") at ¶ 2.)  Misra was employed by Xechem from 1991 through 2007.  (*Id.* at ¶ 3.)  During her tenure, she held the positions of Senior Scientist and Director of Natural Products Research, and was a member of Xechem's Scientific Advisory Board since the Company went public in 1994.  (*Id.*)

In 1994, Misra, at the direction of Xechem, opened a Xechem office in Frederick, Maryland.[2]  (*Id.* at ¶ 4.)  The Frederick, Maryland office was opened because Misra was a Maryland resident and was Xechem's principal liaison with the National Institutes of Health located in Bethesda, Maryland.  (*Id.*)  Between 1994 and 2007, Xechem regularly conducted

---

[2] The Frederick, Maryland office was out of Misra's residence.  Misra, and thus Xechem's Maryland office, eventually moved to Gaithersburg, Maryland.

business out of the Maryland office.  (*Id.* at 5.)  Specifically, Misra was integral in, among many other contributions, obtaining grants for Xechem in dealing with the National Institutes of Health (NIH), contributing to the procurement of Orphan Drug Designation from the Food and Drug Administration (FDA) for NICOSAN™ (a drug developed by Xechem to treat Sickle Cell Disease), and participating in the preparation of documents on behalf of Xechem for submission to U.S. and European Union regulatory authorities.  (*Id.*)  Misra performed work in connection with these projects – including preparing and pursuing grant applications and regularly corresponding with officials from NIH, FDA, and other U.S. and foreign regulatory authorities – from Xechem's Maryland office.  (*Id.*)  Misra was entitled to, and did regularly receive, reimbursement for expenses incurred in connection with conducting regular business out of Xechem's Maryland office.  (*Id.*, Exhibit B.)

Pursuant to her employment agreement with Xechem, Misra was entitled to and (until recently) did receive an annual salary of $60,000 and a full benefits package including healthcare and retirement benefits.  (*Id.* at ¶ 7.)  All of Misra's paychecks were sent to her at Xechem's Maryland office.  (*Id.*, Exhibit C (samples of paychecks mailed by Xechem to Misra in Maryland).)  Xechem withheld portions of Misra's paychecks for, among other things, payment of Maryland payroll taxes.  (*Id.*, Exhibit D (Misra's 2007 Form W-2 wage statement).)

In addition to providing critical professional services to Xechem, beginning in 1991, Renuka Misra made a series of loans to Xechem.  (*Id.* at ¶ 8.)  These loans were eventually consolidated into one promissory note in the amount of $298,300, dated August 23, 2005 (the "First Promissory Note").  (*Id.*, Exhibit E.)  The First Promissory Note expressly obligated Xechem to make payments of principal and interest to Misra's address in Maryland, and Xechem regularly did make interest payments by mailing them to the Maryland address.  (*Id.* at ¶ 9.)

4

Misra loaned an additional $150,000 to Xechem, as evidenced by a May 1, 2005 promissory note (the "Second Promissory Note").  (*Id.* at ¶ 10, Exhibit F.)  The Second Promissory Note expressly obligated Xechem to make payments of principal and interest to Misra's address in Maryland, and Xechem regularly did make interest payments by mailing them to the Maryland address.  (*Id.* at ¶ 11, Exhibit G (evidence of interest payments from Xechem to Misra in Maryland).)

## III.    PROCEDURAL BACKGROUND

When, after written demand by Misra, Xechem did not repay the Promissory Notes and failed to issue stock, pay her overdue salary payments, work-related reimbursements, and the value of her personal items converted by Xechem, Misra initiated the Maryland Action on February 4, 2008.  (Moylan Aff. at ¶ 3.)  On February 11, 2008, service of the Complaint on Xechem was accomplished pursuant to Rule 4(h) of the Federal Rules of Civil Procedure by delivering it to Leonard Mudry ("Mudry"), Xechem's Vice President of Finance, at 379 Thornall Street, Edison, New Jersey 08837.[3]  (*See* Affidavit of James Swickle dated July 30, 2008 ("Swickle Aff.") at ¶ 6-8.)   At the time of service, Mudry expressly stated that he was authorized to accept service of process on behalf of Xechem.  (Swickle Aff. at ¶ 7.)

Having been served with the Complaint in the Maryland Action on February 11, 2008, Xechem's deadline to answer or otherwise respond to the Complaint was March 3, 2008, pursuant to Rule 4 of the Federal Rules of Civil Procedure.  In February 27, 2008, ***before Xechem's deadline to respond to the Complaint had elapsed***, Xechem publicly acknowledged that it had been sued by Misra and expressed that it was "defending" the lawsuit.  Specifically, in

---

[3] Rule 4(h) of the Federal Rules of Civil Procedure provides that service on a corporation may be accomplished "by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process."

a Form 8-K that Xechem filed with the U.S. Securities and Exchange Commission, Xechem

declared: "[Xechem] has been sued by Dr. Renuka Misra claiming breach of contract and

compensation under a consulting agreement with [Xechem].  [Xechem] is defending the action

and believes that it does not owe Dr. Misra for services not performed."  (Pandey Aff. at ¶ 13.)

Nevertheless, Xechem did not in fact answer or otherwise respond to the Complaint.  An Order

of Default was thus entered against Xechem on March 11, 2008.  (Moylan Aff. at ¶ 2 (Docket in

the Maryland Action).)  Xechem did not appear to vacate the Order of Default.  Accordingly,

Misra moved for the entry of a default judgment, which was granted after an evidentiary hearing,

and the Judgment was entered on March 31, 2008 (the "Judgment" or "Default Judgment").  (*Id.*

at ¶ 4 (March 31, 2008 Judgment).[4])  It was not until July 7, 2008 – more than three months later

and after Misra began proceedings to enforce the Judgment – that Xechem first sought to vacate

the default judgment.

## IV.    ARGUMENT

    Even if the Court proceeds to the merits (*vel non*) of Xechem's Motion,[5]

Xechem's Motion should be denied.  Xechem argues that the Default Judgment is void because

---

[4] The Judgment was later amended to correct a typographical error.  (Moylan Aff. at ¶ 2.)

[5] As the Court suggested at the July 24, 2008 initial hearing, the Court has the discretion to decide that this Motion should not be heard by this Court, but rather by the federal district court in Maryland that actually entered the Default Judgment.  Specifically, this Court has the discretion to deny Xechem's Motion on the ground that the District of Maryland would be a more convenient forum.  *See Fuhrman v. Lividaitis*, 611 F.2d 203 (7th Cir. 1979).

In *Furhman,* the plaintiff obtained a default judgment in the United States District Court for the Northern District of Iowa.  *Id.* at 204.  The plaintiff then registered the judgment in the Northern District of Illinois.  *Id.*  The defendant later appeared in the Northern District of Illinois and filed a motion for relief from judgment.  *Id.*  Recognizing that the case was a diversity suit, and that questions concerning personal jurisdiction would involve interpreting the long-arm statute of Iowa, the Northern District of Illinois (the registering court) denied the motion specifying that the court which had originally entered the judgment would be a more convenient forum.  *Id.*  In affirming the registering court's denial of the defendant's motion for relief from the default judgment, the *Furhman* court stated:

            In general, it is more convenient for motions for relief from judgment to be
            addressed to the court which entered the judgment.   The rendering court
(continued . . . )

Xechem was not properly served with the initiating documents in the Maryland Action. Xechem's sole support for this is the contention that Leonard Mudry, the individual who accepted service on behalf of Xechem, was not authorized to accept service. These arguments are totally specious. First, Xechem's argument is barred by the doctrine of collateral estoppel because the exact same argument was already raised by Xechem and decided against it in another federal district court action. Second, even if Xechem's argument is not barred by the doctrine of collateral estoppel, it must fail because service on Leonard Mudry was proper.

Xechem also argues that the Default Judgment should be vacated because the court in the Maryland Action lacked personal jurisdiction over Xechem. Xechem also (in a footnote) attempts to raise certain unintelligible "defenses" to the claims in the Maryland Action. These points are all meritless. First, the incontrovertible evidence clearly establishes that the Maryland court properly exercised personal jurisdiction over Xechem. Second, Xechem has not even come close to establishing any "meritorious defense" to the claims in the Maryland Action,

---

> ordinarily will be far more familiar with the case and with the circumstances that are said to provide grounds for relief from the judgment. Accordingly it is appropriate for the court in the district of registration to decline to pass on the motion for relief and to require the moving party to proceed in the court that gave judgment.

*Id.* at 204-05 (internal quotations omitted) (*citing, inter alia,* 11 Wright & Miller, Federal Practice and Procedure: Civil § 2857 (1973); *United States ex rel Mosher Steel Co. v. Fluor Corp.*, 436 F.2d 383 (2d Cir. 1970); *Winfield Assoc., Inc. v. Stonecipher*, 429 F.2d 1087 (10th Cir. 1970)). Not only does the Maryland action involve questions concerning personal jurisdiction that would involve interpreting the long-arm statute of Maryland (see *infra* Section IV(C)(2)(a)), but the Maryland court also is familiar with the underlying facts in the Maryland Action because it held a March 31, 2008 evidentiary hearing on damages prior to entering the Default Judgment. (Moylan Aff. at ¶ 2.) It would thus be appropriate for this Court to deny Xechem's Motion on the ground that the Maryland court would be the more appropriate forum.

For the proposition that this Court should entertain its Motion, Xechem cites, *inter alia, Covington Industries v. Resintex A.G.*, 629 F.2d 730 (2d Cir. 1980), which concluded that the registering court could grant "relief from the judgment of a foreign court of coordinate jurisdiction or in measuring the reach of [the rendering court's] long-arm jurisdiction." (Memorandum at 4.) Xechem conveniently neglects to inform the Court that the holding in *Covington* is a "minority view" that has been specifically rejected by the Seventh Circuit. *See Board of Trustees, Sheet Metal Workers' Nat'l Pension Fund v. Elite Erectors, Inc.*, 212 F.3d 1031, 1034 (7th Cir. 2000) ("This circuit is among the majority that require Rule 60(b) motions to be presented to the rendering court.") (*citing Fuhrman*, 611 F.2d at 204-05). For the foregoing reasons, this Court should deny Xechem's Motion.

that it had good cause to default, or that it timely moved to vacate the Default Judgment, each of which is an essential element for vacating a default judgment. Accordingly, Xechem's Motion should be denied.

### A.  Xechem's Motion To Quash Service Is Barred By Collateral Estoppel And Should Be Denied.

#### 1.  Xechem May Not Re-litigate Service Upon Mudry.

Xechem argues that the Judgment is void because the Complaint and initiating documents were not properly served. The sole basis for Xechem's position is the contention that Mudry, the individual upon whom service was made, "was not the agent for service of process on Xechem nor was he an officer, managing agent or a general agent under either Rule 4(h) of any other basis." Xechem is barred from raising this argument in this action, as the ***exact same argument*** was already raised by Xechem and decided against it in the United States District Court for the District of New Jersey, *Bhuwan Pandey v. Xechem International, Inc., et al.* Civil Action No. 07cv5123 (the "NJ Action"). The doctrine of collateral estoppel bars relitigation of this issue.

The doctrine of collateral estoppel (or issue preclusion) can be raised by a plaintiff not a party to a previous litigation to prevent a defendant from raising as a defense an issue that the defendant has already litigated unsuccessfully against another party. *United States v. Mendoza,* 464 U.S. 154, 158 (1984).[6] There are four specific elements to the collateral estoppel doctrine: (1) the issue is the same as one involved in a prior action; (2) the issue was actually litigated; (3) the determination of the issue was necessary to the prior judgment; and (4)

---

[6] In fact, courts have sanctioned defendants for seeking to re-litigate issues that are clearly barred by collateral estoppel. *See, e.g., Zahran v. Cleary Bldg. Corp.*, No. 97-3813, 98-2122, 1999 WL 439402, *4 (7th Cir. 1999) (affirming district court's imposition of sanctions where litigant's arguments were barred by collateral estoppel and stating "[a]ny reasonably inquiry into the matter prior to filing would surely have revealed the impediment to relitigation of this issue").

the party against whom preclusion is invoked was fully represented in the prior action.  *Wash.*

*Group Int'l, Inc. v. Bell, Boyd, & Lloyd LLC,* 383 F.3d 633, 636 (7th Cir. 2004) (applying

collateral estoppel).  Each of these elements is present in the instant action.

   First, the service issue presented here is identical to the service issue raised in the

NJ Action.  In the NJ Action, Xechem was sued by Bhuwan Pandey ("<u>B. Pandey</u>") for claims

arising out of his employment by Xechem.  (Moylan Aff. at ¶ 5.)  On October 29, 2007, just

three months before Misra commenced the Maryland Action, the complaint and summons in the

NJ Action were served by private process server at Xechem's Edison, New Jersey office (***the***

***exact same place where service was made in the instant action***).  (*Id.* at ¶ 7, Exhibit F (Zohn

Affidavit at Exhibit C).)  Service was accepted by Leonard Mudry (***the exact same individual***

***that accepted service in the instant action***), who told the process server that he was authorized

to accept service on behalf of Xechem.  (*Id.* at ¶ 9, Exhibit F (process server's affidavit).)  When

Xechem failed to answer or otherwise respond to the complaint in the NJ Action, an order of

default was entered against Xechem on April 3, 2008.  (*Id.* at ¶ 2.)  B. Pandey moved for entry of

a default judgment on May 23, 2008.  (*Id.*)

   Xechem appeared in the NJ Action, through counsel, Lois H. Goodman at

McElroy, Deutsch, Mulvaney & Carpenter, LLP, on June 6, 2008, by moving to quash service

and to dismiss the complaint.  (*Id.* at ¶ 9, Exhibit H (Motion to Quash Service and Vacate

Default).)  In moving to quash service in the NJ Action, Xechem argued that Leonard Mudry,

upon whom service of process was made, was "at the time in question an outside consultant to

Xechem, not an employee" and "not an officer, director, or authorized agent" (Motion to Quash

Service and Vacate Default at 1), ***the exact same argument now raised by Xechem in the***

***Motion in the instant action***.  (*See* Motion at 1.)  In support of this argument in the NJ Action,

Xechem submitted an Affidavit of Leonard Mudry (***the exact same affidavit submitted in the instant action***).  (Moylan Aff. at ¶ 6, Exhibit E.)  In his affidavit in the NJ Action, Mudry makes the following statements:

>    •    Since the year 2000, I have not been an officer or agent authorized to receive process or summons on behalf of Xechem International, Inc., a Delaware Corporation.

>    •    From time to time I performed individual contracts for the benefit of Xechem International, Inc.

>    •    I was never authorized to receive any summons or other process served on behalf of Bhuwan Pandey or any other person.

>    •    I am not now and have never been the registered agent of Xechem International, Inc.

(*Id*.)  The foregoing statements by Mudry in his affidavit in the NJ Action are ***the exact same statements made by Mudry in his affidavit accompanying the Motion in the instant action***.

(*See* Affidavit of Leonard Mudry dated June 15, 2008 ("Mudry Aff.") at ¶¶ 1-5.)  Thus, the service issue in the NJ Action is the exact same as the service issue in the instant action, which satisfies the first element of collateral estoppel.

Second, the service issue was actually litigated in the NJ Action.  B. Pandey's opposition to Xechem's motion to quash service in the NJ Action pointed out that Mudry's affidavit contained materially misleading statements:

>    Mr. Mudry states in his affidavit that "[s]ince the year 2000, I have not been an officer or agent authorized to receive process or summons on behalf of Xechem."  Mr. Mudry neglects to mention that ***he was appointed as a director of the company in 2004***.  Mr. Mudry also neglects to mention that as recently as 2006, ***he was performing duties for the company that included acting as inspector of elections at the annual Shareholders Meeting***. Additionally, while Mr. Mudry denies that he is authorized to receive service for any individuals . . . or that he is the registered agent for Xechem (Xechem apparently doesn't have a registered

10

agent) he does not mention that ***he, in fact, said he was so authorized***.

(Moylan Aff. at ¶ 10, Exhibit I (emphasis added) (citations omitted).)  B. Pandey's opposition further pointed out that Xechem had actual notice of the lawsuit, as evidenced by an October 29, 2007 Form 8-K disclosing the NJ Action that Xechem publicly filed with the Securities and Exchange Commission.  (*Id.*)

Moreover, a hearing on Xechem's motion to quash service in the NJ Action was held on July 23, 2008 before the Honorable Peter G. Sheridan.  (*Id.* at ¶ 11, Exhibit 11 (Hearing Transcript).)  During the hearing, the Court considered the comments to Federal Rule 4(h) in making its determination that service on Mudry was proper:

> I should say there is a case *Baade v. Price*, 175 F.R.D. 403, 405 (D.D.C. 1997).  Holding, 'Generally persons served must have some degree of discretion in operating some phase of defendant's business or in the management of a given office must have such status that common sense would expect that person to see that summons promptly gets into the hands of appropriate personnel and must be working for the company at the same time of service.'  That's *Roman v. Zimmerman*, 81 F. Supp 806 (N.D.N.Y. 1995).

(*Id.* at 9:1-9.)  In denying Xechem's motion to quash service, the Court further stated:

> My view in this case is that since Mr. Mudry, is it, was a former employee and officer and is currently a consultant to the company, although he's not an employee, he was definitely at their place of business.  It seems that the process service thought he had some degree of control, would make certain that people there would, appropriate person would be given notice of the lawsuit . . . .  ***[I]t seems to me that service was effectuated and the corporation knows of the lawsuit and that the defendant should answer the suit***.

(*Id.* at 9:10-20.) (Emphasis added.)  The court in the NJ Action entered an order on June 23, 2008 denying Xechem's motion to quash service.  (Moylan Aff. at ¶ 5, Exhibit D.)  Thus, the service issue in the NJ Action was actually litigated.

11

Finally, the remaining elements of the collateral estoppel doctrine are also easily satisfied. As shown above, resolution of the service issue was necessary to the court's order denying Xechem's motion to quash service. Additionally, Xechem's interest was fully represented in the NJ Action by counsel at McElroy, Deutsch, Mulvaney & Carpenter, LLP.

Accordingly, all of the elements of collateral estoppel are satisfied, and the same issue now raised by Xechem in the instant action is necessarily barred. *Cf. Vasile v. Dean Witter Reynolds, Inc.*, 20 F. Supp.2d 465, 494 (E.D.N.Y. 2008) (litigant was precluded under doctrine of collateral estoppel from challenging validity of service of process because the issue had already been decided in a state court).

**2.      Even If Not Barred By Collateral Estoppel, The Motion To Quash Service Should Be Denied For The Same Reasons As In The NJ Action.**

Even if the issue of the validity of service of process via Mr. Mudry were not barred by collateral estoppel (which it is), Xechem's Motion to Quash Service should be denied for the same reasons as in the NJ Action, and for the additional reasons stated below.

Rule 4(h) of the Federal Rules of Civil Procedure provides that service of process shall be made "by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or to any other agent authorized by appointment or by law to receive service of process." Additionally, Rule 4(e)(1) provides that service may be made "pursuant to the law of the state in which the district court is located, or in which service is effected," *i.e.*, New Jersey. At the time of service of the Complaint in the Maryland Action, Xechem was not in compliance with the laws of New Jersey requiring corporations to maintain a registered office in New Jersey with a registered agent to accept service of process. N.J.S. 14A:4-1(1). (Moylan Aff. at ¶ 7 (Zohn Affidavit at Exhibit C, ¶ 3).)

12

Where, as here, service on a registered agent of a corporation is impossible, plaintiffs can effect service of process by delivery of the papers to individuals other than the agent authorized by appointment. The New Jersey courts have held that "the representative should be so integrated with the organization that he will know what to do with the papers and that he or she should stand in a position as to render it fair, reasonable and just to imply the authority to receive service." *Trustees of Local 478 Trucking and Allied Indus. Pension Fund v. Baron Holding Corp.*, 224 N.J. Super. 485, 490 (App. Div. 1988) (service was properly made upon a receptionist, where the receptionist represented to the server that she was authorized to accept service); *Davis v. DNA/Fidoreo, Inc.*, 317 N.J. Super. 92 (App. Div. 1988) (effective service was made on an assistant manager of a corporate bank defendant, at a branch office of the parent company).

For more than a decade, Mudry has had extremely close ties with Xechem. In 1994 Mudry became the first Vice President of Finance of Xechem, and later became a member of the Board of Directors. (Pandey Aff. at ¶ 14.) Mudry later became a Senior Vice President of Xechem. (*Id.*) As in his affidavit in the NJ Action, contrary to the assertion that Mudry has not been an officer or agent of Xechem since 2001 (Mudry Aff. at ¶ 2), Mudry was appointed as a director of Xechem in 2004. (Moylan Aff. at ¶ 7 (Zohn Affidavit at Exhibit E.) Regardless of his title with Xechem, it is indisputable that Mudry is extremely integrated with Xechem. (Panday Aff. at ¶ 14.) In his current position, Mudry oversees Xechem's accounting operations. (*Id.*) Additionally, Mudry reviews Xechem's filings with the U.S. Securities and Exchange Commission, including Xechem's Form 8-Ks and 10-Ks. (*Id.*) Mudry is in constant contact with the officers and members of the Board of Directors of Xechem, including Stephen Burg and

13

Robert Swift.  (*Id.*)  Mudry is also in frequent contact with Xechem's stock transfer agent and its corporate attorney, Mitchell Goldsmith.  (*Id.*)

Further, similar to the NJ Action, when the private process server arrived at Xechem and asked to speak to an officer or authorized agent of the company, Mudry appeared and identified himself as an individual authorized to accept service on behalf of Xechem. (Swickle Aff. at ¶ 7.)  Indeed, Mudry signed an acknowledgement on the private process server's "work papers," which expressly states: "***I am authorized to accept all legal process on behalf of the intended recipient***."  (*Id.*)  Moreover, a secretary at Xechem informed the private process server that Mudry was the Vice President of Finance for Xechem.  (*Id.* at ¶ 8.)  The private process server's signed return of service is consistent with the foregoing.  (Swickle Aff. at Exhibit B.)  A signed return of service constitutes prima facie evidence of valid service which may be overcome only by ***strong and convincing*** evidence.  *O'Brien v. O'Brien*, 998 F.2d 1394, 1398 (7th Cir. 1993) (affirming district court's refusal to set aside default order and subsequent default judgment).  Here, Xechem's submission of two self-serving affidavits (the facts of which have already been rejected by another United States District Court) does not constitute the requisite "strong and convincing evidence" to overcome the presumptive validity of the service of process on Xechem.

Additionally, as with the NJ Action, Xechem acknowledged actual notice of this action in the February 27, 2008 Form 8-K that Xechem filed with the U.S. Securities and Exchange Commission, The Form 8-K disclosed that "[Xechem] has been sued by Dr. Renuka Misra claiming breach of contract and compensation under a consulting agreement with [Xechem].  [Xechem] is defending the action and believes that it does not owe Dr. Misra for services not performed."  (Pandey Aff. at ¶ 13.)

14

In light of all of the foregoing, Xechem should not be heard to complain about service and notice of the Maryland Action.  Xechem failed to maintain a registered agent.  The individual served with process, Mudry, is extremely integrated with Xechem.  Mudry specifically told the process server that he was authorized to accept service.  Xechem acknowledged the existence of the Maryland Action before its response was due.  Accordingly, Xechem's Motion to Quash Service should be denied.

**B.    Xechem Has Not Met Its High Burden For Vacating The Default Judgment.**

**1.    Standard of Review**

In order to vacate a default judgment, the moving party has the burden to show: (1) the existence of a meritorious defense to the original complaint; (2) good cause for the default; and (3) *Jones v. Phipps,* 39 F.3d 158, 162 (7th Cir. 1994) (denying motion to vacate default judgment).  While the tests are identical under either Rule 55(c) (for motions to vacate an entry of default) or Rule 60(b) (for motions to vacate a default judgment), "respect for the finality of judgments results in the application of the test under Rule 60(b) circumstances – where a default *judgment* has been entered – to be much more limited and stringent."  *Id.* (emphasis in original) (*citing Breuer Elec. Mfg. v. Toronado Sys. of Am.,* 687 F.2d 182, 187 (7th Cir. 1982).  The standard "establishes a high hurdle for parties seeking to avoid default judgments and requires something more compelling than ordinary lapses of diligence or simple neglect to justify disturbing a default judgment."  *Jones,* 39 F.3d at 162 (emphasis added).  As set forth below, Xechem fails to meet its exceptionally high burden with respect to each of the three necessary elements for vacating the default judgment.  Xechem's Motion should therefore be denied.

2.     **Xechem Does Not Have A Meritorious Defense.**

The Seventh Circuit has held that a motion for default judgment is insufficient if it lacks a grounding in facts which would support a meritorious defense of the action by the non-moving party. *Merrill Lynch Mortg. Corp. v. Narayan,* 908 F.2d 246, 252 (7th Cir. 1990). Here, Xechem's Motion does not set forth a meritorious defense based on lack of personal jurisdiction or otherwise.[7]

a.     **The Maryland District Court Properly Exercised Personal Jurisdiction Over Xechem.[8]**

Maryland's long-arm statute permits the exercise of personal jurisdiction to the limits permitted by federal due process. *See Hansford v. District of Columbia,* 329 Md. 112, 128 n. 7, 617 A.2d 1057, 1064 n. 7 (1993). Thus, the only inquiry for the Court is whether Xechem has sufficient "minimum contacts" with Maryland such that the maintenance of the suit in Maryland does not offend "traditional notions of fair play and substantial justice." *See International Shoe Co. v. Washington,* 326 U.S. 310, 316 (1945); *Ellicott Mach. Corp. v. John Holland Party Ltd.,* 995 F.2d 474, 477 (4th Cir. 1993). The crucial issue is whether Xechem's contacts with Maryland are substantial enough that it reasonably could "expect to be haled before a [Maryland] court." *Shaffer v. Heitner,* 433 U.S. 186, 216 (1977). A defendant has fair warning that he might be subject to a forum's jurisdiction if he purposefully directs his activities at forum residents and "the litigation results from alleged injuries that 'arise out of or relate to' those

---

[7] It is unclear whether Xechem seeks to establish as a "meritorious defense" that alleged improper service on Xechem (discussed at Section IV(A) *supra*) is a basis for its argument that the Maryland court lacked personal jurisdiction over Xechem.

[8] Xechem does not clearly state in the Motion that its argument as to lack of personal jurisdiction constitutes a "meritorious defense." However, we address this argument here as the Court would necessarily first have to decide that Xechem has a meritorious defense related to lack of personal jurisdiction before entertaining any motion to dismiss the Complaint on such grounds.

16

activities." *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 472 (1985) (internal citations

omitted).  As set forth below, Xechem clearly had a multiplicity of contacts with Maryland that

are more than sufficient to satisfy the "minimum contacts" test.

       To support its argument that Xechem lacked the necessary minimum contacts

with Maryland In contesting personal jurisdiction, Xechem relies entirely on an affidavit

submitted by the purported "Corporate Secretary" of Xechem, Stephen Burg.  (*See* Affidavit of

Stephen Burg dated June 13, 2008 ("Burg Aff.").)  Burg states that Xechem "***has*** no offices in

the State of Maryland," "***has*** no bank accounts or other property in the State of Maryland," "has

never had a telephone listing in the State of Maryland," "has never had any public relations in the

State of Maryland," "***has*** no employees or other persons employed by Xechem International

located in the State of Maryland," and "has not had a continuous or systematic business within

the State of Maryland" (Burg. Aff. at ¶¶ 2-7).  These statements, at best, are highly misleading

and in no way supportive of Xechem's Motion.[9]  Whether or not Xechem currently "***has***"

offices, bank accounts, or employees in Maryland, it is irrefutable that Xechem had an office and

senior employee in Maryland for a period of more than 15 years.  Thus, personal jurisdiction

unquestionably exists in Maryland.  *International Shoe Co. v. Washington,* 326 U.S. 310, 320, 66

S.Ct. 154, 160 (1945) (holding that the activities of the defendant "throughout the years in

question" established sufficient minimum contacts with the state.)

---

[9] Additionally, Misra hereby moves to strike the statement in the Burg Affidavit that Xechem "has not had a continuous or systematic business with the State of Maryland" because it inappropriately presents a legal conclusion.  *Cobin v. Rice*, 823 F.Supp. 1419, 1432 (N.D.Ind. 1993) (striking portions of a witness affidavit as inadmissible because witnesses not permitted to present legal argument, and legal conclusions are insufficient to "set forth facts as would be admissible in evidence" as required by Rule 56(e) of the Federal Rules of Civil Procedure).

Specifically, Misra, at the direction of Xechem, opened a Xechem office in Frederick, Maryland. (Pandey Aff. at ¶ 4.) Indeed, Xechem had business cards printed that listed the address and phone number for its office in Frederick, Maryland. (*Id.*) The Frederick, Maryland office was opened because Misra was a Maryland resident and was Xechem's principal liaison with the National Institutes of Health (located in Bethesda, Maryland). (*Id.*) Between 1994 and 2007, Xechem regularly conducted business out of the Maryland office. (*Id.* at ¶ 5.) Misra was integral in, among many other contributions, obtaining grants for Xechem in dealing with the National Institutes of Health (NIH), contributing to the procurement of Orphan Drug Designation from the Food and Drug Administration (FDA) for NICOSAN™ (a drug developed by Xechem to treat Sickle Cell Disease), and participating in the preparation of documents on behalf of Xechem for submission to U.S. and European Union regulatory authorities. (*Id.*) Misra performed work in connection with these projects – including preparing and pursuing grant applications and regularly corresponding with officials from NIH, FDA, and other U.S. and foreign regulatory authorities – from Xechem's Maryland office. (*Id.*) Moreover, Misra was entitled to, and did regularly receive, reimbursement for expenses incurred in connection with conducting regular business out of Xechem's Maryland office. (*Id.* at ¶ 6.) All of Misra's paychecks were sent to her at Xechem's Maryland office. (*Id.* at ¶ 7.) Xechem withheld portions of Misra's paychecks for, among other things, payment of Maryland payroll taxes. (*Id.*) That Xechem maintained an office, regularly conducted business in Maryland, and employed Misra in Maryland alone establishes Xechem's minimum contacts with Maryland.

Burg also states in his affidavit that Xechem "was never served with a copy of a summons and complaint in this cause while physically present in the State of Maryland." (Burg Aff. at ¶ 8.) It is not necessary that the defendant ever actually enter the forum state's territory to

18

accept service of process; so long as the defendant has purposefully directed his activities toward the forum state, and the litigation arises from those activities, due process is satisfied.  *Ellicott Mach. Corp.*, 995 F.2d at 476 ("[W]e have consistently rejected the notion that an absence of physical contacts can defeat personal jurisdiction.").

Additionally, Burg states in his affidavit that Xechem "has not breached any fiduciary duty within the State of Maryland."  (Burg Aff. at ¶ 9.)  This statement is irrelevant, not only because Misra has not stated a claim for breach of fiduciary duty in the Complaint, but also because the statement is a legal conclusion that is inappropriate and inadmissible as testimony by a lay witness.  *See Cobin*, 823 F.Supp. at 1432 (striking portions of a witness affidavit as inadmissible because witnesses not permitted to present legal argument, and legal conclusions are insufficient to "set forth facts as would be admissible in evidence" as required by Rule 56(e) of the Federal Rules of Civil Procedure).

Finally, there exist numerous other facts establishing that Xechem had sufficient minimum contacts with Maryland such that the exercise of personal jurisdiction over Xechem by the Maryland court of Xechem was proper.  Importantly, both Promissory Notes were executed by Misra in Maryland and expressly obligated Xechem to make (and indeed Xechem did make) payments to Misra's address in Maryland.  (Pandey Aff. at ¶ 8-12.)  These additional facts alone are sufficient to justify the Maryland court's exercise of personal jurisdiction over Xechem.[10] *See Mininberg v. Kresch*, 863 F.Supp. 261, 263 (D.Md. 1994) (nonresident defendant's execution of promissory note expressly obligating payment to Maryland resident inside state of Maryland and payments made on note over extended period in Maryland were sufficient to

---

[10] These facts also more than satisfy Maryland's long-arm  statute, which provides that "[a] court may exercise personal jurisdiction over a person, who directly or by an agent: (1) Transacts any business or performs any character of work or service in the State."  Md. Code (Ct. & Jud. Proc.) Ann. § 6-103(b).

justify exercise of jurisdiction under Maryland's long arm statute).  Thus, the Maryland court

properly exercised personal jurisdiction over Xechem.

### b.    Xechem Has Presented No Other Meritorious Defense.

The only other "defense" that Xechem expressly attempts to raise in the Motion is

the vague, ambiguous, conclusory, and essentially unintelligible statement that "the transactions

claimed were never achieved and Plaintiff has established no rights thereunder."  (Motion at 3.)

In a footnote in the introductory statement to the Memorandum, Xechem feebly attempts to raise

other defenses by stating:

> Xechem has ***various*** meritorious defenses to the allegations
> of the Complaint, and should be allowed to establish those
> defenses.  Specifically, Xechem intends to show, ***inter alia***, that (1)
> the employment agreement between Plaintiff and Xechem was
> terminated by Xechem for cause and as such, Plaintiff is not
> entitled to the relief sought in the Complaint, and (2) Plaintiff
> failed to properly exercise certain stock options within the
> parameters of the appropriate agreements."

(Memorandum at 2, fn.1.) (Emphasis added.)  This generic, non-specific footnote cannot

possibly be the basis for establishing a "meritorious defense."  Not only does Xechem fail to

enumerate any specific facts to support its so-called "defenses" to the Complaint, but also

Xechem half-heartedly alludes to "various" other unspecified defenses.  It is impossible for

Misra (or the Court) to divine from Xechem's ambiguous footnote the factual predicate (if any)

for Xechem's purported defenses, much less what the "various" other defenses might entail,

which prevents Misra from being able to refute the purported "defenses."

A purported defense can only be "meritorious" if it "at least raises a ***serious question***

regarding the propriety of a default judgment and which is ***supported by a developed legal and***

***factual basis***."  *WPS Energy Services, Inc. v. Ravenna Aluminum, Inc.* No. 07-C-76, 2007 WL

1655157 #3-4 (E.D.Wis. June 6, 2007) (denying motion to vacate default judgment) (*citing*

*Jones* 39 F.3d at 165). The Seventh Circuit has held that a motion for default judgment is insufficient if it lacks a grounding in facts which would support a meritorious defense of the action by the non-moving party. *See Merrill Lynch,* 908 F.2d at 252. It is well settled that general denials and conclusory statements are insufficient to establish a meritorious defense; ***the movant must present a factual basis for its claim***." *Chandler Leasing Corp. v. UCC, Inc,*. 91 F.R.D. 81, 84 (N.D.Ill. 1981) (emphasis added) (citing *Gomes v. Williams*, 420 F.2d 1364 (10th Cir. 1970); *Madsen v. Bumb*, 419 F.2d 4 (9th Cir. 1969); *Moldwood Corp. v. Stutts*, 410 F.2d 351 (5th Cir. 1969); *United States v. Topeka Livestock Auction, Inc*., 392 F.Supp. 944 (N.D.Ind. 1975)). Xechem's vague, ambiguous, conclusory, and essentially unintelligible statement in the Motion and generic, non-specific footnote in the Memorandum presents absolutely no factual basis for a "meritorious defense" and falls far short of raising a serious question regarding the propriety of the Default Judgment. For these reasons, Motion should be denied.

### 3. Xechem Can Not Demonstrate Good Cause To Vacate The Default Judgment.

Next, Xechem shows no good cause for its default. The concept of "willful neglect" plays an important role in determining whether to grant a party relief from a judgment of default. *Carpenters Fringe Benefits Funds of Illinois v. Royal Builders, Inc.,* No. 05 C 1731, 2007 WL 404038, *4 (N.D. Ill. Feb. 2, 2007) (denying motion to vacate default judgment where there was no good cause for the default). "The Seventh Circuit has little sympathy for defendants who willfully refuse to play by the rules." *Id.*

Xechem states in its motion that the "lack of attention to this matter was not willful and there was no attempt, nor has it ever been claimed that there was an attempt to thwart judicial proceedings or a reckless disregard for the conduct of those proceedings." (Motion at 3.) This statement could not be further from the truth. One would be hard pressed to find conduct

that is more "willful" and in "reckless disregard for the conduct of those proceedings" than having actual notice of a lawsuit and choosing to ignore it.  As stated above, Xechem acknowledged that it had actual notice of this action as early as February 27, 2008 in a Form 8-K that it filed with the U.S. Securities and Exchange Commission. The Form 8-K disclosed that "[Xechem] has been sued by Dr. Renuka Misra claiming breach of contract and compensation under a consulting agreement with [Xechem].  [Xechem] is defending the action and believes that it does not owe Dr. Misra for services not performed."  (Pandey Aff. at ¶ 13.)  Despite this actual notice, and the false statement to the public that Xechem was in fact defending the action, Xechem chose not to appear in the Maryland action (even to contest the validity of service or assert lack of personal jurisdiction).  Because Xechem does not, and cannot, show good cause for its default, the Motion should be denied.

### 4.     Xechem Did Not Take Quick Action To Vacate The Default.

For similar reasons as those stated above, Xechem has not demonstrated that it took quick action to vacate the Default Judgment.  Xechem makes only the blanket statement, with zero supporting facts, that "Xechem has been timely in presenting this Motion in good faith to vacate the Judgment."  (Motion at 3.)  Not so.

Xechem was served in this action on February 11, 2008.  (Swickle Aff. at Exhibit B.)  Xechem's response was thus due on March 3, 2008.  Despite acknowledging that existence of the lawsuit in its February 27, 2008 Form 8-K filed with the Securities and Exchange Commission (Pandey Aff. at ¶ 13), Xechem did not answer or otherwise respond to the Complaint.  An Order of Default was thus entered against Xechem on March 11, 2008.  (Moylan Aff. at ¶ 2.)  Xechem did not appear to vacate the Order of Default.  Accordingly, Misra moved for the entry of a default judgment, which was granted, and the Judgment was entered on March

22

31, 2008.  (*Id.*)  It was not until July 7, 2008 – more than three months later – after Misra began proceedings to enforce the Judgment, that Xechem finally appeared to vacate the default judgment.  Given Xechem's actual knowledge of the lawsuit as of at least February 27, 2008, it can hardly argue that waiting until July 7, 2008 constitutes quick action to vacate the default judgment.  *See Phipps*, 39 F.3d at 165 (denying motion to vacate default judgment where "more than a month elapsed while the defendant was fully aware of the judgment against her and while she was quite capable of securing counsel to rectify the problem").

Furthermore, Xechem ignored numerous opportunities to appear in the Maryland action, even if only to contest service and/or personal jurisdiction.  Xechem could have moved to dismiss the Complaint (of which Xechem's actual knowledge cannot be disputed) on or before March 3, 2008, but it did not.  Xechem could have moved to vacate the Entry of Default after March 11, 2008 and before the March 31, 2008 Default Judgment was entered, but it did not.  Xechem could have appeared at the March 31, 2008 damages hearing, but it did not.  Xechem could have contested the judgment in Maryland while Misra was waiting for the Maryland court to issue a certified judgment under 28 U.S.C. § 1963, but it did not.  Instead, Xechem lurked in the shadows while Xechem jumped through numerous procedural hoops and expended valuable time and resources in investigating the existence and location of Xechem's assets and hiring local counsel in New York and Illinois to assist with registering and enforcing the Default Judgment.  Xechem is a seasoned litigant and, indeed, the NJ Action was pending at the same time as the Maryland Action and Xechem had counsel and access to the electronic dockets for the United States District Courts.  With actual knowledge of the Maryland Action as early as February 27, 2008, Xechem clearly was readily able to appear and contest the lawsuit before it reached the point of enforcement proceedings, but ***it did not***.

23

Courts have held that a plaintiff could not establish quick action to correct a default judgment where they did not act for three weeks, *Sullivan v. General Plumbing, Inc.,* No. No. 06 C 2464, 2007 WL 1030236, *4 (N.D. Ill. Mar.31, 2007), five weeks, *Phipps,* 39 F.3d at 165, seven weeks, *Casio Computer Co. v. Noren,* No. OO C 1428, 2001 WL 893813, *5 (N.D. Ill. Aug.6, 2001), two months, *Chandler Leasing Corp. v. UCC, Inc.,* 91 F.R.D. 81, 84 (N.D. Ill.1981), or three months, *Leadership Council for Metro. Open Communities, Inc. v. Quality Realty, Inc.,* No. 98 C 7853, 1999 WL 1046431, *2-3 (N.D. Ill. Nov.10, 1999), after the entry of default.  Under different circumstances, perhaps a more than three month delay could constitute quick action.  Here, though, given the uncontroverted evidence that Xechem had actual knowledge of the lawsuit before even its response was due, and since Xechem provides no explanation for its failure to move to set aside the default judgment, its more than three month delay cannot possibly be considered quick action. Accordingly, Xechem is not entitled to relief from the default judgment and the Motion should be denied.

## V.    CONCLUSION

For the foregoing reasons, Misra respectfully requests that the Court deny Xechem's Motion.

Dated: August 1, 2008                     Respectfully submitted,


                                          SHULMAN, ROGERS, GANDAL,
                                           PORDY & ECKER, P.A.


                                          _____/s/_____
                                          Jeremy W. Schulman (*pro hac vice*)
                                          Leslie G. Moylan (*pro hac vice*)
                                          11921 Rockville Pike
                                          Rockville, Maryland 20852
                                          (301) 230-5200

                                          *Attorneys for Plaintiff Renuka Misra*

24

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this 1st day of August, 2008, a copy of the foregoing was served via the Court's Electronic Case Filing System on:

Kenneth A. Henry, Esq.
Attorney for Xechem
One North LaSalle, Suite 2200
Chicago, Illinois 60602-3912


<u>      /s/                </u>
Leslie G. Moylan