## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| RENUKA MISRA | Civil Action No.: 08 CV 03231 |
| Plaintiff, | **AFFIDAVIT OF LESLIE G. MOYLAN** |
| v. | |
| XECHEM INTERNATIONAL, INC., | |
| Defendant. | |

1.      I am over the age of twenty-one years, and am competent to state under oath all of the following, of which I have personal knowledge.

2.      Attached hereto as Exhibit A is a true and correct copy of a printout of the electronic docket in the United States District Court for the District of Maryland, *Renuka Misra v. Xechem International, Inc.*, Case. No. AMD 08 DV 307 (the "Maryland Action").

3.      Attached hereto as Exhibit B is a true and correct copy of the Complaint filed by Renuka Misra ("Misra") against Xechem International, Inc. ("Xechem") in the Maryland Action.

4.      Attached hereto as Exhibit C is a true and correct copy of the March 31, 2008 Judgment entered in the Maryland Action.

5.      Attached hereto as Exhibit D is a true and correct copy a printout of the electronic docket in the United States District Court for the District of New Jersey, *Bhuwan Pandey v. Xechem International, Inc., et al.* Civil Action No. 07cv5123 (the "NJ Action").

6.      Attached hereto as Exhibit E is a true and correct copy of the Affidavit of Leonard Mudry dated May 28, 2008 in the NJ Action.

7.      Attached hereto as Exhibit F is a true and correct copy of the Certification of Patricia Mullon Zohn (counsel to Bhuwan Pandey) dated June 17, 2008 in the NJ Action.

8.     Attached hereto as Exhibit G is a true and correct copy of the Certification of Marion Zwierzynski (the process server that served Xechem in the NJ Action) dated June 17, 2008.

9.     Attached hereto as Exhibit H is a true and correct copy of the brief in support of the Motion to Quash Service and Vacate Default filed by Xechem in the NJ Action.

10.     Attached hereto as Exhibit I is a true and correct copy of Bhuwan Pandey's opposition to Xechem's Motion to Quash Service and Vacate Default.

11.     Attached hereto as Exhibit J is a true and correct copy of the transcript of the June 23, 2008 proceedings held before the honorable Peter G. Sheridan in the NJ Action.

I DECLARE UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT.

Executed on:   8/1/08

_____
Leslie G. Moylan

# EXHIBIT

# A

CLOSED

# U.S. District Court
## District of Maryland (Baltimore)
## CIVIL DOCKET FOR CASE #: 1:08-cv-00307-AMD

Misra v. Xechem International, Inc.
Assigned to: Judge Andre M Davis
Demand: $1,100,000
Cause: 28:1332 Diversity-Breach of Contract

Date Filed: 02/04/2008
Date Terminated: 03/31/2008
Jury Demand: Plaintiff
Nature of Suit: 190 Contract: Other
Jurisdiction: Diversity

**Plaintiff**

**Renuka Misra**

represented by **Jeremy W Schulman**
Shulman Rogers Gandal Pordy and
Ecker PA
11921 Rockville Pike Ste 300
Rockville, MD 20852
13012305200
Fax: 13012302891
Email: jschulman@srgpe.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Leslie Gallagher Moylan**
Shulman Rogers Gandal Pordy and
Ecker PA
11921 Rockville Pike Ste 300
Rockville, MD 20852
13012305200
Fax: 13012302891
Email: lmoylan@srgpe.com
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Xechem International, Inc.**

| Date Filed | # | Docket Text |
|------------|---|-------------|
| 02/04/2008 | 1 | COMPLAINT against Xechem International, Inc. (Filing fee $ 350, receipt #14637023055), filed by Renuka Misra. (Attachments: # 1 Civil Cover Sheet, # |

| | | |
|---|---|---|
| | | 2 Exhibit A, # 3 Exhibit B, # 4 Exhibit C, # 5 Exhibit D)(rafs, Deputy Clerk) (Entered: 02/05/2008) |
| 02/04/2008 | | Jury Trial Demand by Renuka Misra. (rafs, Deputy Clerk) (Entered: 02/05/2008) |
| 02/04/2008 | 2 | Local Rule 103.3 Disclosure Statement by Renuka Misra. (rafs, Deputy Clerk) (Entered: 02/05/2008) |
| 02/05/2008 | 3 | Summons Issued 20 days as to Xechem International, Inc.. (rafs, Deputy Clerk) (Entered: 02/05/2008) |
| 02/21/2008 | 4 | SUMMONS Returned Executed by Renuka Misra. Xechem International, Inc. served on 2/11/2008, answer due 3/3/2008. (Schulman, Jeremy) (Entered: 02/21/2008) |
| 03/07/2008 | 5 | MOTION for Default Judgment as to *Xechem International, Inc.* by Renuka Misra. Responses due by 3/24/2008 (Attachments: # 1 Affidavit Affidavit of Jeremy W. Schulman, # 2 Exhibit Exhibit A to Affidavit)(Moylan, Leslie) (Entered: 03/07/2008) |
| 03/11/2008 | 6 | Clerk's ENTRY OF DEFAULT as to Xechem International, Inc. (mcb, Deputy Clerk) (Entered: 03/11/2008) |
| 03/20/2008 | 7 | PAPERLESS ORDER re 5 MOTION for Default Judgment as to *Xechem International, Inc.* filed by Renuka Misra SETTING HEARING ON DAMAGES FOR MONDAY, MARCH 31, 2008, AT NOON. (Judge Davis) (Entered: 03/20/2008) |
| 03/26/2008 | 8 | MOTION for Default Judgment as to *Defendant Xechem International, Inc.* by Renuka Misra Responses due by 4/14/2008 (Attachments: # 1 Text of Proposed Order)(Moylan, Leslie) (Entered: 03/26/2008) |
| 03/26/2008 | 9 | AFFIDAVIT re 8 MOTION for Default Judgment as to *Defendant Xechem International, Inc.* by Renuka Misra. (Attachments: # 1 Exhibit Exhibit A)(Moylan, Leslie) (Entered: 03/26/2008) |
| 03/26/2008 | 10 | AFFIDAVIT re 8 MOTION for Default Judgment as to *Defendant Xechem International, Inc.* by Renuka Misra. (Attachments: # 1 Exhibit Exhibit A, # 2 Exhibit Exhibit B, # 3 Exhibit Exhibit C, # 4 Exhibit Exhibit D, # 5 Exhibit Exhibit E, # 6 Exhibit Exhibit F, # 7 Exhibit Exhibit G)(Moylan, Leslie) (Entered: 03/26/2008) |
| 03/31/2008 | 11 | Motion Hearing (Ex-Parte) held on 3/31/2008 re 8 MOTION for Default Judgment as to *Defendant Xechem International, Inc.* filed by Renuka Misra, 5 MOTION for Default Judgment as to *Xechem International, Inc.* filed by Renuka Misra held before Judge Andre M Davis (Court Reporter M. Zajac) (bma, CRD) (Entered: 03/31/2008) |
| 03/31/2008 | 12 | NOTICE by Renuka Misra *[Proposed] Judgment* (Moylan, Leslie) (Entered: 03/31/2008) |
| 03/31/2008 | 13 | JUDGMENT entered in favor of Plaintiff against Defendant in the principal amount of $1,000,000.00 as therein set forth. Signed by Judge Andre M Davis |

| | | on 3/31/08. (mcb, Deputy Clerk) (Entered: 04/01/2008) |
|---|---|---|
| 04/09/2008 | 14 | MOTION for Attorney Fees *and Costs* by Renuka Misra Responses due by 4/28/2008 (Attachments: # 1 Text of Proposed Order)(Moylan, Leslie) (Entered: 04/09/2008) |
| 04/09/2008 | 15 | AFFIDAVIT re 14 MOTION for Attorney Fees *and Costs* by Renuka Misra. (Attachments: # 1 Exhibit Exhibit A)(Moylan, Leslie) (Entered: 04/09/2008) |
| 04/18/2008 | 16 | MOTION for Other Relief *Expedited Certification of Judgment* by Renuka Misra Responses due by 5/5/2008 (Attachments: # 1 Text of Proposed Order, # 2 Affidavit Affidavit of Jeremy W. Schulman)(Moylan, Leslie) (Entered: 04/18/2008) |
| 05/06/2008 | 17 | PAPERLESS ORDER finding as moot 16 Motion (Judge Davis) (Entered: 05/06/2008) |
| 05/07/2008 | 18 | AMENDED JUDGMENT (Correction of Clerical Mistake). Signed by Judge Andre M Davis on 5/7/08. (mcb, Deputy Clerk) (Entered: 05/07/2008) |

| PACER Service Center | | |
|---|---|---|
| **Transaction Receipt** | | |
| 07/31/2008 10:47:16 | | |
| **PACER Login:** | sh0040 | **Client Code:** 114697.00002 tdh |
| **Description:** | Docket Report | **Search Criteria:** 1:08-cv-00307-AMD |
| **Billable Pages:** | 2 | **Cost:** 0.16 |

EXHIBIT

B

DATE
STAMP
COPY

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**(Baltimore Division)**

FILED
U.S. DISTRICT COURT
DISTRICT OF MARYLAND

2008 FEB -4 P 3: 27

| | |
|---|---|
| RENUKA MISRA<br>1405 Key Parkway East, Unit 201A<br>Frederick, Maryland 21702<br><br>                Plaintiff,<br><br>       v.<br><br>XECHEM INTERNATIONAL, INC.,<br>379 Thornall Street<br>Edison, New Jersey 08837<br><br>                Defendant. | Civil Action No.: CLERK'S OFFICE<br>AT BALTIMORE<br>BY_____DEPUTY<br><br>**COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

       For her Complaint against Defendant Xechem International, Inc., Plaintiff Renuka Misra, by her attorneys, Shulman, Rogers, Gandal, Pordy & Ecker, P.A., upon knowledge as to her own actions and dealings and upon information and belief as to Defendant and its actions, alleges as follows:

**PARTIES**

    1.    Plaintiff Renuka Misra ("Dr. Misra") is an individual who resides at 1405 Key Parkway East, Unit 201A, Frederick, Maryland 21702. Dr. Misra is an employee of Xechem International, Inc.

    2.    Defendant Xechem International, Inc. ("Xechem") is a corporation organized under the laws of the State of Delaware, with its principal place of business at 379 Thornall Street, Edison, New Jersey 08837. Xechem a development-stage biopharmaceutical company engaged in the research, development and production of niche generic and proprietary drugs from natural sources. At all times relevant to this Complaint, Xechem was a publicly-held

company registered with the Securities and Exchange Commission ("SEC") with quotations for its common stock published in the Pink Sheets.

## JURISDICTION AND VENUE

3.     This Court has subject-matter jurisdiction over all claims asserted in this action pursuant to 28 U.S.C. § 1332(a)(1) because the amount in controversy in this action exceeds $75,000 and because there is complete diversity between the parties to this action, *i.e.*, Plaintiff is a citizen of a different state than Defendant.

4.     This Court has personal jurisdiction over Xechem pursuant to Md. Code, Cts. & Jud. Proc., § 6-103(b).

5.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a) because a substantial part of the events giving rise to this action took place in this judicial district.

## STATEMENT OF FACTS

6.     Dr. Misra has been employed by Xechem since 1991.  She has held the positions of Senior Scientist and Director of Natural Products Research, and has been a member of Xechem's Scientific Advisory Board since the Company went public in 1994.

7.     At all times relevant to this Complaint, Dr. Misra, in her capacity as an employee of Xechem, worked out of Xechem's New Brunswick, New Jersey and Gaithersburg, Maryland offices.

8.     Pursuant to her employment agreement with Xechem, Dr. Misra is entitled to and (until recently) has received an annual salary of $60,000 and a full benefits package including healthcare and retirement benefits (the "Employment Agreement").

9.     In addition to providing critical professional services to Xechem, beginning in 1991, Dr. Misra made a series of loans to the Company.  These loans were eventually

2

consolidated into one promissory note in the amount of $298,300, dated August 23, 2005 (the "First Promissory Note"). A true and correct copy of the First Promissory Note is attached as Exhibit A. The maturity date of the First Promissory Note was August 22, 2006, which was subsequently extended by agreement of the parties through August 22, 2007.

10.    In further consideration for Dr. Misra's loan to Xechem evidenced by the First Promissory Note, Xechem gave Dr. Misra the option to purchase 5,966,000 shares of Xechem stock at the strike price of $.01 per share, exercisable between August 23, 2005 and August 22, 2010.

11.    Dr. Misra loaned an additional $150,000 to Xechem, as evidenced by a May 1, 2005 promissory note (the "Second Promissory Note"). A true and correct copy of the Second Promissory Note is attached as Exhibit B. The maturity date of the Second Promissory Note was July 18, 2006, which was subsequently extended by agreement of the parties through July 18, 2007.

12.    In further consideration for Dr. Misra's loan to Xechem evidenced by the Second Promissory Note, Xechem gave Dr. Misra the option to purchase 1,500,000 shares of Xechem stock at the strike price of $.005 per share. On August 23, 2005, the parties executed an Amendment to [Second] Promissory Note, increasing the amount of shares to 3,000,000 and increasing the strike price to $.01 per share. The term for exercising these stock options was extended through April 30, 2010. A true and correct copy of the Amendment to [Second] Promissory Note is attached as Exhibit C.

13.    Additionally, in consideration for Dr. Misra's agreement to extend the maturity date of the Second Promissory Note, the parties executed a [Second] Amendment to [Second] Promissory Note, wherein Xechem gave Dr. Misra the option to purchase an additional

3

3,000,000 shares of Xechem stock at the strike price of $.0109 per share, exercisable between January 19, 2006 and January 18, 2011.  A true and correct copy of the [Second] Amendment to [Second] Promissory Note is attached as Exhibit D.

14.    Thus, Dr. Misra's total stock options in connection with the First Promissory Note and Second Promissory Note are as follows:

| Amount of Shares | Price Per Share |
|---|---|
| 5,966,000 | $.01 |
| 3,000,000 | $.01 |
| 3,000,000 | $.0109 |

Total shares:  11,966,000

15.    Both the First Promissory Note and Second Promissory Note (collectively, the "Promissory Notes") contain identical terms.  They require Xechem to make monthly interest payments on the principal balance at the rate of 12%, with the entire amount of principal and interest becoming due and payable on the maturity date.  Overdue principal and interest payments are subject to a 15% interest rate per annum.  Importantly, the Promissory Notes provide: "The obligations to make the payments provided for in this Note are absolute and unconditional and not subject to any defense, set-off, counterclaim, rescission, recoupment, or adjustment whatsoever."

16.    Notwithstanding that the First Promissory Note matured on August 22, 2007 and the Second Promissory Note matured on July 18, 2007, Dr. Misra has not received repayment of the principal balances, nor has she received any interest payments since August 2007.

17.    As of the date of this Complaint, the outstanding principal amounts of the Promissory Notes, together with 15% interest on the outstanding amounts due since the dates of

4

maturity are $317,938.07 for the First Promissory Note and $162,000 for the Second Promissory Note, or a total of $479,938.07.

18.    Under the express terms of the Promissory Notes stated above, Xechem's liability to Dr. Misra is absolute and not subject to any defense.

19.    On November 15, 2006, Dr. Misra wrote to Xechem demanding to exercise all of her 11,966,000 stock options granted pursuant to the Promissory Notes and amendments thereto.

20.    Notwithstanding that Dr. Misra was ready, willing and able to make payment to Xechem in the amount of $122,360 ((5,966,000 x $.01 = $59,660) + (3,000,000 x $.01 = $30,000) + (3,000,000 x $.0109 = $32,700)) for the promised shares of Xechem stock, and that the options were exercised within the given time period, Xechem refused to issue to Dr. Misra any shares of Xechem stock.

21.    As of the date of this Complaint, the highest closing price for Xechem shares was $.06 per share on September 19, 2007.  Thus, the actual value of 11,966,000 shares of Xechem stock on September 19, 2007 was $717,960.

22.    Had Xechem not prevented Dr. Misra from exercising her stock options on November 15, 2006, Dr. Misra would have sold her 11,966,000 shares of Xechem stock at a considerable profit.  Under applicable legal principles, Xechem is liable to Dr. Misra for the difference in value between the option price and the highest intermediate market price between the date of breach and a reasonable time after the breach.

23.    On August 16, 2007, Dr. Misra discovered that the desk and several shelves in her New Brunswick, New Jersey office at Xechem had been cleared out, including the removal of numerous books and personal items owned by Dr. Misra valued at approximately $1,500.

24.    Dr. Misra later received an August 24, 2007 letter from Xechem and signed by Robert Swift, which makes the astonishing suggestion that Dr. Misra was never in fact an employee of the Company.  The letter claims, instead, that she was a consultant, and purports to terminate a non-existent "consultant agreement" effective July 31, 2007.

25.    The August 24, 2007 letter from Xechem indicates that, as a result of Xechem's termination of Dr. Misra's purported "consultant agreement," Xechem would make severance payments to Dr. Misra as follows: $2,500 on or before September 10, 2007; $2,500 on or before October 19, 2007; and $12,000 on or before November 10, 2007.  For purposes of the alternative relief sought herein, the foregoing schedule is referred to as the "Severance Agreement."

26.    Dr. Misra received two $2,500 payments from Xechem after receiving the August 24, 2007 letter from Xechem, but never received an additional $12,000 pursuant to the Severance Agreement.  Thus, even if Dr. Misra was merely a "consultant" of Xechem (which she was not), Xechem has not even complied with its own schedule pursuant to the Severance Agreement.

27.    Contrary to the August 24, 2007 letter, Dr. Misra is, and has been since 1994, a full employee of Xechem.  As an employee, Dr. Misra was integral in, among many other contributions, obtaining grants in dealing with the National Institutes of Health (NIH), contributing to procurement of Orphan Drug Designation from the Food and Drug Administration (FDA) for NICOSAN™,[1] and participating in the preparation of documents for U.S. and European Union regulatory authorities.  Xechem itself acknowledges Dr. Misra's status on its website at www.xechem.com/aboutxechem.html, where she is currently listed as Director of Natural Products and a member of the Scientific Advisory Board.

---

[1] NICOSAN™ is a drug developed to treat Sickle Cell Disease.  Orphan Drug Designation is granted only for diseases that afflict less than 200,000 people in the United States.

28.     Dr. Misra's employment with Xechem has never been terminated.  Accordingly, she is entitled to her contractual compensation and employee benefits, including healthcare and retirement benefits, unless and until termination is effected.  As of the date of this Complaint, the Company owes Dr. Misra $25,000 in overdue salary payments.

29.     Dr. Misra has repeatedly attempted without success to collect the outstanding amounts she is owed.  Most recently, on December 20, 2007, counsel to Dr. Misra sent a letter to Robert Swift at Xechem, demanding payment in full to Dr. Misra of the outstanding principal and interest on the Promissory Notes, her overdue salary, the value of the withheld employee benefits, and the value of her personal items by December 30, 2007.

30.     On January 9, 2007, counsel to Dr. Misra received a letter dated December 22, 2007 from Robert Swift of Xechem.  The December 22, 2007 letter incorrectly denies that Dr. Misra was ever an employee of Xechem and that the Promissory Notes are due and payable.

31.     Additionally, Dr. Misra attempted to collect but has not been reimbursed for approximately $900 in telephone, fax and other expenses incurred by her in connection with her employment with Xechem.

32.     In further breach of the Employment Agreement, Xechem overstated Dr. Misra's annual income on her 2006 Form W-2 Wage and Tax Statement by approximately $10,000, which caused Dr. Misra to incur additional tax liability.

33.     As of the date of this Complaint, Dr. Misra has not received payment from Xechem of the outstanding principal and interest on the Promissory Notes, her overdue salary (or, in the alternative, the remainder of her severance pay), the value of the withheld employee benefits, and the value of her personal items removed from her office.

## COUNT I

### Breach of Contract – Promissory Notes

34.    Dr. Misra repeats and realleges each and every allegation contained in paragraphs 1 through 33 as if set forth herein.

35.    The Promissory Notes constitute lawful, binding, and enforceable contracts between Dr. Misra and Xechem.

36.    The maturity date of the First Promissory Note was August 22, 2007.

37.    The maturity date of the Second Promissory Note was July 18, 2007.

38.    Dr. Misra has not received repayment of the principal balances pursuant to the Promissory Notes, nor has she received any interest payments since August 2007.

39.    As of the date of this Complaint, the outstanding principal amounts of the Promissory Notes, together with 15% interest on the outstanding amounts due since the dates of maturity are $317,938.07 for the First Promissory Note and $162,000 for the Second Promissory Note, or a total of $479,938.07.

40.    On November 15, 2006, Dr. Misra wrote to Xechem demanding to exercise all of her 11,966,000 stock options granted pursuant to the Promissory Notes and amendments thereto.

41.    Notwithstanding that Dr. Misra was ready, willing and able to make payment to Xechem in the amount of $122,360 for the promised shares of Xechem stock, and that the options were exercised within the given time period, Xechem refused to issue to Dr. Misra any shares of Xechem stock.

42.    As of the date of this Complaint, the highest closing price for Xechem shares was $.06 per share on September 19, 2007.  Thus, the actual value of 11,966,000 shares of Xechem stock on September 19, 2007 was $717,960.

8

43.    Had Xechem not prevented Dr. Misra from exercising her stock options on November 15, 2006, Dr. Misra would have sold her 11,966,000 shares of Xechem stock at a considerable profit.  Under applicable legal principles, Xechem is liable to Dr. Misra for the difference in value between the option price and the highest intermediate market price between the date of breach and a reasonable time after the breach.

44.    Under the express terms of the Promissory Notes stated above, Xechem's liability to Dr. Misra is absolute and not subject to any defense.

45.    Dr. Misra, in all respects and at all relevant times, has been in full compliance with her obligations under the Promissory Notes, and all conditions precedent to invoking Dr. Misra's rights under the Promissory Notes have been fulfilled.

46.    Xechem's refusal to repay the amounts due under the Promissory Notes and refusal to allow Dr. Misra to exercise her stock options constitutes a breach of the Promissory Notes.

47.    Xechem's breach of the Promissory Notes gives rise to Dr. Misra's right to pursue all appropriate contractual remedies and relief.

48.    Dr. Misra has suffered compensatory damages in an amount to be determined at trial, but that in no event is less than $1,075,538.07.

## COUNT II

### Maryland Wage Payment and Collection Act – Wages

49.    Dr. Misra repeats and realleges each and every allegation contained in paragraphs 1 through 33 as if set forth herein.

50.    The Employment Agreement constitutes a lawful, binding, and enforceable contract between Dr. Misra and Xechem.

9

51.     Xechem is, and has at all relevant times been, an "employer" within the meaning of the Maryland Wage Payment and Collection Act (the "Act") because Xechem employed Dr. Misra in the State of Maryland.  Md. Code Ann., Labor and Employment § 3-501(b).

52.     Pursuant to the Employment Agreement, Dr. Misra is entitled to an annual salary of $60,000, which is a "wage" within the meaning of the Act.

53.     Dr. Misra has not received her wages for the month of August 2007 and from October 2007 onward.

54.     Dr. Misra's employment with Xechem has never been terminated.  Accordingly, she is entitled to her wages.

55.     Despite Dr. Misra's repeated demands, Xechem has failed and continues to refuse to pay Dr. Misra her wages.

56.     As of the date of this Complaint, Dr. Misra is entitled to wages in the amount of $25,000.

57.     Alternatively, pursuant to the Severance Agreement, Dr Misra is entitled to a severance payment of $12,000, which is a "wage" within the meaning of the Act.

58.     Dr. Misra has not received the $12,000 severance payment, to which she is entitled under the Severance Agreement.

59.     Xechem has no legitimate reason for not paying Dr. Misra the wages to which she is entitled, and Xechem's refusal to do so is not subject to any bona fide dispute.

60.     Dr. Misra has suffered damages in an amount to be determined at trial, but that in no event is less than $25,000 (or, in the alternative, $12,000) in overdue wages, plus treble damages as allowed by Section 3-507.1(b) of the Act.

## COUNT III

### Breach of Contract – Employment Agreement

61.    Dr. Misra repeats and realleges each and every allegation contained in paragraphs 1 through 33 as if set forth herein.

62.    The Employment Agreement constitutes a lawful, binding, and enforceable contract between Dr. Misra and Xechem.

63.    Pursuant to the Employment Agreement, Dr. Misra is entitled to an annual salary of $60,000 and healthcare and retirement benefits.

64.    Dr. Misra has not received her salary for the month of August 2007 and from October 2007 onward.

65.    Dr. Misra's healthcare benefits were wrongfully terminated by Xechem on or about December 1, 2007.

66.    Dr. Misra's retirement benefits were wrongfully terminated by Xechem on or about August 1, 2007.

67.    Dr. Misra's employment with Xechem has never been terminated.  Accordingly, she is entitled to her contractual compensation and employee benefits, including healthcare and retirement benefits.

68.    Dr. Misra, in all respects and at all relevant times, has been in full compliance with her obligations under the Employment Agreement, and all conditions precedent to invoking Dr. Misra's rights under the Employment Agreement have been fulfilled.

69.    Xechem's refusal to pay Dr. Misra her salary and failure to maintain her employee benefits constitutes a breach of the Employment Agreement.

11

70.     Dr. Misra is entitled to reimbursement for expenses incurred by her in connection with her employment with Xechem.  Dr. Misra has attempted to collect but has not been reimbursed for approximately $900 in telephone, fax and other expenses incurred by her in connection with her employment with Xechem.

71.     In further breach of the Employment Agreement, Xechem overstated Dr. Misra's annual income on her 2006 Form W-2 Wage and Tax Statement by approximately $10,000, which caused Dr. Misra to incur additional tax liability.

72.     Xechem's breach of the Employment Agreement gives rise to Dr. Misra's right to pursue all appropriate contractual remedies and relief.

73.     Dr. Misra has suffered damages in an amount to be determined at trial, but that in no event is less than $25,000 in overdue salary payments, plus the full value of her employee benefits, damages for her increased 2006 tax liability, and expenses incurred by her in connection with employment with Xechem.

## COUNT IV

### Breach of Contract – Severance Agreement (Pled in the Alternative)

74.     Dr. Misra repeats and realleges each and every allegation contained in paragraphs 1 through 33 as if set forth herein.

75.     Dr. Misra received an August 24, 2007 letter from Xechem and signed by Robert Swift, which makes the astonishing suggestion that Dr. Misra was never in fact an employee of the Company.  The letter claims, instead, that she was a consultant, and purports to terminate a non-existent "consultant agreement" effective July 31, 2007.

76.     The August 24, 2007 letter from Xechem indicates that, as a result of Xechem's termination of Dr. Misra's purported "consultant agreement," Xechem would make severance

payments to Dr. Misra as follows: $2,500 on or before September 10, 2007; $2,500 on or before October 19, 2007; and $12,000 on or before November 10, 2007.

77.    The Severance Agreement constitutes a lawful, binding, and enforceable contract between Dr. Misra and Xechem.

78.    Dr. Misra received two $2,500 payments from Xechem after receiving the August 24, 2007 letter from Xechem, but never received an additional $12,000 pursuant to the Severance Agreement.

79.    Dr. Misra, in all respects and at all relevant times, has been in full compliance with her obligations under the Severance Agreement, and all conditions precedent to invoking Dr. Misra's rights under the Severance Agreement have been fulfilled.

80.    Xechem's refusal to pay Dr. Misra the remaining $12,000 severance payment constitutes a breach of the Severance Agreement.

81.    Xechem's breach of the Severance Agreement gives rise to Dr. Misra's right to pursue all appropriate contractual remedies and relief.

82.    Dr. Misra has suffered damages in an amount to be determined at trial, but that in no event is less than $12,000.

## COUNT V

### Conversion

83.    Dr. Misra repeats and realleges each and every allegation contained in paragraphs 1 through 33 as if set forth herein.

84.    On August 16, 2007, Dr. Misra discovered that the desk and several shelves in her New Brunswick, New Jersey office at Xechem had been cleared out, including the removal of numerous books and personal items owned by Dr. Misra valued at approximately $1,500.

13

85.    Xechem has refused to deliver the aforementioned property upon demand by Dr. Misra.

86.    Xechem's refusal to deliver the aforementioned property on demand has the effect of destroying or changing the quality of Dr. Misra's chattels.

87.    Dr. Misra has suffered compensatory damages in an amount to be determined at trial, but that in no event is less than the approximate value of the property of $1,500.

WHEREFORE, Dr. Misra demands judgment as follows:

1.    on Count I, awarding Dr. Misra compensatory damages in an amount to be determined at trial, but in no event less than $1,075,538.07, together with interest, costs, reasonable attorneys' fees and other expenses;

2.    on Count II, awarding Dr. Misra damages in an amount to be determined at trial, but in no event is less than $25,000 (or, in the alternative, $12,000), plus treble damages as allowed by Section 3-507.1(b) of the Act, together with interest, costs, reasonable attorneys' fees and other expenses;

3.    on Count III, awarding Dr. Misra compensatory damages in an amount to be determined at trial, but in no event less than $25,000 plus the value of her employee benefits, damages for her increased 2006 tax liability, and expenses incurred by her in connection with employment with Xechem, together with interest, costs, reasonable attorneys' fees and other expenses;

14

4.   on Count IV, awarding Dr. Misra compensatory damages in an amount to be determined at trial, but in no event less than $12,000, together with interest, costs, reasonable attorneys' fees and other expenses;

5.   on Count V, awarding Dr. Misra compensatory damages in an amount to be determined at trial, but in no event less than $1,500, together with interest, costs, reasonable attorneys' fees and other expenses;

6.   all such other and further relief as the Court deems just and proper.

## JURY DEMAND

Dr. Misra hereby demands a trial by jury on all claims so triable.

Dated: February 4, 2008

SHULMAN, ROGERS, GANDAL, PORDY & ECKER, P.A.

_____/s/_____
Jeremy W. Schulman (16787)
Leslie G. Moylan (16974)
11921 Rockville Pike
Rockville, Maryland 20852
(301) 230-5200

*Attorneys for Plaintiff Renuka Misra*

15

# EXHIBIT A

# XECHEM®

*Creating Tomorrow's Medicines Today*

**Xechem International, Inc.**
New Brunswick Technology Center
100 Jersey Avenue
Building B, Suite 310
New Brunswick, NJ 08901-3279
(732) 247-3300
(732) 247-4090 Fax
E-mail: xechem@erols.com

## Promissory Note

Date: August 23, 2005
New Brunswick, New Jersey

XECHEM INTERNATIONAL, INC., with an address at New Brunswick Technology Center, 100 Jersey Avenue, Building B, Suite 310, New Brunswick, New Jersey 08901 (the "Maker"), for value received, hereby promises to pay to Renuka Misra, 1405 Key Parkway East, Unit 201 A, Frederick, MD 21702, or registered assigns (the "Holder"), the principal amount of Two Hundred Ninety Eight Thousand and Three Hundred US Dollars ($298,300), in a single payment on August 22, 2006 (the "Maturity Date") or earlier and an option to purchase 5,966,000 shares of Common Stock of Xechem International, Inc. at $.01, within the period from August 23, 2005 to August 22, 2010 , for the help to make the loan to the Company. The Holder of the share will have the registration rights. Simple interest at the rate of 12% per annum will be calculated on the basis of a 360-day year consisting of twelve 30-day months.

This Note represents the Maker's obligations to repay loans made by the Holder on August 23, 2005 (the "Loan Date").

1.    Payments.

(a)    Interest on this Note shall be paid at the rate of 12% on the principal balance from the Loan Date on the 1st day of the following month with 10 days grace period, to but excluding the date of payment. The entire amount of principal and balance of interest owed hereunder shall be due and payable in cash on the date of maturity or earlier. All past due principal and interest shall bear interest from maturity date until paid in full at the rate of 15%, unless otherwise mutually agreed by both parties in writing.

(b)    If the Maturity Date would fall on a day that is not a Business Day (as defined below), the payment due on the Maturity Date may be made on the next succeeding Business Day with the same force and effect as if made on the Maturity Date. "Business Day" means any day which is not a Saturday or Sunday and is not a day on which banking institutions are generally authorized or obligated to close in the City of New York, New York.

(c)    The Maker may, at its option, prepay all or any part of the principal of this Note, without payment of any premium or penalty in cash. All payments on this Note shall be applied first to interest hereon and the balance to the payment of principal hereof.

(d)    Payments of principal and interest on this Note shall be made by check to the Holder's address set forth above or to such other address as the Holder may designate for such purpose from time to time by written notice to the Maker.

(e)    The obligations to make the payments provided for in this Note are absolute and unconditional and not subject to any defense, set-off, counterclaim, rescission, recoupment, or adjustment whatsoever.

(f)    This Note may be amended only by a written instrument executed by the Maker and the Holder.  Any amendment shall be endorsed upon this Note, and all future Holders shall be bound thereby.

(g)    This Note shall be governed by and construed in accordance with the laws of the State of New Jersey, without giving effect to conflict of laws.

IN WITNESS WHEREOF, the Maker and the Holder have caused this Note to be executed and dated the day and year first above written.

NOTE HOLDER

By: _Renuka Misra_

Name: Renuka Misra, Ph.D.

SS #:        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

Address:    1405 Key Parkway East
            Unit 201 A
            Frederick, MD 21702

XECHEM INTERNATIONAL, INC.

By: _RCPandey_

Name:    Ramesh C. Pandey, Ph.D.
Title:    Chairman/CEO

*F:\users\ACCTG\WINWORD\notes & loans\PromNote - Renuka Misra (OldDebt) Aug 2005.doc*

# EXHIBIT B


**XECHEM** ®
*Creating Tomorrow's Medicines Today*

Xechem International, Inc.
New Brunswick Technology Center
100 Jersey Avenue
Building B, Suite 310
New Brunswick, NJ 08901-3279
(732) 247-3300
(732) 247-4090 Fax
E-mail: xechem@erols.com

**Promissory Note**

Date: May 1st, 2005
New Brunswick, New Jersey

XECHEM INTERNATIONAL, INC., with an address at New Brunswick Technology Center, 100 Jersey Avenue, Building B, Suite 310, New Brunswick, New Jersey 08901 (the "Maker"), for value received, hereby promises to pay to Renuka Misra, 1405 Key Parkway East, Unit 201 A, Frederick, MD 21702, or registered assigns (the "Holder"), the principal amount of One Hundred and Fifty Thousand US Dollars ($150,000.00), in a single payment on November 1st, 2005 (the "Maturity Date") or earlier and an option to purchase 1,500,000 shares of Common Stock of Xechem International, Inc. at $.005 for the help to make the loan to the Company. The Holder of the share will have the registration rights. Simple interest at the rate of 12% per annum will be calculated on the basis of a 360-day year consisting of twelve 30-day months.

This Note represents the Maker's obligations to repay loans made by the Holder on May 1st, 2005 (the "Loan Date").

1.    Payments.

(a)    Interest on this Note shall be paid at the rate of 12% on the principal balance from the Loan Date on the 1st day of the following month with 10 days grace period, to but excluding the date of payment. The entire amount of principal and balance of interest owed hereunder shall be due and payable in cash on the date of maturity or earlier. All past due principal and interest shall bear interest from maturity date until paid in full at the rate of 15%.

(b)    If the Maturity Date would fall on a day that is not a Business Day (as defined below), the payment due on the Maturity Date may be made on the next succeeding Business Day with the same force and effect as if made on the Maturity Date. "Business Day" means any day which is not a Saturday or Sunday and is not a day on which banking institutions are generally authorized or obligated to close in the City of New York, New York.

(c)    The Maker may, at its option, prepay all or any part of the principal of this Note, without payment of any premium or penalty in cash. All payments on this Note shall be applied first to six months interest hereon and the balance to the payment of principal hereof.

(d)    Payments of principal and interest on this Note shall be made by check to the Holder's address set forth above or to such other address as the Holder may designate for such purpose from time to time by written notice to the Maker.

*Renuka Misra, Ph.D.*
*Promissory Note – May 1ˢᵗ, 2005*
*Page 2 of 2*

    (e)    The obligations to make the payments provided for in this Note are absolute and unconditional and not subject to any defense, set-off, counterclaim, rescission, recoupment, or adjustment whatsoever.

    (f)    This Note may be amended only by a written instrument executed by the Maker and the Holder. Any amendment shall be endorsed upon this Note, and all future Holders shall be bound thereby.

    (g)    This Note shall be governed by and construed in accordance with the laws of the State of New Jersey, without giving effect to conflict of laws.

    IN WITNESS WHEREOF, the Maker and the Holder have caused this Note to be executed and dated the day and year first above written.

NOTE HOLDER

By: *Renuka Misra*
Name: Renuka Misra, Ph.D.

SS #:    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

Address:    1405 Key Parkway East
                 Unit 201 A
                 Frederick, MD 21702

XECHEM INTERNATIONAL, INC.

By: *RCPandey*
Name:    Ramesh C. Pandey, Ph.D.
Title:     Chairman/CEO

# EXHIBIT C

**XECHEM**®
*Creating Tomorrow's Medicines Today*

Xechem International, Inc.
New Brunswick Technology Center
100 Jersey Avenue
Building B, Suite 310
New Brunswick, NJ 08901-3279
(732) 247-3300
(732) 247-4090 Fax
E-mail: xechem@erols.com

## Amendment to Promissory Note

Date:　August 23, 2005
New Brunswick, New Jersey

　　　This is an amendment to the Promissory Note agreement made on May 1st, 2005 between XECHEM INTERNATIONAL, INC., 100 Jersey Avenue, Building B, Suite 310, New Brunswick, New Jersey 08901 (the "Maker") and Renuka Misra, with an address at 1405 Key Parkway East, Unit 201 A, Frederick, MD 21702 or registered assigns (the "Holder").

　　　It is hereby agreed that the stock options to purchase Common Stock of Xechem International, Inc. have been changed as follows:

- **Price** - the purchase price per share has been changed from $.005 per share to $.01 per share.

- **Number of Options** - the number of options granted has been increased from 1,500,000 to 3,000,000. These options will be exercisable upon approval by the shareholders at the next annual meeting.

- **Term** - the term for exercising the options has been increased from 3 years to 5 years (terminating on April 30, 2010).

　　　IN WITNESS WHEREOF, the Maker and the Holder have caused this Amendment to be executed and dated the day and year first above written.

NOTE HOLDER　　　　　　　　　　　XECHEM INTERNATIONAL, INC.

By: *Renuka Misra*　　　　　　　　　By: *Pandey*
Name: Renuka Misra, Ph.D.　　　　　　　Name:　Ramesh C. Pandey, Ph.D.
　　　　　　　　　　　　　　　　　　　Title:　Chairman/CEO
SS #:　　　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

Address:　　1405 Key Parkway East
　　　　　　Unit 201 A
　　　　　　Frederick, MD 21702

*F:\users\ACCTG\WINWORD\notes & loans\PromNote (Amendment) - RenukaMisra Aug 2005.doc*

# EXHIBIT D

**XECHEM** ®

*Creating Tomorrow's Medicines Today*

Xechem International, Inc.
New Brunswick Technology Center
100 Jersey Avenue
Building B, Suite 310
New Brunswick, NJ 08901-3279
(732) 247-3300
(732) 247-4090 Fax
E-mail: xechem@erols.com

## Amendment to Promissory Note

Date: January 19, 2006
New Brunswick, New Jersey

XECHEM INTERNATIONAL, INC., with an address at 100 Jersey Avenue, Building B, Suite 310, New Brunswick New Jersey 08901 (the "Maker"), for the value received, hereby extends the following loans payable to Renuka Misra, with an address 1405 Key Parkway East, Unit 201 A, Frederick, MD 21702 (the "Holder"):

| Date of Note | Amount | Due Date | No. of Options | Option Price |
|---|---|---|---|---|
| 05/01/2005 | $150,000 | 11/1/2005 | 3,000,000 | $.01 |

The loan will be extended until 07/18/2006 and simple interest will be at 12% per annum for the loan during the extended period. Xechem also promises to give option to purchase 3,000,000 shares of Common Stock of Xechem International. Inc. at $.0109, within the period from January 19, 2006 to January 18, 2011, for extending the loan to the Company. The total stock options available will be 6,000,000 cumulative for the original and extended loan period.

All other terms and conditions of the original notes will apply to the extended period.

IN WITNESS WHEREOF, the Maker has caused these Note extensions to be executed and dated the day and year first above written

XECHEM INTERNATIONAL, INC.

By: _Rc andey_

Name:   Ramesh C. Pandey, Ph.D.
Title:    Chairman/CEO

Acknowledged and accepted:

_Renuka Misra_

Name: Renuka Misra, Ph.D.
SS:      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

F:\users\ACCTG\WINWORD\notes & loans\MisraR Extension (150K) 01.19.06.doc

# EXHIBIT

# C

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**(Baltimore Division)**

| | |
|---|---|
| RENUKA MISRA<br><br>        Plaintiff,<br><br>    v.<br><br>XECHEM INTERNATIONAL, INC.,<br><br>        Defendant. | Civil Action No.: AMD 08 CV 307<br><br>**JUDGMENT** |

Upon consideration of Plaintiff Renuka Misra's ("Misra") Application for Default Judgment against Defendant Xechem International, Inc. ("Xechem"), the supporting affidavits filed therewith, the evidence presented at the March 31, 2007 hearing before this Court, and pursuant to Rule 55(b)(2) of the Federal Rules of Civil Procedure, it is hereby

**ORDERED** and **ADJUDGED** that judgment is entered in favor of Misra and against Xechem in the principal amount of $1,000,000.00; and it is further

**ORDERED** and **ADJUDGED** that post-judgment interest on $491,145.57 of the judgment, which represents the outstanding principal and interest owed by Xechem to Misra pursuant to the Promissory Notes, shall accrue at the rate of 15% per annum beginning March 31, 2008; and it is further

**ORDERED** and **ADJUDGED** that post-judgment interest on the remaining $508,854.43 of the judgment shall accrue at the rate of 1.56% per annum pursuant to 28 U.S.C.A. § 1961(a) beginning March 31, 2008; and it is further

**ORDERED** and **ADJUDGED** that Misra shall be entitled to her attorney's fees and costs incurred in connection with her claim pursuant to Md. Code Ann., Labor and Employment § 3-507.1(b); and it is further

**ORDERED** that counsel to Misra shall submit an affidavit summarizing the attorney's fees and costs incurred by Misra in connection with her claim pursuant to Md. Code Ann., Labor and Employment § 3-507.1(b).

SO ORDERED:

_____/s/_____
The Honorable Andre M. Davis

# EXHIBIT

# D

RULE16

# U.S. District Court
## District of New Jersey [LIVE] (Newark)
### CIVIL DOCKET FOR CASE #: 2:07-cv-05123-PGS-ES

PANDEY v. XECHEM INTERNATIONAL
CORPORATION et al
Assigned to: Judge Peter G. Sheridan
Referred to: Magistrate Judge Esther Salas
Cause: 29:1001 E.R.I.S.A.: Employee Retirement

Date Filed: 10/23/2007
Jury Demand: Plaintiff
Nature of Suit: 791 Labor: E.R.I.S.A.
Jurisdiction: Federal Question

**Plaintiff**

**BHUWAN PANDEY**                    represented by **PATRICIA ANN MULLON**
                                     ZOHN & ZOHN, LLP
                                     744 MOUNTAIN BOULEVARD
                                     WATCHUNG, NJ 07069
                                     908.791.0312
                                     Email: pzohn@zohnlaw.com
                                     *LEAD ATTORNEY*
                                     *ATTORNEY TO BE NOTICED*

V.

**Defendant**

**XECHEM INTERNATIONAL**             represented by **LOIS H. GOODMAN**
**CORPORATION**                      MCELROY, DEUTSCH, MULVANEY
                                     & CARPENTER, LLP
                                     3 GATEWAY CENTER
                                     100 MULBERRY STREET
                                     NEWARK, NJ 07102-4079
                                     (973) 622-7711
                                     Email: lgoodman@mdmc-law.com
                                     *LEAD ATTORNEY*
                                     *ATTORNEY TO BE NOTICED*

**Defendant**

**ROBERT SWIFT**                     represented by **LOIS H. GOODMAN**
*TERMINATED: 07/23/2008*             (See above for address)
                                     *LEAD ATTORNEY*
                                     *ATTORNEY TO BE NOTICED*

**Defendant**

**STEPHEN F. BURG**
*TERMINATED: 07/23/2008*

represented by **LOIS H. GOODMAN**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**ADESOJI ADELAJA**
*TERMINATED: 07/23/2008*

represented by **LOIS H. GOODMAN**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**MARTIN BIGGS**
*TERMINATED: 07/23/2008*

represented by **LOIS H. GOODMAN**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**RAMESH PANDEY**

represented by **ANNE B. SEKEL**
FOLEY & LARDNER, LLP
90 PARK AVENUE
NEW YORK, NY 10016
(212) 682-7474
Email: asekel@foley.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**JOHN AND JANE DOES 1-25**

**Defendant**

**ABC CORPORATIONS 1-25**

| Date Filed | # | Docket Text |
|---|---|---|
| 10/23/2007 | 1 | COMPLAINT against XECHEM INTERNATIONAL CORPORATION, ROBERT SWIFT, STEPHEN F. BURG, ADESOJI ADELAJA, MARTIN BIGGS, RAMESH PANDEY ( Filing fee $ 350 receipt number 360848.) JURY DEMAND, filed by BHUWAN PANDEY. (Attachments: # 1 Civil Cover Sheet)(ld, ) (Entered: 10/25/2007) |
| 10/25/2007 | 2 | MOTION for an Order To Show Cause Seeking Temporary Restraints and Preliminary Injunction, by BHUWAN PANDEY. (Attachments: # 1 Brief # 2 Certificate of Service # 3 Text of Proposed Order To Show Cause # 4 Exhibits A - B to Pandey Certification# 5 Exhibits C - I to Pandey Certification# 6 Certification of Bhuwan Pandey)(dc, ) (Entered: 10/25/2007) |

| 10/25/2007 | 3 | ORDER TO SHOW CAUSE why an order requiring defts. to provide all necessary information and forms to the pltf. so that he may continue his family's health insurance coverage should not be entered, etc.. Show Cause Hearing set for 11/8/2007 10:00 AM before Judge Peter G. Sheridan.,Show Cause Response due by 11/2/2007. Signed by Judge Peter G. Sheridan on 10/25/07. (dc, ) (Entered: 10/25/2007) |
|---|---|---|
| 10/26/2007 | 4 | Summons Issued as to XECHEM INTERNATIONAL CORPORATION, ROBERT SWIFT, STEPHEN F. BURG, ADESOJI ADELAJA, MARTIN BIGGS.Days Due - 20.(SUMMONS MAILED TO COUNSEL) (ld, ) (Entered: 10/26/2007) |
| 10/29/2007 | | Set/Reset Hearings: Order to Show Cause set for 11/8/2007 at 2:00 PM in Newark - Courtroom 4A before Judge Peter G. Sheridan. (dh, ) (Entered: 10/29/2007) |
| 11/01/2007 | 5 | RESPONSE in Opposition re 2 MOTION for Preliminary Injunction MOTION for Temporary Restraining Order *Response of Defendant Ramesh Pandey to Application of Bhuwan Pandey for Order to Show Cause and Preliminary Injuction* filed by RAMESH PANDEY. (SEKEL, ANNE) (Entered: 11/01/2007) |
| 11/01/2007 | 6 | SUMMONS Returned Executed by BHUWAN PANDEY. ADESOJI ADELAJA served on 10/29/2007, answer due 11/19/2007. (dc, ) (Entered: 11/02/2007) |
| 11/01/2007 | 7 | SUMMONS Returned Executed by BHUWAN PANDEY. STEPHEN F. BURG served on 10/29/2007, answer due 11/19/2007. (dc, ) (Entered: 11/02/2007) |
| 11/01/2007 | 8 | SUMMONS Returned Executed by BHUWAN PANDEY. ROBERT SWIFT served on 10/29/2007, answer due 11/19/2007. (dc, ) (Entered: 11/02/2007) |
| 11/01/2007 | 9 | SUMMONS Returned Executed by BHUWAN PANDEY. XECHEM INTERNATIONAL CORPORATION served on 10/29/2007, answer due 11/19/2007. (dc, ) (Entered: 11/02/2007) |
| 11/01/2007 | 10 | SUMMONS Returned Executed by BHUWAN PANDEY. MARTIN BIGGS served on 10/29/2007, answer due 11/19/2007. (dc, ) (Entered: 11/02/2007) |
| 11/07/2007 | 11 | *Defendant's* ANSWER to Complaint *of Plaintiff* by RAMESH PANDEY.(SEKEL, ANNE) (Entered: 11/07/2007) |
| 11/07/2007 | 12 | ORDER granting adjournment of hearing set for November 8, 2007. New hearing date is now set for November 16, 2007 at 9:30 a.m. (dh, ) (Entered: 11/07/2007) |
| 11/08/2007 | 13 | ORDER Initial Conference set for 2/4/2008 at 12:00 PM in Newark - Courtroom 2D before Magistrate Judge Esther Salas. A JOINT DISCOVERY PLAN MUST BE SUBMITTED 7 DAYS PRIOR TO THE CONFERENCE. CM/ECF IS MANDATORY FOR ALL FILINGS. Should you have any questions please call (973) 297-4887. Signed by Judge Esther Salas on 11/8/07. (jq, ) (Entered: 11/08/2007) |

| 11/08/2007 | 14 | CERTIFICATE OF SERVICE by BHUWAN PANDEY (Attachments: # 1 Cover Letter)(dc, ) (Entered: 11/15/2007) |
| 11/20/2007 | 15 | First MOTION for Leave to Appear Pro Hac Vice by RAMESH PANDEY. (Attachments: # 1 Affidavit of M. Bowen in Support of Defendant's Motion for Pro Hac Vice Admission# 2 Affidavit of A. Sekel in Support of Defendant's Motion for Pro Hac Vice Admission# 3 Text of Proposed Order Granting Pro Hac Vice Admission to M. Bowen)(SEKEL, ANNE) (Entered: 11/20/2007) |
| 11/20/2007 | | Set/Reset Deadlines as to 15 First MOTION for Leave to Appear Pro Hac Vice. Motion Hearing set for 12/24/2007 before Judge Peter G. Sheridan. PLEASE BE ADVISED THAT THIS MOTION WILL BE DECIDED ON THE PAPERS UNLESS OTHERWISE NOTIFIED BY THE COURT. (dc, ) (Entered: 11/21/2007) |
| 11/21/2007 | 16 | AFFIDAVIT of Service for Defendant's Motion for Pro Hac Vice Admission *Martie P. Kutscher* served on Patricia M. Zohn, Esq. and Frederick A. Simon, Esq. on 11/20/2007 via the Court's electronic filing system and on 11/21/2007 via electronic mail and United States first class mail, filed by RAMESH PANDEY. (SEKEL, ANNE) (Entered: 11/21/2007) |
| 12/18/2007 | 17 | STIPULATION *and Order* by ROBERT SWIFT, STEPHEN F. BURG, ADESOJI ADELAJA, MARTIN BIGGS. (Attachments: # 1 Letter)(GOODMAN, LOIS) (Entered: 12/18/2007) |
| 12/19/2007 | 18 | ORDER Ordered that deft. Xechem International Corporation provide all necessary information and forms to the pltf. and notice to the administrator in compliance with the Employee Retirement Income Security Act of 1974, etc.. Signed by Judge Peter G. Sheridan on 12/18/07. (dc, ) (Entered: 12/19/2007) |
| 12/21/2007 | 19 | MOTION to Dismiss *Plaintiff's Complaint Pursuant to Fed.R.Civ.P. 12(B)(5) as to Defendants Robert Swift, Stephen F. Burg, Adesoji Adelaja, and Martin Biggs* by ROBERT SWIFT, STEPHEN F. BURG, ADESOJI ADELAJA, MARTIN BIGGS. (Attachments: # 1 Brief in Support of Notice of Motion# 2 Certification of Adesoji Adelaja in Support of Notice of Motion# 3 Certification of J. Martin Biggs in Support of Notice of Motion# 4 Certification of Stephen F. Burg in Support of Notice of Motion# 5 Certification of Robert Swift in Support of Notice of Motion# 6 Certification of Lois H. Goodman, Esq. in Support of Notice of Motion# 7 Proposed Order)(GOODMAN, LOIS) (Entered: 12/21/2007) |
| 12/21/2007 | | Set/Reset Deadlines as to 19 MOTION to Dismiss *Plaintiff's Complaint Pursuant to Fed.R.Civ.P. 12(B)(5) as to Defendants Robert Swift, Stephen F. Burg, Adesoji Adelaja, and Martin Biggs* MOTION to Dismiss *Plaintiff's Complaint Pursuant to Fed.R.Civ.P. 12(B)(5) as to Defendants Robert Swift, Stephen F. Burg, Adesoji Adelaja, and Martin Biggs* MOTION to Dismiss *Plaintiff's Complaint Pursuant to Fed.R.Civ.P. 12(B)(5) as to Defendants Robert Swift, Stephen F. Burg, Adesoji Adelaja, and Martin Biggs*. Motion Hearing set for 1/28/2008 before Judge Peter G. Sheridan. PLEASE BE ADVISED THAT THIS MOTION WILL BE DECIDED ON THE PAPERS UNLESS OTHERWISE NOTIFIED BY THE COURT. (dc, ) (Entered: 12/27/2007) |

| | | |
|---|---|---|
| 12/26/2007 | 20 | STIPULATION AND ORDER extending the time defts., Robert Swift, Stephen F. Burg, Adesoji Adelaja and Martin Biggs may have to file their Answer or otherwise respond to the Complaint to 12/21/07. Signed by Judge Esther Salas on 12/21/07. (dc, ) (Entered: 12/26/2007) |
| 12/26/2007 | | Update Answer Due Deadline as to Defts., Robert Swift, Stephen F. Burg, Adesoji Adelaja and Martin Biggs. (dc, ) (Entered: 12/26/2007) |
| 01/03/2008 | 21 | ORDER granting 15 Motion for Leave to Appear Pro Hac Vice. Signed by Judge Esther Salas on 1/2/08. (dc, ) (Entered: 01/03/2008) |
| 01/14/2008 | | Pro Hac Vice fee: $ 150, receipt number 350077 for Michael Bowen, Esq. (dc, ) (Entered: 01/15/2008) |
| 02/01/2008 | | CHAMBERS NOTE: Please be advised that the conference scheduled for 2/4/08 has been ADJOURNED without a new date. (jq, ) (Entered: 02/01/2008) |
| 04/03/2008 | 22 | MOTION for Entry of Default *against defendant Xechem International Corporation* by BHUWAN PANDEY. (Attachments: # 1 Declaration in support of Application for Entry of Default)(MULLON, PATRICIA) (Entered: 04/03/2008) |
| 04/03/2008 | 23 | Letter from Zohn & Zohn, LLP, counsel for Plaintiff. (MULLON, PATRICIA) (Entered: 04/03/2008) |
| 04/03/2008 | 24 | ORDER quashing service of process. 19 Motion to Dismiss. It is further ordered that plaintiff must re-serve within 30 days; and if not served within 30 days, the complaint is dismissed without prejudice. Signed by Judge Peter G. Sheridan on 4/3/08. (dh, ) (Entered: 04/04/2008) |
| 04/03/2008 | | CLERK'S QUALITY CONTROL MESSAGE: - The 22 MOTION FOR ENTRY OF DEFAULT filed by PATRICIA MULLON on 4/3/08 was submitted incorrectly as a MOTION FOR ENTRY OF DEFAULT. PLEASE NOTE THE CORRECT CIVIL EVENT IS *REQUEST FOR DEFAULT. This submission will remain on the docket unless otherwise ordered by the court. (dc, ) (Entered: 04/18/2008) |
| 04/03/2008 | | Clerk's ENTRY OF DEFAULT as to Deft. XECHEM INTERNATIONAL CORPORATION for failure to plead or otherwise defend as to Pltf.'s Complaint. (dc, ) (Entered: 04/18/2008) |
| 05/16/2008 | 25 | MOTION for Default Judgment as to *Xechem International Corporation* by BHUWAN PANDEY. Responses due by 6/2/2008 (Attachments: # 1 Declaration of Bhuwan Pandey in support of Default Judgment against Xechem, Intl. Corp., # 2 Text of Proposed Order Proposed Order)(MULLON, PATRICIA) (Entered: 05/16/2008) |
| 05/16/2008 | | CLERKS QUALITY CONTROL MESSAGE - The 25 MOTION FOR DEFAULT JUDGMENT submitted by P. MULLON on 5/16/08 contains an improper signature. Only Registered Users are permitted to sign electronically filed documents with an s/. PLEASE RESUBMIT THE DOCUMENT WITH A PROPER ELECTRONIC OR SCANNED SIGNATURE. This submission will |

| | | |
|---|---|---|
| | | remain on the docket unless otherwise ordered by the court. (dc, ) (Entered: 05/21/2008) |
| 05/23/2008 | 26 | Amended MOTION to Amend/Correct 25 MOTION for Default Judgment as to *Xechem International Corporation* by BHUWAN PANDEY. (MULLON, PATRICIA) (Entered: 05/23/2008) |
| 06/06/2008 | 27 | First MOTION to Quash *Service and to Dismiss Pursuant to Fed. R. Civ. P. 12(B)(5)* by XECHEM INTERNATIONAL CORPORATION. (Attachments: # 1 Certification Certification of Robert Swift, # 2 Affidavit Affidavit of Lenard Mudry, # 3 Certification Certification of Lois Goodman, # 4 Exhibit Exhs A and B to Lois Goodman Certification, # 5 Exhibit Exhibit C to Lois Goodman Certification, # 6 Exhibit Exhibit D to Goodman Certification, # 7 Brief Brief in Support of Cross-Motion to Quash Service, # 8 Text of Proposed Order Proposed Order, # 9 Certificate of Service Certificate of Service)(GOODMAN, LOIS) (Entered: 06/06/2008) |
| 06/06/2008 | 28 | Letter from Patricia A. Mullon Zohn re 27 First MOTION to Quash *Service and to Dismiss Pursuant to Fed. R. Civ. P. 12(B)(5)*First MOTION to Quash *Service and to Dismiss Pursuant to Fed. R. Civ. P. 12(B)(5)*First MOTION to Quash *Service and to Dismiss Pursuant to Fed. R. Civ. P. 12(B)(5)*. (MULLON, PATRICIA) (Entered: 06/06/2008) |
| 06/10/2008 | 29 | ORDER, setting Deadlines as to 25 MOTION for Default Judgment as to *Xechem International Corporation*, 26 Amended MOTION to Amend/Correct 25 MOTION for Default Judgment as to *Xechem International Corporation*, 27 First MOTION to Quash *Service and to Dismiss Pursuant to Fed. R. Civ. P. 12(B)(5)*.( All Motions will be argued 6/23/2008 at 3:00 PM before Judge Peter G. Sheridan.) Signed by Judge Peter G. Sheridan on 6/10/08. (dc, ) (Entered: 06/10/2008) |
| 06/18/2008 | 30 | BRIEF in Opposition re 27 First MOTION to Quash *Service and to Dismiss Pursuant to Fed. R. Civ. P. 12(B)(5)*First MOTION to Quash *Service and to Dismiss Pursuant to Fed. R. Civ. P. 12(B)(5)*First MOTION to Quash *Service and to Dismiss Pursuant to Fed. R. Civ. P. 12(B)(5)* filed by BHUWAN PANDEY. (Attachments: # 1 Certification of Patricia Mullon Zohn in Support of Plaintiff's Response to Xechem's Cross-Motion, # 2 Exhibit A - E to Certification of Patricia Mullon Zohn, # 3 Exhibit F - L to Certification of Patricia Mullon Zohn, # 4 Certification (Supplemental) of Patricia Mullon Zohn, # 5 Exhibit copy of Certification of Bhuwan Pandey attached to Supplemental Certification, # 6 Exhibit A - B to Certification of Bhuwan Pandey (Supplemental Certification), # 7 Exhibit C - I to Certification of Bhuwan Pandey (Supplemental Certification), # 8 Certification of Marian Zwierzynski)(MULLON, PATRICIA) (Entered: 06/18/2008) |
| 06/23/2008 | 32 | Minute Entry for proceedings held before Judge Peter G. Sheridan: Motion Hearing held on 6/23/2008 re 27 First MOTION to Quash *Service and to Dismiss Pursuant to Fed. R. Civ. P. 12(B)(5)*First MOTION to Quash *Service and to Dismiss Pursuant to Fed. R. Civ. P. 12(B)(5)*First MOTION to Quash *Service and to Dismiss Pursuant to Fed. R. Civ. P. 12(B)(5)* filed by XECHEM |

| | | |
|---|---|---|
| | | INTERNATIONAL CORPORATION. (Court Reporter Ira Rubenstein.) (dh, ) (Entered: 07/01/2008) |
| 06/25/2008 | 31 | ORDER denying Deft.'s 27 motion to quash service or to dismiss; granting Deft.'s 27 motion to vacate the entry of default; that Deft. is granted 30 days from the date of this order to answer or otherwise plead, and that Pltf.'s 25 Motion for Default Judgment is denied. Signed by Judge Peter G. Sheridan on 6/23/08. (dc, ) (Entered: 06/25/2008) |
| 07/23/2008 | 33 | ANSWER to Complaint by XECHEM INTERNATIONAL CORPORATION, ROBERT SWIFT, STEPHEN F. BURG, ADESOJI ADELAJA, MARTIN BIGGS.(GOODMAN, LOIS) (Entered: 07/23/2008) |
| 07/23/2008 | 34 | AMENDED ANSWER to 1 Complaint, by XECHEM INTERNATIONAL CORPORATION. (GOODMAN, LOIS) (Entered: 07/23/2008) |

## PACER Service Center

### Transaction Receipt

07/31/2008 11:01:50

| PACER Login: | sh0040 | Client Code: | 114697.00002 tdh |
|---|---|---|---|
| Description: | Docket Report | Search Criteria: | 2:07-cv-05123-PGS-ES Start date: 1/1/1970 End date: 7/31/2008 |
| Billable Pages: | 4 | Cost: | 0.32 |

# EXHIBIT

# E

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

BHUWAN PANDEY,

    Plaintiff,

      vs.

XECHEM INTERNATIONAL INC.;
ROBERT SWIFT; STEPHEN F.
BURG; ADESOJI ADELAJA;
MARTIN BIGGS; RAMESH
PANDEHY; JOHN AND JANE DOES
1-25; And ABC CORPORATIONS 1-
25,

    Defendants.

Docket No. 07-CV-5123-(PGS)

## AFFIDAVIT OF LEONARD MUDRY

Leonard Mudry being first duly sworn upon his oath deposes and says:

1.     My name is Leonard Mudry. I live at 5 Goodale Circle, New Brunswick, New Jersey, 08901.

2.     Since the year 2000, I have not been an officer or agent authorized to receive process or summons on behalf of Xechem International, Inc, a Delaware corporation.

3.     From time to time I performed individual contracts for the benefit of Xechem International, Inc.

4.     I was never authorized to receive any summons or other process served on behalf of Bhuwan Pandey or any other person.

5.     I am not now and have never been the registered agent of Xechem international, Inc.

6.   No valid service of process or summons was ever served upon me in the case now

pending in the U.S. District Court for the District of New Jersey entitled Bhuwan Pandey v.

Xechem International Corporation case no: 07-CV-5123-(PGS)

Dated: May _28_ , 2008                              LEONARD MUDRY

_Leonard Mudry_

SUBSCRIBED AND SWORN to
before me this _28th_
day of _May_ , 2008

NOTARY PUBLIC
STANLEY PIETROWICZ
COMMISSION EXPIRES 12/15/2009

STATE OF NEW JERSEY

COUNTY OF OCEAN

# EXHIBIT

# F

ZOHN & ZOHN, LLP
Patricia Mullon Zohn, Esq.
744 Mountain Boulevard
Watchung, New Jersey  07069
Telephone (908) 791-0312
Facsimile (908) 791-0316
pzohn@zohnlaw.com
Attorney for Plaintiff Bhuwan Pandey

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

. . . . . . . . . . . . . . . . . . . . . . . . . .

**BHUWAN PANDEY**                      :
                          :
         Plaintiff,               :
                          :
        v.                       : Civil Action No. 07 cv 5123(PGS)
                          :
**XECHEM INTERNATIONAL**               :
**CORPORATION; ROBERT**                :
**SWIFT; STEPHEN F. BURG;**            : **CERTIFICATION OF PATRICIA MULLON ZOHN**
**ADESOJI ADELAJA; MARTIN**            : **IN SUPPORT OF PLAINTIFF'S RESPONSE TO**
**BIGGS; RAMESH PANDEY;**              : **XECHEM INTERNATIONAL CORP'S CROSS-**
**JOHN AND JANE DOES 1-25;**           : **MOTION TO QUASH SERVICE AND TO DISMISS**
**And ABC CORPORATIONS 1-25,**         : **PURSUANT TO FED. R. CIV. P. 12(B)(5), OR IN**
                          : **THE ALTERNATIVE, TO VACATE ENTRY OF**
        Defendants.              : **DEFAULT**

. . . . . . . . . . . . . . . . . . . . . . . . . . :

    I, PATRICIA MULLON ZOHN, being of full age, do hereby certify as follows:

    1)    I am a partner in the law firm of Zohn & Zohn, LLP, a member of the Bar of the

State of New Jersey, and admitted to practice before this Court.  I am authorized by the plaintiff,

Bhuwan Pandey ("Plaintiff" and/or "Col. Pandey") to make this certification in support of (1)

Plaintiff's Response to Xechem International Corporation's ("Xechem") Cross-Motion to Quash

Service and to Dismiss Pursuant to Fed. Civ. P. 12 (B)(5), or the alternative, to Vacate the

Entry of Default and Grant Leave to File an Answer, and (2) Plaintiff's Reply to Xechem's

Opposition to Plaintiff's Default Judgment Motion.

2)    This office represents Col. Pandey in this action and, as such, I make this certification based on personal knowledge and a review of the relevant documents.

3)    On or about September 19, 2007, this office sent correspondence to Xechem at 100 Jersey Avenue, Suite 310, New Brunswick, New Jersey 08901. This address was the official address for notice listed in the employment contract between Col. Pandey and Xechem and was also the address for service on Xechem as listed with the State of New Jersey. The correspondence was returned as "Not Deliverable as Addressed, Unable to Forward". (See Exhibit A attached hereto).

4)    On October 23, 2007, this office filed with the Court a Civil Cover Sheet, Verified Complaint, Application for Order to Show Cause, a supporting brief, certification of Bhuwan Pandey, form of Order and Certification of Service (collectively, the "Complaint"). Courtesy copies were also mailed on that day to all named defendants as well as counsel for Xechem. (See exhibit B attached hereto).

5)    On or about October 25, 2007, Dr. Ramesh Pandey accepted service of the Complaint through his counsel.

6)    On October 29, 2007, the Complaint and Summons was served on Xechem at 379 Thornall Street, West Tower, Edison Twsp., New Jersey 08817 by Guaranteed Subpoena Services. Service was accepted by Mr. Leonard Mudry. (See Exhibit C attached hereto).

7)    Attached hereto as Exhibit D is a true copy of Form 12b-25 filed with the U.S. Securities and Exchange Commission ("SEC") on or about May 13, 1997 on behalf of Xechem. The form is signed by Leonard A. Mudry, VP – Finance & Operations.

8)    Attached hereto as Exhibit E is true copy of Form 3 filed with the SEC on or about February 24, 2004 on which Mr. Leonard Mudry reports that he has a beneficial interest in

Xechem and that he is a Director of Xechem.

9)     Attached hereto as Exhibit F is a true copy of an excerpt from a 10KSB filed with the SEC on behalf of Xechem on or about April 15, 2004 which lists Mr. Leonard Mudry as a Director of Xechem.

10)     Attached hereto as Exhibit G is a true copy of an excerpt of the Notice of Annual Meeting of Shareholders and Proxy Statement dated on or about September 22, 2006 in which Mr. Leonard Mudry is named as the individual who will tabulate all preferred stock votes cast at the annual meeting and will act as the inspector of elections.

11)     Attached hereto as Exhibit H is a true copy of Form 8-k filed on behalf of Xechem with the SEC on or about October 29, 2007 in which Xechem discloses that suit was filed against it by Col. Pandey on or about October 23, 2007 and summarizes the allegations contained therein.

12)     Attached hereto as Exhibit I is a true copy of correspondence from the law office of Simon and Lupo, counsel for Xechem, dated November 15, 2007 in which counsel seeks to negotiate the withdrawal of the Order to Show Cause.

13)     On or about December 3, 2007, I spoke with Frederick Simon, Esq. of Simon and Lupo to remind him that the time for Xechem to answer the Complaint had lapsed and to inquire about Xechem's intent regarding answering the Complaint.  As I recall, Mr. Simon acknowledged that he was aware of the deadline, but that he did not have direction from his client about answering.

14)     Attached hereto as Exhibit J is a true copy of a press release issued by Xechem on June 4, 2008 disclosing current financial difficulties and the imminent deregistration of it stock by the SEC.

15)   I have personally researched the SEC filings of Xechem throughout this case and find no filings after February 2008. I have been unable to find any other public filings or press releases from February 2008 until the June 4, 2008.

16)   Attached hereto as Exhibit K is a true copy of the internet homepage for Xechem International Inc. which I printed on September 17, 2007. The internet address for this hompage was www.xechem.com.

17)   Attached hereto as Exhibit L is a true copy of the homepage appearing at www.xechem.com as of June 16, 2008.

I hereby certify the foregoing statements made by me are true. I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment and penalty.

Dated: June 17, 2008

Patricia Mullon Zohn







ZOHN & ZOHN, LLP
Patricia M. Zohn, Esq.
744 Mountain Boulevard
Watchung, New Jersey  07069
Telephone (908) 791-0312
Facsimile (908) 791-0316
pzohn@zohnlaw.com
Attorney for Plaintiff Bhuwan Pandey

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

. . . . . . . . . . . . . . . . . . . . . . . . . . . .

| | |
|---|---|
| **BHUWAN PANDEY** | : |
| | : |
| Plaintiff, | : |
| | : |
| v. | : DOCKET No. |
| | : |
| **XECHEM INTERNATIONAL** | : |
| **CORPORATION; ROBERT** | : |
| **SWIFT; STEPHEN F. BURG;** | : **CERTIFICATION OF SERVICE** |
| **ADESOJI ADELAJA; MARTIN** | : |
| **BIGGS; RAMESH PANDEY;** | : |
| **JOHN AND JANE DOES 1-25;** | : |
| **And ABC CORPORATIONS 1-25,** | : |
| | : |
| Defendants. | : |

. . . . . . . . . . . . . . . . . . . . . . . . . . . .

I, RACHEL ROSEN, of full age, hereby certifies as follows:

1)     I am an administrative assistant at Zohn & Zohn, LLP, counsel for plaintiff

Bhuwan Pandey in the captioned matter.

2)     On October 23, 2007, I caused the following documents to be served:

- Civil Cover Sheet;
- Verified Complaint and Jury Demand;
- Application for Order to Show Cause with Temporary Restraints and Preliminary Injunction;
- Plaintiff's Brief in Support of Order to Show Cause with Temporary Restraints and  Preliminary Injunction;
- Certification of Bhuwan Pandey in Support of Order to Show Cause;

- Form of Order;
- Certification of Service.

3) The documents were served on the following parties in the manner indicated:

- Clerk, United States District Court (sent by courier only)
  District of New Jersey
  Clarkson S. Fisher Federal Building & U.S. Courthouse
  402 East State Street
  Trenton, N.J. 08608

- Xechem International Corporation (sent by overnight delivery only)
  379 Cornwall Street (West Tower)
  Edison, N.J. 08818

- Michael Bowen, Esq. (sent by overnight delivery only)
  Foley & Lardner
  777 East Wisconsin Avenue
  Milwaukee, WI 53202

- Anne Sekel, Esq. (sent by overnight delivery only)
  Foley & Lardner, LLP
  90 Park Avenue
  New York, N.Y. 10016

- Frederick A. Simon, Esq. (sent by overnight delivery only)
  Simon & Lupo
  1254 Highway 27
  North Brunswick, N.J. 08902

Dated: October 23, 2007

*Rachel Rosen*
Rachel Rosen

2

*EXHIBIT* 

O 440 (Rev. 10/93) Summons in a Civil Action        **RETURN OF SERVICE**

ERVICE OF:        EXHIBITS, SUMMONS, VERIFIED COMPLAINT, ORDER TO SHOW CAUSE, EXHIBITS, CERTIFICATION,
RIEF, CIVIL COVER SHEET

FFECTED (1) BY ME:    MARIAN ZWIERZYNSKI

TLE:        PROCESS SERVER                DATE: 10/29/2007  11:21AM

HECK ONE BOX BELOW TO INDICATE APPROPRIATE METHOD OF SERVICE:

 Served personally upon the defendant:

:CHEM INTERNATIONAL CORP.

ace where served:

9 THORNALL ST  WEST TOWER EDISON TWP. NJ 08817

 Left copies thereof at the defendant's dwelling house or usual place of abode with a person of suitable age and discretion then residing
 rein. Name of person with whom the summons and complaint were left:

ONARD MUDRY

lationship to defendant: AUTHORIZED AGENT

scription of person accepting service:

X: M   AGE: 51-65   HEIGHT: 5'9"-6'0"   WEIGHT: OVER 200 LBS.   SKIN: WHITE   HAIR: GRAY   OTHER: GLASSES

To the best of my knowledge, said person was not engaged in the U.S. Military at the time of service

FILED

Stamped copy will
arrive shortly

**STATEMENT OF SERVER**

VEL $ _____.____        SERVICES $ _____.____        TOTAL $ _____.____

**DECLARATION OF SERVER**

 I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in
this Return of Service and Statement of Server is true and correct.

E: _10_,_29_, 20 _07_                            L.S.
                        SIGNATURE OF MARIAN ZWIERZYNSKI
                        GUARANTEED SUBPOENA SERVICE, INC.
                        2009 MORRIS AVENUE
                        UNION, NJ 07083

ORNEY:        PATRICIA M. ZOHN, ESQ.
NTIFF:        BHUWAN PANDEY                                    10/29/07
ENDANT:        XECHEM INTERNATIONAL CORP., ET AL
UE:        DISTRICT                            JACQUELINE GONZALEZ
KET:        07 CV 05123 PGS                        NOTARY PUBLIC OF NEW JERSEY
                                        My Commission Expires Dec. 7, 2010

                                                SM

s to who may serve a summons see Rule 4 of the Federal Rules of Civil Procedure.



Case 1:08-cv-03231    Document 23-7    Filed 08/01/2008    Page 14 of 49

SEC Info · Xechem International Inc · NT 10-Q · For 3/31/97    Case 2:07-cv-05123-PGS-ES    Document 1-30/97    Filed 06/18/2008    Page 17 of 5

*SEC Info*   Home   Search   My Interests   Help   Sign In   *Please Sign In*

# Xechem International Inc · NT 10-Q · For 3/31/97

**Filed On 5/13/97 · SEC File 0-23788 · Accession Number 913906-97-44**

Find    in this entire Filing.    Show Docs searched and every "hit".
Help...    *Wildcards:* ? (any letter). * (many). *Logic:* for Docs: & (and), | (or); for Text: | (anywhere). "(&)" (near).

| As Of | Filer | Filing | On/For/As | Docs:Pgs | Issuer | Agent |
|-------|-------|--------|-----------|----------|--------|-------|
| 5/13/97 | Xechem International Inc | NT 10-Q | 3/31/97 | 1:4 | | 913906 |

### Notice of a Late Filing of Form 10-Q or 10-QSB · Form 12b-25
### Filing Table of Contents

| Document/Exhibit | Description | Pages | Size |
|------------------|-------------|-------|------|
| 1: NT 10-Q    Extension 10q | | 4± | 19K |

| NT 10-Q | 1st "Page" of 2 | TOC | Top | Previous | Next | Bottom | Just 1st |

**U.S. SECURITIES AND EXCHANGE COMMISSION**
**WASHINGTON, D.C.  20549**

**NOTIFICATION OF LATE FILING**

**FORM 12b-25**

SEC File Number  0-23788                    Cusip Number  983895
                 ----------------------                   --------

[Check One]
|_| Form 10-K|_| Form 20-F |_| Form 11-K |X| Form 10-Q |_| Form N-SAR

For the Period Ended:  March 31, 1997

[ ] Transition  Report on Form 10-K [ ]  Transition  Report on
Form 20-F [ ]  Transition  Report on Form 11-K [ ]  Transition
Report on Form 10-Q [ ]  Transition  Report on Form  N-SAR For
the Transition Period Ended

Read Instructions [on back page] Before Preparing Form.
Please Print or Type

Nothing          in  this  form  shall  be   constructed  to  imply  that  the
                 Commission has verified any information contained herein

If               the  notification  relates to a portion of the filing  checked
                 above, identify the Item[s] to which the notification relates:

**PART I – REGISTRANT INFORMATION**
Full Name of Registrant:   XECHEM INTERNATIONAL, INC.
Former Name if Applicable:
Address of Principal Executive Office [Street and Number]:
**100 JERSEY AVENUE – B310**
City, State and Zip Code:
**NEW BRUNSWICK, NEW JERSEY 08901**
PART II – RULES 12b-25[b] and [c]
If the subject report could not be filed without  unreasonable effort or expense
and the registrant seeks relief pursuant to Rule 12b-25[b], the following should
be completed.

[Check box if appropriate]

        [a] The reasons  described in  reasonable  detail in Part III of this form
            could not be eliminated without unreasonable effort or expenses;

[X]      [b] The subject annual  report,  semi-annual  report,  transition report
            on Form 10-K,  Form 2-F, Form 11-K,  Form N-SAR,  or portion thereof ,
            will be filed on or before the  fifteenth  calendar day  following the
            prescribed  due date;  or the subject  quarterly  report or transition
            report on Form 10- Q, or  portion  thereof  will be filed on or before
            the fifth calendar day following the prescribed due date; and

        [c] The accountant's statement or other exhibit required by Rule 12b-25[c]
            has been attached if applicable.

| NT 10-Q | Last "Page" of 2 | TOC | 1st | Previous | Next | Bottom | Just 2nd |

**PART III — NARRATIVE**
State below in reasonable detail the reasons why the Form 10-K, 20-F, 11-K, 10-Q or N-SAR, or the transition report or portion thereof, could not be filed within the prescribed time period. The accounting staff of the registrant has not completed its review of the financial records of the registrant necessary to prepare the financial statements for this filing. PART IV — OTHER INFORMATION
    [1] Name and telephone number of person to contact in regard to this notification

        Leonard A. Mudry            (908)         247-3300
        [Name]                  [Area Code]   [Telephone No.]

    [2] Have all other periodic reports required under Section 13 or 15[d] of the Securities and Exchange Act of 1934 or Section 30 of the Investment Company Act of 1940 during the preceding 12 months [or for such shorter period that the registrant was required to file such reports] been filed? If answer is no, identify report[s].[ X ] Yes[ ] No

    [3] Is it anticipated that any significant change in results of operations from the corresponding period for the last fiscal year will be reflected by the earnings statements to be included in the subject report or portion thereof? [ ] Yes[ X ] No

        If so, attach an explanation of the anticipated change, both narratively and quantitatively, and, if appropriate, state the reasons why a reasonable estimate of the results cannot be made.

                    XECHEM INTERNATIONAL, INC.
                [Name of Registrant as Specified in Charter]

has caused this notification to be signed on its behalf by the undersigned thereunto duly authorized.

Date:            May 13, 1997              By: /s/ Leonard A. Mudry
    ---------------------------------       ---------------------
                                            Leonard A. Mudry, VP - Finance &
                                            Operations

INSTRUCTION: The form may be signed by an executive officer of the registrant or by any other duly authorized representative. The name and title of the person signing the form shall be typed or printed beneath the signature. If the statement is signed on behalf of the registrant by an authorized representative [other than an executive officer], evidence of the representative's authority to sign on behalf of the registrant shall be filed with the form.

                        **ATTENTION**
        Intentional misstatements or omissions of fact constitute
            Federal Criminal Violation [See 18 U.S.C. 1001]

                    **GENERAL INSTRUCTIONS**

1.  This form is required by Rule 12b-25 [17 CFR 240.12b-25] of the General Rules and Regulations under the Securities Exchange Act of 1934.

2.  One signed original and four conformed copies of this form and amendments thereto must be completed and filed with the Securities and Exchange Commission, Washington, D.C. 20549, in accordance with Rule O-3 of the General Rules and Regulations under the Act. The information contained in or filed with the form will be made a matter of the public record in the Commission files.

3.  A manually signed copy of the form and amendments thereto shall be filed with each national securities exchange on which any class of securities of the registrant is registered.

4   Amendments to the notifications must also be filed on form 12b-25, but need not restate information that has been correctly furnished. The form shall be clearly identified as an amendment notification.

5.  Electronic Filers - This form shall not be used by electronic filers unable to timely file a report solely due to electronic difficulties. Filers unable to submit a report within the time period prescribed due to difficulties in electronic filing should comply with either Rule 201 or Rule 202 of Regulation S-T or apply for an adjustment in filing date pursuant to Rule 13[b] of Regulation S-T.

**PART III — NARRATIVE**
State below in reasonable detail the reasons why the Form 10-K, 20-F, 11-K, 10-Q or N-SAR, or the transition report or portion thereof, could not be filed within the prescribed time period. The accounting staff of the registrant has not completed its review of the financial records of the registrant necessary to

prepare the financial statements for this filing. PART IV - OTHER INFORMATION
    [1]  Name and telephone number of person to contact in regard to this
notification

              Leonard A. Mudry                (908)           247-3300
                  [Name]                    [Area Code]    [Telephone No.]

    [2] Have all other  periodic  reports  required under Section 13 or 15(d) of
        the  Securities and Exchange Act of 1934 or Section 30 of the Investment
        Company Act of 1940 during the  preceding 12 months [or for such shorter
        period  that the  registrant  was required to file such  reports] been
        filed? If answer is no, identify report[s].[ X ] Yes[ ] No

    [3] Is it anticipated  that any significant  change in results of operations
        from the corresponding period for the last fiscal year will be reflected
        by the  earnings  statements  to be included  in the  subject  report or
        portion thereof? [ ] Yes[ X ] No

        If so, attach an explanation of the anticipated change, both narratively
        and quantitatively,  and,  if  appropriate,  state  the  reasons  why a
        reasonable estimate of the results cannot be made.

                          XECHEM INTERNATIONAL, INC.
                  [Name of Registrant as Specified in Charter]

has caused this notification to be signed on its behalf by the undersigned
thereunto duly authorized.

Date:               May 13, 1997        By:
                                            Leonard A. Mudry,
                                            VP - Finance & Operations

INSTRUCTION: The form may be signed by an executive officer of the registrant or
by any other duly  authorized  representative.  The name and title of the person
signing  the form  shall be typed or  printed  beneath  the  signature.  If the
statement is signed on behalf of the registrant by an authorized  representative
[other than an executive officer], evidence of the representative's authority to
sign on behalf of the registrant shall be filed with the form.

                               ATTENTION
            Intentional misstatements or omissions of fact constitute
                  Federal Criminal Violation  [See 18 U.S.C. 1001]

                         GENERAL INSTRUCTIONS

1.  This form is  required  by Rule  12b-25 [17 CFR  240.12b-25]  of the General
    Rules and Regulations under the Securities Exchange Act of 1934.

2.  One signed  original and four  conformed  copies of this form and amendments
    thereto must be  completed  and  filed  with the  Securities  and Exchange
    Commission, Washington, D.C. 20549, in  accordance  with Rule 0-3 of the
    General Rules and Regulations under the Act. The information contained in or
    filed  with  the  form  will be made a matter  of the  public  record  in the
    Commission files.

3.  A manually  signed copy of the form and  amendments  thereto  shall be filed
    with each national  securities  exchange on which any class of securities of
    the registrant is registered.

4   Amendments to the notifications  must also be filed on form 12b-25, but need
    not restate information that has been correctly furnished. The form shall be
    clearly identified as an amendment notification.

5.  Electronic  Filers - This form shall not be used by electronic filers unable
    to timely file a report solely due to electronic difficulties. Filers unable
    to submit a report within the time period  prescribed due to difficulties in
    electronic  filing  should  comply  with either  Rule  201 or  Rule  202 of
    Regulation S-T or apply for an  adjustment  in filing date pursuant to Rule
    13(b) of Regulation S-T.

**Dates Referenced Herein  *and*  Documents Incorporated By Reference**

| *This NT 10-Q Filing* | *Date* | *Referenced-On Page* | | *Other Filings* |
| --- | --- | --- | --- | --- |
| | | *First* | *Last* | |
| For The Period Ended | 3/31/97 | 1 | | 10QSB |
| Filed On / Filed As Of | 5/13/97 | 2 | | |
| | 5/14/97 | | | |
| | | | | |
| Top | | | | List All Filings |

Filing Submission   -   Alternative Formats (Word / Rich Text, HTML, Plain Text, SGML, XML, et al.)

*Copyright © 2008 Fran Finnegan & Company  All Rights Reserved.*
*www.secinfo.com – Mon, 16 Jun 2008 23:11:55.0 GMT – Privacy – Help*



*SEC Info*    Home    Search    My Interests    Help    Sign In    *Please Sign In*

## Mudry Leonard · 3 · Xechem International Inc · For 2/23/04

**Filed On 2/24/04 12:16pm ET · SEC File 0-23788 · Accession Number 1279257-4-1**

Find | in this entire Filing.    Show  Docs searched    and  every "hit".
Help...    *Wildcards:* ? (any letter), * (many).   *Logic:* for Docs: & (and), | (or);  for Text: | (anywhere), "(&)" (near).

| As Of | Filer | Filing | As/For/On | Docs:Pgs | Issuer |
|--------|-------|--------|-----------|----------|--------|
| 2/24/04 | Mudry Leonard | 3 | 2/23/04 | 1:4 | Xechem International Inc |

### Initial Statement of Beneficial Ownership of Securities · Form 3
### Filing Table of Contents

| Document/Exhibit | Description | Pages | Size |
|------------------|-------------|-------|------|
| 1: 3 | Initial Statement of Beneficial Ownership of Securities | XML | 7K |

*This is an EDGAR XML document rendered as filed.*

SEC Form 3

# FORM 3

### UNITED STATES SECURITIES AND EXCHANGE COMMISSION
Washington, D.C. 20549

## INITIAL STATEMENT OF BENEFICIAL OWNERSHIP OF SECURITIES

| OMB APPROVAL | |
|---|---|
| OMB Number: | 3235-0104 |
| Expires: | February 28, 2011 |
| Estimated average burden hours per response | 0.5 |

Filed pursuant to Section 16(a) of the Securities Exchange Act of 1934,
Section 17(a) of the Public Utility Holding Company Act of 1935 or Section 30
(h) of the Investment Company Act of 1940

| 1. Name and Address of Reporting Person* | 2. Date of Event Requiring Statement (Month/Day/Year) | 3. Issuer Name **and** Ticker or Trading Symbol |
|---|---|---|
| MUDRY LEONARD | | XECHEM INTERNATIONAL INC [ xkcm ] |

| (Last) (First) (Middle) | 2/23/04 | 4. Relationship of Reporting Person (s) to Issuer (Check all applicable) | 5. If Amendment, Date of Original Filed (Month/Day/Year) |
|---|---|---|---|
| 100 JERSEY AVENUE, BUILDING B, SUITE 310 | | X Director   10% Owner<br>Officer (give title below)   Other (specify below) | |
| (Street)<br>NEW   NJ   08901 BRUNSWICK<br>(City) (State) (Zip) | | | 6. Individual or Joint/Group Filing (Check Applicable Line)<br>X Form filed by One Reporting Person<br>Form filed by More than One Reporting Person |

### Table I - Non-Derivative Securities Beneficially Owned

| 1. Title of Security (Instr. 4) | 2. Amount of Securities Beneficially Owned (Instr. 4) | 3. Ownership Form: Direct (D) or Indirect (I) (Instr. 5) | 4. Nature of Indirect Beneficial Ownership (Instr. 5) |
|---|---|---|---|
| Common stock | 500 | D | |

### Table II - Derivative Securities Beneficially Owned
(e.g., puts, calls, warrants, options, convertible securities)

| 1. Title of Derivative Security (Instr. 4) | 2. Date Exercisable and Expiration Date (Month/Day/Year) | | 3. Title and Amount of Securities Underlying Derivative Security (Instr. 4) | | 4. Conversion or Exercise Price of Derivative Security | 5. Ownership Form: Direct (D) or Indirect (I) (Instr. 5) | 6. Nature of Indirect Beneficial Ownership (Instr. 5) |
|---|---|---|---|---|---|---|---|
| | Date Exercisable | Expiration Date | Title | Amount or Number of Shares | | | |
| Option | 7/11/00 | 7/11/10 | Common stock | 222 | 1.5 | D | |
| Option | 1/9/01 | 1/9/11 | Common stock | 166 | 1.5 | D | |
| Option | 10/18/02 | 10/18/12 | Common stock | 2,000 | 1.5 | D | |
| Option | 2/18/04 | 2/18/14 | Common stock | 5,000,000 | 0.01 | D | |

**Explanation of Responses:**

Leonard Mudry    2/24/04
** Signature of Reporting  Date
Person

Reminder: Report on a separate line for each class of securities beneficially owned directly or indirectly.

* If the form is filed by more than one reporting person, *see* Instruction 5 (b)(v).

** Intentional misstatements or omissions of facts constitute Federal Criminal Violations *See* 18 U.S.C. 1001 and 15 U.S.C. 78ff(a).

Note: File three copies of this Form, one of which must be manually signed. If space is insufficient, *see* Instruction 6 for procedure.

**Persons who respond to the collection of information contained in this form are not required to respond unless the form displays a currently valid OMB Number.**

Filing Submission   -   Alternative Formats (Word / Rich Text, HTML, Plain Text, SGML, XML, et al.)

Copyright © 2008 Fran Finnegan & Company  All Rights Reserved.
www.secinfo.com - Mon, 16 Jun 2008 23:04:55.1 GMT - Privacy - Help





EDGAR Online

About EDGAR Online   |   Login

Sign up today!
EDGAR Review

Advertisement

Discover the World with Matt Lauer    What is the world's smallest continent?    Live Search    Play The Game Now!

Do more with this Ad

WHAT EMPLOYERS WANT
thoughts from professionals at Pfizer, Honeywell, Hilton, 3M and more.


ISM
Institute for supply management

The following is an excerpt from a 10KSB SEC Filing, filed by XECHEM INTERNATIONAL INC on 4/15/2004.

Jump

to :  — Use Sections To Navigate Through The Document —

ITEM 9.    DIRECTORS, EXECUTIVE OFFICERS, PROMOTERS AND CONTROL PERSONS;

COMPLIANCE WITH SECTION 16(A) OF THE EXCHANGE ACT.

The names of the directors and executive officers of Xechem and their
respective ages and positions with Xechem are as follows:

| NAME | AGE | POSITION WITH XECHEM |
| --- | --- | --- |
| Dr. Ramesh C. Pandey (1)(4) | 65 | Chief Executive Officer, President, Chairman of the Board of Directors, Secretary and Treasurer. |
| Stephen F. Burg (1)(2)(3)(4) | 66 | Director and Assistant Treasurer |
| Leonard Mudry (1)(2)(3)(4) | 66 | Director |
| Adesoji Adelaja, Ph.D. | 52 | Director |

(1)  Member of Stock Option Committee

(2)  Member of Compensation Committee.

(3)  Member of Audit Committee.

(4)  Member of Nominating committee

All directors hold office until their successors have been elected and
qualified or until their earlier resignation or removal. Directors are elected
annually and serve without remuneration for service as directors. Officers serve
at the discretion of the Board of Directors. There are no family relationships
among any of our directors or executive officers.

RAMESH C. PANDEY, PH.D., is our founder. He has been Chief Executive
Officer and President and a director of Xechem Inc. since its formation in 1990
and our Chief Executive Officer, President, and Chairman of the Board of

Directors since our formation in February 1994. From 1984 to March 1990, Dr. Pandey was the President and Chief Scientist of our predecessor, which was a subsidiary of LyphoMed. Dr. Pandey served as a visiting Professor at the Waksman Institute of Microbiology at Rutgers University from 1984 to 1986. Dr. Pandey has also served as scientist, consultant, and research associate for several universities and private laboratories. Dr. Pandey has published over eighty articles in professional publications such as the Journal of Antibiotics, the Journal of the American Chemical Society, the Journal of Industrial Microbiology and the Journal of Natural Products. Dr. Pandey is a member of the editorial board of the Journal of Antibiotics and of several professional societies.

STEPHEN F. BURG has been a director since 1996. Mr. Burg has been chief executive officer of SB Corporate Consulting, Inc., which offers corporate growth strategies for public and private companies, nationally and internationally. From 1978 to 1986, Mr. Burg was Vice President-Corporate Acquisitions for Evans Products Company and from 1973 to 1978 was Corporate Director-Acquisitions and Human Services for Jack August Enterprises. Mr. Burg serves as a consultant to various businesses.

42

LEONARD MUDRY became a director in January 2004. Mr. Mudry is currently a consultant to a number of companies. From October 1998 to May 2000, he held the position of business consultant with Strategic Business Organisation in Cranford, NJ. Mr. Mudry was Senior Vice-President of Finance and Operations of Xechem International Inc. from May 1994 to September 1998.From February 1991 to April 1994, he was Vice President -Operations of MediGebe, Inc., a pre-natal testing company. Prior to joining MediGene, Mr. Mudry was Vice President-Operations/Finance for Princeton Diagnostic Labs from March 1990 to January 1991; Senior Vice President and Chief Financial Officer of American Medical Laboratories from January 1987 to March 1990; held various positions with Hoffman-LaRoche, Inc. and its subsidiaries, a major pharmaceutical company, from 1969 to 1987.

ADESOJI ADELAJA, PH.D., became a director in March, 2004. He is the John A. Hannah Distinguished Professor in Land Policy and Director of Research for the Victor Institute at Michigan State University. He holds joint faculty appointments as professor in the following departments: Agricultural Economics; Geography; and Community, Agricultural and Recreational Resource Studies. Dr. Adelaja commenced his appointment at MSU on January 1, 2004. Prior to that, he served as the Executive Dean of Agriculture and Natural Resources, the Dean of Cook College, the Executive Director of the New Jersey Agricultural Experiment Station and Director of Rutgers Cooperative Extension at Rutgers University.

SECTION 16(A)    BENEFICIAL REPORTING COMPLIANCE

Our executive officers, directors and shareholders beneficially owning more than 10% of our Common Stock are required under the Exchange Act to file reports of ownership of Common Stock of Xechem with the Securities and Exchange Commission. Copies of those reports must also be furnished to us. Based solely upon a review of the copies of reports furnished to us and written representations that no other reports were required, we believe that during the preceding year all filing requirements applicable to executive officers, directors and shareholders beneficially owning more than 10% of our Common Stock have been complied with.

**COMMITTEES**

Our Stock Option Committee, established in May 1995, presently consists of Dr. Pandey and Mr. Burg. The Stock Option Committee administers the 1995 Stock Option Plan and reviews and recommends to the Board of Directors stock options to be granted.

Our Compensation Committee, established in May 1995, presently consists of Mr. Burg. The Compensation Committee reviews and recommends to the Board of Directors the compensation and benefits of all officers of Xechem and reviews general policy matters relating to compensation and benefits of employees of Xechem.

Case 1:08-cv-03231-PGG-ESK Document 23-7 Filed 08/18/2008 Page 4 of 27

Our Audit Committee, established in May 1995, presently consists of Mr.
Burg and Mr. Mudry. The Audit Committee reviews with our independent public
accountants the scope and timing of their audit services and any other services
they are asked to perform, the accountants report on our financial statements
following completion of their audit and our policies and procedures with respect
to internal accounting and financial controls. In addition, the Audit Committee
makes annual recommendations to the Board of Directors for the appointment of
independent accountants for the ensuing year.

43

© 1995-2008 EDGAR Online, Inc. All rights reserved • NASDAQ: EDGR • Solutions for Corporations • Terms of Use • Privacy Statement



Case 1:08-cv-03231    Document 23-7    Filed 08/01/2008    Page 28 of 49

XECHEM INTERNATIONAL, INC. (Form: DEF 14A, Received: 09/22/2006 15:59:09) Page 1 of 66
Case 2:07-cv-06120-PGS-ES    Document 38-4    Filed 06/18/2008    Page 6 of 27

**SCHEDULE 14A**

Proxy Statement Pursuant to Section 14(a) of
the Securities Exchange Act of 1934 (Amendment No.1)

Filed by the Registrant |X|
Filed by a Party other than the Registrant |_|

Check the appropriate box:
|_| Preliminary Proxy Statement
|_| Confidential, for Use of the Commission Only (as permitted by Rule
14a-6(e)(2))
|X| Definitive Proxy Statement
|_| Definitive Additional Materials
|_| Soliciting Material Pursuant to ss.240.14a-12

# XECHEM INTERNATIONAL, INC.

(Name of Registrant as Specified In Its Charter)

(Name of Person(s) Filing Proxy Statement, if other than the Registrant)

**Payment of Filing Fee (Check the appropriate box):**

|X| No fee required

|_| Fee computed on table below per Exchange Act Rules 14a-6(i)(1) and 0-11
(1) Title of each class of securities to which transaction applies:

(2) Aggregate number of securities to which transaction applies:

(3) Per unit price or other underlying value of transaction computed pursuant to Exchange Act Rule 0-11 (set forth the amount on which the filing fee is calculated and state how it was determined):

(4) Proposed maximum aggregate value of transaction:

(5) Total fee paid:

|_| Fee paid previously with preliminary materials.
|_| Check box if any part of the fee is offset as provided by Exchange Act Rule 0-11(a)(2) and identify the filing for which the offsetting fee was paid previously. Identify the previous filing by registration statement number, or the Form or Schedule and the date of its filing.
(1) Amount Previously Paid:

(2) Form, Schedule or Registration Statement No.:

(3) Filing Party:

(4) Date Filed:

**XECHEM INTERNATIONAL, INC.**

**NOTICE OF**
**ANNUAL MEETING OF STOCKHOLDERS**
**AND**
**PROXY STATEMENT**

Date:      October 24, 2006
Time:      10:00 a.m.
Place:     Xechem International, Inc.
           New Brunswick Technology Center
           100 Jersey Avenue, Building B, Suite 310
           New Brunswick, New Jersey  08901

XECHEM INTERNATIONAL INC (Form: DEF 14A, Received: 09/22/2006 15:59:09)     Page 3 of 66

Xechem International, Inc. New Brunswick Technology Center 100 Jersey Avenue, Building B, Suite 310 New Brunswick, New Jersey 08901

**NOTICE OF ANNUAL MEETING OF STOCKHOLDERS**
**TO BE HELD**
**OCTOBER 24, 2006**

Dear Stockholder:

Our annual stockholders' meeting will be held on October 24, 2006, at 10:00 a.m. eastern daylight savings time, at our corporate headquarters at the New Brunswick Technology Center, 100 Jersey Avenue, Building B, Suite 310, New Brunswick, New Jersey 08901. At our annual meeting, we will ask you to:

o elect three nominees as directors to serve until the next annual meeting of stockholders and until their respective successors are elected and qualified;

o ratify the selection of Moore Stephens, P.C. as our independent registered public accounting firm for 2006;

o approve the adoption of the 2006 Stock Award Plan authorizing the grant of options to purchase 150,000,000 shares of our common stock;

o approve an amendment to our certificate of incorporation to increase the number of authorized shares of our common stock from 1,950,000,000 to 5,000,000,000, and

o transact any other business that may be properly presented at the annual meeting.

If you were a stockholder of record at the close of business on September 12, 2006, you may vote in person at the annual meeting and any postponements or adjournments of the meeting. A list of these stockholders will be available at our offices before the annual meeting.

Please sign, date and promptly return the enclosed proxy card in the enclosed envelope, so that your shares will be represented whether or not you attend the annual meeting.

By order of the Board of Directors,

```
                                    /s/ Ramesh C. Pandey

                                    Ramesh C. Pandey, Ph.D.
                                    President, CEO, CFO and Chairman of the Board

        September 22, 2006
```

XECHEM INTERNATIONAL INC (Form: DEF 14A, Received: 09/22/2006 16:59:09)

TABLE OF CONTENTS

                                                                      PAGE

INFORMATION ABOUT THE ANNUAL MEETING.....................................1

Information About Attending the Annual Meeting...........................1

Annual Report............................................................1

Information About Voting.................................................1

Information Regarding Tabulation of the Vote.............................2

Quorum Requirement.......................................................2

Information About Votes Necessary for Action to be Taken.................3

Costs of Proxies.........................................................3

Other Matters............................................................3

Available Information....................................................3


STOCK OWNERSHIP..........................................................4

Stock Owned by Certain Beneficial Owners and Management..................4

Section 16(a) Beneficial Ownership Reporting Compliance..................5

Policy with respect to Section 162(m)...................................5

Interest of Certain Persons in Matters to Be Acted On...................5


CORPORATE GOVERNANCE.....................................................5

Communicating with Directors.............................................6

Audit Committee..........................................................6

Other Committees.........................................................6


PROPOSAL NO. 1 - ELECTION OF DIRECTORS...................................7

Director Compensation....................................................8

Meetings of the Board of Directors, Audit Committee and Stockholders....8


AUDIT COMMITTEE REPORT...................................................9

i

EXECUTIVE COMPENSATION...................................................................11

Executive Compensation...................................................................11

Executive Officers.......................................................................12

Stock Option Grants......................................................................12

Certain Relationships and Related Transactions...........................................13

PROPOSAL NO. 2 – RATIFY APPOINTMENT OF MOORE STEPHENS, P.C............................16

Fees to Independent Registered Public Accounting Firm....................................16

Approval of Services and Fees............................................................16

Aggregate Option Exercises in Fiscal 2005 and Fiscal Year-End Option Values............18

PROPOSAL NO. 3 – APPROVAL OF THE 2006 STOCK AWARD PLAN................................19

2006 Stock Award Plan....................................................................19

PROPOSAL NO. 4 – APPROVAL OF INCREASE IN THE NUMBER OF AUTHORIZED SHARES.............24

Reasons for and General Effect of the Proposed Amendment.................................24

Other Considerations.....................................................................25

COMPENSATION COMMITTEE INTERLOCKS AND INSIDER PARTICIPATION.............................26

STOCKHOLDER PROPOSALS....................................................................26

ANNEX A – 2006 STOCK AWARD PLAN.................................................Annex A-1

ANNEX B – NOMINATING COMMITTEE CHARTER.........................................Annex B-1

ANNEX C – AUDIT COMMITTEE CHARTER..............................................Annex C-1

ANNEX D – CERTIFICATE OF AMENDMENT TO CERTIFICATE
OF INCORPORATION...............................................................Annex D-1

ii

This proxy statement contains information related to the annual meeting of stockholders to be held October 24, 2006, beginning at 10:00 a.m. eastern daylight savings time, at our corporate headquarters at the New Brunswick Technology Center, 100 Jersey Avenue, Building B, Suite 310, New Brunswick, New Jersey 08901, and at any postponements or adjournments thereof. This proxy statement is being mailed to stockholders on or about September 29, 2006.

## INFORMATION ABOUT THE ANNUAL MEETING

## INFORMATION ABOUT ATTENDING THE ANNUAL MEETING

The board of directors is soliciting your vote for the 2006 annual meeting of stockholders. At the meeting, you will be asked to:

o elect three nominees as directors to serve until the next annual meeting of stockholders and until their respective successors are elected and qualified;

o ratify the selection of Moore Stephens, P.C. as our independent registered public accounting firm for 2006;

o approve the adoption of the 2006 Stock Award Plan authorizing the grant of options to purchase 150,000,000 shares of our common stock;

o approve an amendment to our certificate of incorporation to increase the number of authorized shares of our common stock from 1,950,000,000 to 5,000,000,000; and

o transact any other business that may be properly presented at the annual meeting.

If you own shares of stock in more than one account, such as individually and jointly with your spouse, you may receive more than one set of these materials. Please make sure to vote all of your shares. This proxy statement summarizes information we are required to provide to you under the rules of the Securities and Exchange Commission. If you plan on attending the annual meeting of stockholders in person, please contact Mr. Howard Becker, our vice president-operations, at (732) 247-3300 so that we can arrange for sufficient space to accommodate all attendees.

## ANNUAL REPORT

Our annual report for the fiscal year ended December 31, 2005 is enclosed with this proxy statement.

## INFORMATION ABOUT VOTING

You will have one vote for each share of common stock or voting stock equivalent that you owned at the close of business on September 12, 2006, which is the record date for the annual meeting. On the record date, there were 1,406,083,803 shares of common stock outstanding, 2,500 shares of Class A Voting Preferred Stock, no Class B 8% Preferred Stock, no Class C Series 4 Voting Convertible Preferred Stock, no Class C Series 5 Voting Convertible Preferred Stock, 35,228 shares of Class C Series 6 Voting Preferred Stock, 666 shares of Class C Series 7 Voting Convertible Preferred Stock, and no Class C Series 8 Voting Convertible Preferred Stock.

XECHEM INTERNATIONAL INC - Form DEF 14A - Received 09/22/2006 16:59:09     Page 2 of 66
Case 2:07-cv-05123-PGS-ES     Document 36-4     Filed 06/10/2008     Page 12 of 66

Dr. Pandey, our CEO, Chairman of the Board and Chief Financial Officer owns all (2,500) of the shares of Class A Voting Preferred Stock. Each share of Class A Voting Preferred Stock is entitled to 0.3333 votes. Therefore, Dr. Pandey's 2,500 shares of Class A Voting Preferred Stock is the equivalent of 833 votes.

Dr. Pandey is also the owner of all 35,228 shares of the Class C Series 6 Voting Preferred Stock. Each share of Class C Series 6 Voting Preferred Stock is entitled to 10,000 votes. Therefore, Dr. Pandey's 35,228 shares of Class C Series 6 Voting Preferred Stock is the equivalent of 352,280,000 votes.

There are 666 shares of Class C Series 7 Voting Convertible Preferred Stock convertible into 3,330,000 shares of common stock or the equivalent of 3,330,000 votes.

There is no cumulative voting. A majority of the outstanding shares, or 882,609,012 shares, must be present to hold the annual meeting. As of the record date, Dr. Pandey and his affiliates owned approximately 352,343,389 voting equivalent shares representing approximately 20% of the voting shares.

Your vote is important. As the holder of record for your shares, you may vote in person or by granting us a proxy to vote on each of the proposals. You may vote by proxy if you sign, date and return the proxy card in the enclosed envelope to us by U.S. Mail.

If you return your proxy card but do not indicate how your shares should be voted, they will be voted "for" in accordance with the board's recommendation for each proposal.

If you grant us a proxy, you may nevertheless revoke your proxy at any time before it is exercised by: (1) sending written notice to us, Attention:
Howard Becker, vice president-operations; (2) providing us with a later-dated proxy; or (3) attending the annual meeting in person and voting your shares. Merely attending the annual meeting, without further action, will not revoke your proxy.

## INFORMATION REGARDING TABULATION OF THE VOTE

We have hired Continental Stock and Transfer Company to solicit proxies on our behalf. In addition, Continental Stock and Transfer Company will tabulate all common stock votes cast at the annual meeting. Leonard Mudry, or his designee, will tabulate all preferred stock votes cast at the annual meeting and will act as the inspector of election.

## QUORUM REQUIREMENT

Stockholders owning a majority of our voting shares must be present in person or by proxy in order for action to be taken at the meeting. For these purposes, "abstentions" will be counted as present for determining whether a majority is present.

2



Case 1:08-cv-03231    Document 23-7    Filed 08/01/2008    Page 36 of 49

SEC Info - Xechem International Inc - 8-K - For 10/29/07
Case 2:07-cv-05129-PGS-ES    Document 30-4    Filed 06/18/2008    Page 14 Page 27 of 5

*This is an EDGAR HTML document rendered as filed.* [ *Alternative Formats* ]

Unassociated Document

SECURITIES AND EXCHANGE COMMISSION

Washington, D.C. 20549

FORM 8-K

CURRENT REPORT

Pursuant to Section 13 or 15(d) of the Securities and Exchange Act of 1934

Date of Report: October 29, 2007
(Date of earliest event reported)

XECHEM INTERNATIONAL, INC.

(Exact name of registrant as specified in the charter)

| Delaware | 0-23788 | 22-3284403 |
|---|---|---|
| (State or other jurisdiction of incorporation) | (Commission File No.) | (IRS Employer Identification No.) |

379 Thornall
Edison, New Jersey 08818
(Address of Principal Executive Offices)
(732) 205-0500
Registrant's telephone number including area code)

NOT APPLICABLE
(Former name or former address, if changed since last report)

Check the appropriate box below if the Form 8-K filing is intended to simultaneously satisfy the filing obligation of the registrant under any of the following provisions (see General Instruction A.2. below):

☐    Written communications pursuant to Rule 425 under the Securities Act (17 CFR 230.425)

☐    Soliciting material pursuant to Rule 14a-12 under the Exchange Act (17 CFR 240.14a-12)

☐    Pre-commencement communications pursuant to Rule 14d-2(b) under the Exchange Act (17 CFR 240.14d-2(b))

☐    Pre-commencement communications pursuant to Rule 13e-4(c) under the Exchange Act (17 CFR 240.13e-4(c))

Case 1:08-cv-03231     Document 23-7     Filed 08/01/2008     Page 37 of 49

SEC Info - Xechem International Inc - 8-K - For 10/29/07
Case 2:07-cv-06123-PGS - ES - Document 80-4     Filed 06/18/2008     Page 15 of 27 Page 2 of 5

**Item 2.04 Triggering Events that Accelerate or Increase a Direct Financial Obligation or an Obligation Under an Off-Balance Sheet Arrangement.**

Demand for Payment by Noteholder. The Company borrowed the sum of $3,000,000 from Alembic Limited and has reduced the principal balance of the loan over time to $1,000,000. The due date for the loan was September 30, 2007. It has asserted that as of October 19, 2007, there was an aggregate of $235,549 of accrued plus unpaid interest outstanding with respect to the loan. On October 31, 2007 Alembic delivered a letter to the Company stating that an event of default has occurred due to failure to pay the loan when due, and demanding that in the event the default is not cured within ten days following the date of the letter, the entire obligation evidenced by the loan will be due and payable. The Company has not as of the date of filing of this Form 8-K cured the above default.

**Item 5.02 Departure of Directors or Certain Officers; Election of Directors; Appointment of Certain Officers; Compensatory Arrangements of Certain Officers.**

On October 29, 2007, Adesoji Adelaja resigned his position as a director of the Company and of its Xechem Pharmaceuticals Nigeria, Limited subsidiary. The Company has not yet filled the vacancy created by such resignation. The Company expressed its gratitude for Dr. Adelaja's years of service as a member of its board of directors.

**Item 8.01 Other Items.**

On or about October 23, 2007 suit was filed in the U.S. District Court for the District of New Jersey by Bhuwan Pandey, a former vice president of the Company, against the Company and each of the members of its board of directors. The lawsuit alleges among other things that the Company has failed to pay the balance of his employment agreement severance obligations ($52,500) and its two $5,000 notes issued to him, has failed to effect an exercise of options to purchase 20,000,000 shares of its common stock to him and has failed to provide the proper continuation of coverage for him under its group health plans.

2

**SIGNATURE**

Pursuant to the requirements of the Securities Exchange Act of 1934, the registrant has duly caused this report to be signed on its behalf by the undersigned hereunto duly authorized.

Xechem International, Inc.

By: _____

By:  Robert Swift, Chief Oversight Officer

Dated: November 5, 2007

3

**Dates Referenced Herein**  *and*  **Documents Incorporated By Reference**

| *This 8-K Filing* | *Date* | *Other Filings* |
|---|---|---|
|  | ▼ |  |
|  | 9/30/07 |  |
|  | 10/19/07 |  |
|  | 10/23/07 |  |
| For The Period Ended | 10/29/07 |  |
|  | 10/31/07 |  |
| Filed On / Filed As Of | 11/5/07 |  |
| Top |  | List All Filings |

Filing Submission   -   Alternative Formats (Word / Rich Text, HTML, Plain Text, SGML, XML, et al.)

Copyright © 2008 Fran Finnegan & Company  All Rights Reserved.
www.secinfo.com - Fri, 13 Jun 2008 15:58:02.1 GMT - Privacy - Help



11/15/07  11:51 FAX 732 937 6536        SIMON & LUPO                    ☑001

FREDERICK A. SIMON*                **SIMON AND LUPO**              (732) 846-2200
RICHARD LUPO                          ATTORNEYS AT LAW          FAX (732) 937-6536

* CERTIFIED CIVIL                        1254 HIGHWAY 27
TRIAL ATTORNEY                   NORTH BRUNSWICK, NEW JERSEY 08902

                                      REFER TO FILE NO.

                                         L2249S
                                    November 15, 2007

**VIA FACSIMILE 908-791-0316**

Patricia M. Zohn, Esq.
Zohn & Zohn, LLP
744 Mountain Boulevard
Watchung, NJ  07069

        Re:   Bhuwan Pandey v. Xechem International, et als.
              Case No. 07-cv-5123 (PGS)

Dear Ms. Zohn:

        I have been requested by Xechem to forward to you a copy of Xechem's letter to
Col. Pandey dated October 26, 2007 requesting that he inform them of his election to
continue health coverage.  I also enclose the enrollment request form and advisory
bulletin.

        It appears that this correspondence moots your Order to Show Cause
application.  Please withdraw same.  Thank you for your courtesies.

                              Very truly yours,

                              FREDERICK A. SIMON
                              FOR THE FIRM

FAS:psg
Enclosures
cc:   Steve Burg, via email
      Ralph A. Mantynband, Esq., via email



Yahoo!   My Yahoo!   Mail   More Make Y! My Home Page                New User? Sign Up   **Sign In**   Help

## YAHOO! FINANCE    Search                    [ WEB SEARCH ]

**Welcome [Sign In]**                                    To track stocks & more, Register
**Financial News**

Enter symbol(s)                Basic         [ Get ]   Symbol Lookup

**Press Release**                                    Source: Xechem International Inc.

# Xechem International Operational Update
Wednesday June 4, 12:04 pm ET

EDISON, NJ--(MARKET WIRE)--Jun 4, 2008 – Xechem International (Other OTC:XKEM.PK - News) today
announced the following information regarding its operations, financial status and associated matters.

Overall Summary: The Company's efforts have been focused on operational re-structuring in the U.S. and the
oversight of its Xechem Nigeria Pharmaceuticals, Ltd. subsidiary, which is engaged in the production and sale of
NICOSAN(TM), a product used in the management of the symptoms of Sickle Cell Disease (SCD). This work is being
done under the supervision of Dr. Robert Swift, the Chief Oversight Officer of the Company.

U.S. Operations: As a cost saving measure and to improve research efficiency, the Company closed its operations in
New Brunswick, NJ in 2007. This closure included terminations of personnel and removal and transfer of lab and
production equipment valued at more than $2 million to Nigeria. Presently, the Company maintains an office in
Edison, New Jersey and employs 3 people in New Jersey on a full time basis, two located at Rutgers University, and
several people part time. It also utilizes laboratory space on a cooperative basis at Rutgers University and is engaged
in the further development of NICOSAN(TM) and the development of 5HMF, a compound licensed from Virginia
Commonwealth University for the treatment of sickle cell disease.

Xechem's scientists at Rutgers have developed a formulation of NICOSAN(TM) that can be made into tablets for sale
in the USA as a nutraceutical. Xechem International has identified an FDA certified manufacturing facility in the USA
that will produce NICOSAN(TM) as tablets and we expect to begin the sale of this new product in 3Q08, if there is
sufficient working capital. The Company will also seek distributors for sales of this product in the rest of the world as
a nutraceutical, which could generate additional cash flow in 2008. It is difficult to gauge the demand for this product
in the USA and Xechem International is therefore making no revenue projections at this time.

Xechem International continues to function on debt financing and is experiencing difficulty in raising working capital
necessary to run its operations, including the U.S. nutraceutical opportunity. Xechem International has generated an
additional $0.6 million of debenture sales during the approximately 12-month period following the over $7.0 million of
debenture sales in April 2007 (the"Prior Debentures") and estimates that it needs up to an additional $1 million to
continue operations in 2008. Xechem International remains in default with respect to its past due indebtedness for
past due payables and for borrowed monies borrowed during the term of previous management, which are estimated
to exceed $14,000,000 in the aggregate. The majority of the over $14,000,000 in aggregate is in the form of
convertible debt with attached warrants. If all of this convertible debt was converted and all corresponding warrants
exercised (after giving effect to the anti-dilution ratchet triggered by conversion rights at $0.0007 per share), these
additional shares would exceed 16,000,000,000.

The Company recently borrowed $28,676 from Dr. Swift and he posted a letter of credit for an additional $118,255 to
secure a certain obligation of the Company, secured by an interest in its contract with Virginia Commonwealth
University for the licensing of 5HMF. The loan calls for repayment within 90 days, subject to a 90-day extension. Dr.
Swift has accrued compensation from the Company since his appointment as Chief Oversight Officer of
approximately $152,500.

Nigerian Operations: Xechem Nigeria currently employs approximately 90 people. It has made improvements in its
production processes for NICOSAN(TM) and its goal is to continue to increase sales of NICOSAN(TM) now that its
production capabilities enable it to support a greater number of regular customers than was the case in 2007. Its

Case 1:08-cv-03231    Document 23-7    Filed 08/01/2008    Page 44 of 49

Xechem International Operational Update: Financial News - Yahoo! Finance    Page 2 of 3

Case 2:07-cv-05123-PGS-ES    Document 30-4    Filed 06/18/2008    Page 22 of 27

present capacity is about 50 million Naira or about $420,000 of product per month based on a single work shift. Xechem Nigeria's current sales effort is focused on Nigerian States buying NICOSAN(TM) to distribute to the children and adults in their States. We have been fortunate that we have shipped NICOSAN(TM) to three of the thirty-six Nigerian States (Niger, Nassarawa and Ondo) so far in 2008. We estimate revenue for Xechem Nigeria was approximately $350,000 in the first quarter of 2008. The revenues in Nigeria have been sufficient to support day-to-day operations (before debt service) and certain extra-ordinary expenses, but not sufficient to repay any of its indebtedness to Xechem International, NEXIM Bank or UPS Bank.

Litigation - USA: The Company is subject to various outstanding lawsuits. These include the litigation previously disclosed regarding claims for payment of monies by each of Dr. Ramesh Pandey, Dr. Renuka Misra and Bhuwan Pandey. More recently the following additional legal proceedings have been instituted: (i) an action in state court by a laboratory services and materials company, seeking in excess of $325,000 for certain services allegedly performed on behalf of the Company; (ii) an action in state court by a leasing company seeking in excess of $20,000 for the balance due on an equipment lease, plus costs and fees; and (iii) actions in small claims court by: (a) a former landlord for the payment of utilities and removal of hazardous substances; and (b) a supplier of office supplies.

Litigation - India: The Company is currently still in settlement discussions in India with respect to stock ownership of Xechem India. A resolution of this litigation would facilitate the Company's ability to bring current its financial statements and required public filings with the Securities & Exchange Commission.

Financing and Reporting: While the Company believes the opportunities for Xechem Nigeria remain very positive and the future opportunity for NICOSAN(TM) in Nigeria and the rest of the world remains, there is a substantial risk that Xechem International will not be able to obtain sufficient proceeds from capital raising efforts or other sources to enable it to continue to operate as a going concern. There is a substantial risk that it will be required to seek protection from creditors through court supervised reorganization or other proceedings in the event it is unable to raise sufficient additional capital in the very near future. The Company is exploring all of its options, including possible funding through the sale of debt or equity interests by Xechem Nigeria, the raising of debt or equity in the United States through Xechem International, the possible sale of some or all of the business of the Company or the possible reorganization of the Company through bankruptcy in the event that it is unsuccessful in its other efforts. The Company has consulted with special counsel regarding a possible reorganization should it determine that it has no other viable means of financing its operations.

On May 30, 2008 the Company received a letter from the Securities & Exchange Commission dated May 14, 2008 advising that due to the Company's failure to remain current with its public filing requirements under the Securities & Exchange Act of 1934, the Commission will seek to deregister the Company if the matter is not remedied within 15 days following the date of the letter. The Company has sent a response to the Commission requesting additional time to come in compliance with the reporting requirements and is in the process of seeking to address the matters that have precluded it from making such filings, including seeking the additional funds necessary to enable it to finance the cost of bringing its filings current. In the event the Company is unsuccessful in bringing its filings current, its stock will be deregistered from trading.

About Xechem

Xechem International is a development stage biopharmaceutical company working on Sickle Cell Disease (SCD). Its recent focus and resources have been directed primarily toward the development and launch of NICOSAN(TM). In addition to NICOSAN(TM), Xechem is also working on another sickle cell compound, 5-HMF, which it has licensed from Virginia Commonwealth University.

Forward-Looking Statements

This press release contains certain forward-looking statements within the meaning of Section 27A of the Securities Act of 1933, as amended, and Section 21E of the Securities and Exchange Act of 1934, as amended, which are intended to be covered by safe harbors created hereby. Such forward-looking statements involve known and unknown risks and uncertainties. Such risks include the risk that operations of the Company could be disrupted due to the chronic limited availability of funds to meet ongoing obligations and that the Company may be required to seek protection from creditors.

*Contact:*

```
Contact:
Xechem International, Inc.
379 Thornall Street
Edison, NJ  08837
(732) 205-0500
(732) 205-0504 Fax
```

Source: Xechem International Inc.

Copyright © 2008 Yahoo! Inc. All rights reserved. Privacy Policy - Terms of Service - Copyright Policy - Send Feedback
Copyright © 2008 Marketwire. All rights reserved. All the news releases provided by Marketwire are copyrighted. Any forms of copying other than an
individual user's personal reference without express written permission is prohibited. Further distribution of these materials is strictly forbidden,
including but not limited to, posting, emailing, faxing, archiving in a public database, redistributing via a computer network or in a printed form.



*EXHIBIT □K□*



> LOCATIONS MAP
> SITEMAP

| HOME | ABOUT XECHEM | WHAT WE DO | DRUGS | CONTACT US |



**Xechem International, Inc., founded in 1994, is a fully integrated Pharmaceutical and Nutraceutical Company, providing generic and proprietary drugs for tomorrow's market place.**

Xechem utilizes its International Network of Ethnobotanists, local Folklore Healers (Shamans) and Chemists to screen Natural Products used by Folklore Healers for their Therapeutic value to develop those plants, their extracts and pure compounds which demonstrate promising activity in the primary screen.

Xechem and its subsidiaries have the required background, capabilities, and resources to isolate and produce valuable Natural Products from a variety of medicinal plants, marine sources, and fermentation process.

Plants and Herbs have long been recognized and used for their therapeutic benefit. The World Health Organization (WHO) estimates that nearly 80% of the world's population relies on "Traditional Herbal Remedies" as a primary source of health care. Approximately one fourth of all prescription drugs used in the U.S. alone contain pure compounds based upon molecules originally isolated from plants.

| RECENT NEWS | XKEM.OB | Recent trade : 0.00 10:37  9-17-2007 |
|---|---|---|

**Construction Progress for New Manufacturing Facility in Nigeria**
View the recent photos showing progress in construction of Xechem's new manufacturing facility in Abuja, Nigeria:
• May 2007
• March 2007
• November 2006
If you do not have Acrobat Reader then Click Here to download it FREE
**November 17th 2006**
Xechem's Dr. Ramesh Pandey Is Finalist For Reader's Choice CEO of the Year By MarketWatch.com

· Prices delayed upto 20 minutes

**PRESS RELEASES**

**July 12, 2007**
Xechem announces change in it's CEO; offers update on Nigeria operations

**May 30, 2007**
Xechem Announces Addition of H. Scott English and Ben White

**April 9, 2007**
Xechem recieves 350 Million Naira funding from Nexim Bank

▸ Archive



**Coming Soon**

**Xechem Inc.**

**379 Thornall Street**

**Edison, NJ 08837**

**Tel: 732-205-0500**

# EXHIBIT

# G

ZOHN & ZOHN, LLP
Patricia Mullon Zohn, Esq.
744 Mountain Boulevard
Watchung, New Jersey  07069
Telephone (908) 791-0312
Facsimile (908) 791-0316
pzohn@zohnlaw.com
Attorney for Plaintiff Bhuwan Pandey

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

. . . . . . . . . . . . . . . . . . . . . . . . . . . .

**BHUWAN PANDEY**                                :

      Plaintiff,                             :

        v.                                 :  Civil Action No. 07 cv 5123(PGS)
                                               :
**XECHEM INTERNATIONAL**                         :
**CORPORATION; ROBERT**                          :
**SWIFT; STEPHEN F. BURG;**                      :  **CERTIFICATION OF MARION ZWIERZYNSKI**
**ADESOJI ADELAJA; MARTIN**                      :
**BIGGS; RAMESH PANDEY;**                        :
**JOHN AND JANE DOES 1-25;**                     :
**And ABC CORPORATIONS 1-25,**:
                                               :
      Defendants.                            :

. . . . . . . . . . . . . . . . . . . . . . . . . . . .

I, MARION ZWIERZYNSKI, being of full age, do hereby certify as follows:

1)     I am a process server employed by Guaranteed Subpoena Service, Inc.  I have been employed by Guaranteed Subpoena Service Inc. for approximately nine years during which I have annually served legal papers on approximately 6,000-7,000 individuals and entities.

2)     I have never had an instance where any party has alleged that I have improperly served any legal papers.

3)     I am aware that, when serving a corporate entity, I cannot just leave the papers with any person present at the business.  Upon entering a business premises I always ask to see a

person with authority to accept service of process.  I always then inquire directly of the person whether they are authorized to accept legal papers on behalf of the corporate entity.

4)    On October 29, 2007, I served a Summons, Verified Complaint, Order to Show Cause, Certification, Exhibits, Brief and Civil Cover Sheet in the referenced case on Xechem International at 370 Thornall Street, West Tower, Edison Twsp, New Jersey.  (See attached Return of Service)

5)    As I recall, upon entering the business premises, a man asked me who I was seeking.  I said that I was seeking the general manager or a person authorized to accept legal papers for the corporation.

6)    The man told me that he was authorized to take the papers.  I then asked him for his name and the spelling of his name.  He advised me that his name was "Leonard Mudry" which he spelled for me.  I took note of his physical appearance and completed the Return of Service with this information.

I hereby certify the foregoing statements made by me are true.  I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment and penalty.


Dated:  June 17, 2008


Marian Zwierzynski

06/17/2008  10:57    9087910316                    ZOHN & ZOHN, LLP                    PAGE  04/04

AO 440 (Rev. 10/93) Summons in a Civil Action         **RETURN OF SERVICE**

SERVICE OF:         **EXHIBITS, SUMMONS, VERIFIED COMPLAINT, ORDER TO SHOW CAUSE, EXHIBITS, CERTIFICATION, BRIEF, CIVIL COVER SHEET**
EFFECTED (1) BY ME:    **MARIAN ZWIERZYNSKI**
TITLE:         **PROCESS SERVER**                    DATE: 10/29/2007  11:21AM

CHECK ONE BOX BELOW TO INDICATE APPROPRIATE METHOD OF SERVICE:

[ ] Served personally upon the defendant:

XECHEM INTERNATIONAL CORP.

Place where served:

379 THORNALL ST. WEST TOWER EDISON TWP. NJ 08817

[ ] Left copies thereof at the defendant's dwelling house or usual place of abode with a person of suitable age and discretion then residing therein. Name of person with whom the summons and complaint were left:

LEONARD MUDRY

Relationship to defendant: AUTHORIZED AGENT

Description of person accepting service:

SEX: M    AGE: 51-65    HEIGHT: 5'9"-6'0"    WEIGHT: OVER 200 LBS.    SKIN: WHITE    HAIR: GRAY    OTHER: GLASSES

[X] To the best of my knowledge, said person was not engaged in the U.S. Military at the time of service

# FILED

Stamped copy will
arrive shortly

**STATEMENT OF SERVER**

TRAVEL $ _____        SERVICES $ _____        TOTAL $ _____

**DECLARATION OF SERVER**

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in this Return of Service and Statement of Server is true and correct.

DATE: 10 / 29 / 20 07                    _____ L.S.
                        SIGNATURE OF MARIAN ZWIERZYNSKI
                        GUARANTEED SUBPOENA SERVICE, INC.
                        2009 MORRIS AVENUE
                        UNION, NJ 07083

ATTORNEY:    PATRICIA M. ZOHN, ESQ.
PLAINTIFF:    BHUWAN PANDEY
DEFENDANT:    XECHEM INTERNATIONAL CORP., ET AL
VENUE:    DISTRICT
DOCKET:    07 CV 05123 PGS

As to who may serve a summons see Rule 4 of the Federal Rules of Civil Procedure.

10/29/07
JACKELINE GONZALEZ
NOTARY PUBLIC OF NEW JERSEY
My Commission Expires Dec. 7, 2010

SM

# EXHIBIT

# H

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

BHUWAN PANDEY,

Plaintiff,

v.

XECHEM INTERNATIONAL
CORPORATION; ROBERT SWIFT;
STEPHEN F. SWIFT; ADESOJI ADELAJA;
MARTIN BIGGS, RAMESH PANDEY;
JOHN AND JANE DOES 1-25; and ABC
CORPORATIONS 1-25,

Defendants.

Civil Action No. 07 cv 5123(PGS)

---

**BRIEF OF DEFENDANT XECHEM INTERNATIONAL CORP. IN SUPPORT OF
CROSS-MOTION TO QUASH SERVICE AND DISMISS OR, IN THE ALTERNATIVE,
TO VACATE ENTRY OF DEFAULT PURSUANT TO FED. R. CIV. P. 55(C) AND
GRANT LEAVE FOR XECHEM TO FILE AN ANSWER, AND IN OPPOSITION TO
PLAINTIFF'S DEFAULT JUDGMENT MOTION**

---

**McELROY, DEUTSCH, MULVANEY &
CARPENTER, LLP**
Three Gateway Center
100 Mulberry Street
Newark, New Jersey 07102-4079
Telephone: (973) 622-7711
Facsimile: (973) 622-5314
Attorneys for defendant, Xechem International
Corporation

Of counsel:
Lois H. Goodman, Esq.

On the brief:
Joseph M. Morris III, Esq.

## TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................... ii

PRELIMINARY STATEMENT ............................................................................... 1

STATEMENT OF FACTS ....................................................................................... 4

ARGUMENT ............................................................................................................ 7

    POINT I ............................................................................................................. 7

    PLAINTIFF HAS FAILED TO EFFECT PROPER SERVICE UPON XECHEM AND
    THIS COURT SHOULD DISMISS THE COMPLAINT PURSUANT TO FED. R. CIV.
    P. 12(B)(5)_ .................................................................................................. 7

    POINT II ............................................................................................................ 14

    THE ENTRY OF DEFAULT AGAINST XECHEM SHOULD BE VACATED
    PURSUANT TO FED. R. CIV. P. 55(C), PLAINTIFF'S DEFAULT JUDGMENT
    MOTION SHOULD BE DENIED, AND XECHEM SHOULD BE GRANTED LEAVE
    TO ANSWER PLAINTIFF'S COMPLAINT. .................................................. 14

    CONCLUSION ................................................................................................. 22

# TABLE OF AUTHORITIES

## CASES

Accu-Weather, Inc. v. Reuters Ltd.,
    779 F. Supp. 801, 803 (M.D.Pa.1991) ......................................................................15

Adams v. AlliedSignal Gen. Aviation Avionics,
    74 F.3d 882, 886 (8th Cir.1996) ................................................................................8

Adams v. Trustees of the New Jersey Brewery Employees' Pension Trust Fund,
    29 F.3d 863, 876 (3d Cir.1994)................................................................................19

D'Onofrio v. Il Mattino,
    430 F. Supp. 2d 431, 437 (E.D.Pa.2006) ...................................................................7

Emcasco Ins. Co. v. Sambrick,
    834 F.2d 71, 73 (3d Cir.1987)...........................................................................14, 15

Feliciano v. Reliant Tooling Co., Ltd.,
    691 F.2d 653, 656 (3d Cir.1982)......................................................................15, 19

Gipson v. Bass River,
    82 F.R.D. 122, 125 (D.N.J. 1979)............................................................................13

Gold Kist, Inc. v. LaurinSwift Oil Co., Inc.,
    756 F.2d 14, 19(3d Cir.1985).............................................................................7, 14

Grand Entm't Group, Ltd. v. Star Media Sales, Inc.,
    988 F.2d 476, 488-89 (3d Cir.1993) ..........................................................................8

Gross v. Stereo Component Systems, Inc.,
    700 F.2d 120, 123 (3d Cir.1983)......................................................................15, 18

Hritz v. Woma Corp.,
    732 F.2d 1178, 1183 (3d Cir.1984).........................................................................19

Khorozian v. McCullough,
    183 F.R.D. 325 (3d Cir.1999) ...................................................................................8

Lamont v. Haig,
    539 F. Supp. 552, 557 (D.C.S.D.1982).....................................................................12

Lampe v. Xouth, Inc.,
    952 F.2d 697, 700-701 (3d Cir.1991) ......................................................7

Mettle v. First Union Nat'l Bank,
    279 F. Supp. 2d 598, 602-603 (D.N.J.2003).............................................9

National Hockey League v. Metro. Hockey Club, Inc.,
    427 U.S. 639, 643 (1976)........................................................................19

O'Donnell v. Shalayev,
    No. 01-4721, 2004 WL 2958698 at *7 (D.N.J. Dec. 22, 2004)................7

Omni Capital Int'l v. Rudolf Wolff & Co., Ltd.,
    484 U.S. 97, 104 (1987)............................................................................8

Petsinger v. Pa, Dep't of Transp.,
    211 F. Supp. 2d 610, 611 (E.D.Pa.2002) ................................................8

Richards v. N.Y. State Dep't of Corr. Servs.,
    572 F. Supp. 1168, 1173 (S.D.N.Y.1983)..............................................12

Rosa v. Araujo, 260 N.J. Super.
    458, 462 (App.Div.1992) ........................................................................12

Scarborough v. Eubanks,
    747 F.2d 871, 876 (3d Cir.1984).............................................................20

Shomide v. ILC Dover LP,
    No. 03-1019, 2006 WL 2042969 at *4 (D.Del. July 20, 2006) .................9

Spears v. Kroger Co.,
    No. 05-2832, 2006 WL 2044986, at *2 (N.D.Ohio July 19, 2006) ...........9

Tozer v. Charles A. Krause Mill. Co.,
    189 F.2d 242, 246 (3d Cir.1951).......................................................19, 20

United States v. $55,518.05 in U.S. Currency,
    728 F.2d 192, 194-95 (3d Cir.1984) ..............................................14, 15, 20

Zawadski de Bueno v. Bueno Castro,
    822 F.2d 416, 420 (3rd Cir. 1987) ....................................................14, 20

Zoning Bd. of Adjustment of Sparta, supra,
    198 N.J. Super. at 377
    (quoting Local 617, supra, 182 N.J. Super. at 20 ..................................12

Zoning Bd. of Adjustment of Sparta v. Serv. Elec. Cable T.V. of N.J., Inc.,
    198 N.J. Super. 370, 377  (App.Div.1985) citing Local 617 v. Hudson Bergen
    Trucking Co., 182 N.J. Super. 16 (App.Div.1981).......................................................12

## FEDERAL RULES

Fed. R. Civ. P. 4(h)(1)....................................................................................10

Fed. R. Civ. P. 4(h) ..............................................................................8, 9, 10, 13

Fed. R. Civ. P. 12(b)(5)....................................................................1, 8, 13, 22

Fed. R. Civ. P. 55(c) ..................................................................1, 3, 14, 20, 22

## NJ COURT RULES

N.J. Ct. R. 4:4-4(a)(6)]....................................................................9, 10, 11, 14

## PRELIMINARY STATEMENT

Plaintiff, Bhuwan Pandey ("Plaintiff" and/or "Pandey") filed a Complaint in this matter on or about October 23, 2007. The service of the Complaint was, however, defective. Accordingly, the Complaint should be dismissed until proper service can be made. Even if this were not the case, however, the default entered by the Court should be vacated because defendant, Xechem International Corp. ("Xechem") has both good cause for the delay in its response and a meritorious defense. If the Complaint is not dismissed, Xechem should be given an opportunity to file its Answer

As reflected in the proof of service filed by Plaintiff, service was allegedly made by delivery of the summons and Complaint to an individual identified by Plaintiff as an authorized agent for service of process, at Xechem's offices in New Jersey. (Attached as Exhibit A to the Certification of Lois H. Goodman, Esq. ("Goodman Cert.") is a copy of the Return of Service filed by Plaintiff on or about November 1, 2007, concerning service on Xechem). That individual, "Leonard Mundry", was at the time in question an outside consultant to Xechem, not an employee. He certainly was not an officer, director, or authorized agent. (See Certifications of Robert Swift and Leonard Mudry).

Accordingly, there has not been effective service upon Xechem, either under the Federal Rules of Civil Procedure or the incorporated New Jersey Rules of Court concerning service of process. By the within Motion, Xechem seeks to quash service, and for dismissal of the action pursuant to Fed. R. Civ. P. 12(b)(5).

In the alternative, if the Court concludes that service was proper, the entry of default against Xechem should be vacated pursuant to Fed. R. Civ. P. 55(c), Plaintiff's motion for

1

default judgment should be denied, and Xechem should be granted leave to file an Answer to Plaintiff's Complaint.

Federal courts generally disfavor defaults and prefer to allow parties to reach a resolution on the merits. When a party fails to file a timely answer but can provide a good cause explanation and can show the existence of a meritorious defense, default should not be entered. Where default has been entered but default judgment has not, the Court should vacate the default and allow the party to file an answer. Because Xechem can establish good cause and a meritorious defense, the default should be vacated so that the matter may be adjudicated on the merits as is favored by the principals of justice and fairness.

Plaintiff will not be prejudiced by setting aside the default. The case has been pending since October of 2007. Indeed, Plaintiff did not move for default judgment until May of 2008, further evidencing that Plaintiff will not be prejudiced by the Court setting aside entry of default and permitting the matter to be adjudicated on the merits.

Xechem has various meritorious defenses to the allegations in the Complaint, and should be allowed to establish those defenses. Specifically, Xechem intends to show that (1) the employment agreement between Plaintiff and Xechem was terminated by Xechem for cause and as such, Plaintiff is not entitled to the relief sought in the Complaint, (2) Plaintiff failed to properly exercise certain stock options within the parameters of the appropriate agreements, and (3) Plaintiff and his brother, Ramesh Pandey, a Director and Officer of Xechem, had secret dealings among themselves to the detriment of Xechem.

The delay on the part of Xechem was not due to culpable misconduct but an unavailability of funds to retain counsel. Because Xechem, as an incorporated entity, could not

appear pro-se, it had to wait until it could obtain the funds to retain counsel. This was not bad faith and should not be allowed to preclude the parties from proceeding on the merits.

Accordingly, Xechem is able to meet the good cause standard to vacate entry of default pursuant to Fed.R.Civ.P. 55(c) and Xechem should be granted leave to file an Answer to Plaintiff's Complaint.

## STATEMENT OF FACTS

Xechem is a development stage biopharmaceutical company engaged in scientific research involving various sources such as plants and other natural products. See Certification of Robert Swift ("Swift Cert.") ¶ 2.   It was founded by Plaintiff's brother, defendant, Ramesh Pandey. Id. at ¶ 2. The principal place of business of Xechem is in Edison, New Jersey.

Xechem currently has less than 20 employees.  Leonard Mudry, upon whom Plaintiff allegedly served the Complaint, is not one of those employees.   Swift Cert. ¶ 18; Affidavit of Leonard Mudry ("Mudry Aff.") ¶ 3.  While Mr. Mudry was previously employed by Xechem, since at least 2000, he has not been an employee, and certainly has not been an officer, director, managing agent of Xechem, nor has he been authorized to receive process on behalf of Xechem. Swift Cert. ¶ 18; Mudry Aff. ¶ 2-3.   At present, Mr. Mudry is an outside consultant for Xechem, performing certain services on a part time basis, and it was in this capacity that he was in the office at the time service was allegedly made.  Swift Cert. ¶ 18; Mudry Aff. ¶ 2-4.

On or about May 4, 2004, Plaintiff entered into an Employment, Non-Competition and Proprietary Rights Agreement (the "2004 Employment Agreement") with Xechem.  Swift Cert. ¶ 5. Pursuant to the 2004 Employment Agreement, Xechem hired Pandey to act as Vice President of International Operations for the company and its subsidiaries.  Id. ¶ 5.   This position specifically required that Pandey live in Nigeria. Id. ¶ 5. The 2004 Employment Agreement was terminated in 2006, with no further force or effect, upon mutual consent of Pandey and Xechem. It was then completely replaced on or about April 17, 2006, by a substituted agreement, when Pandey and Xechem entered into an Employment, Non-Competition and Proprietary Rights Agreement (the "2006 Employment Agreement").   Id. ¶ 6. Section 5.2 of the 2006 Employment Agreement provided that the Agreement superseded all prior agreements between the parties. Id. ¶6; Goodman Cert. Exhibit C.

The 2004 Employment Agreement provided in part that Pandey had an option to purchase 15,000,000.00 shares of Xechem common stock ("2004 Stock Option").   Id. ¶ 7.

Pandey never exercised the 2004 Stock Option prior to the termination of the 2004 Employment Agreement in 2006. Id. ¶ 7.

On or about June 12, 2007, Xechem terminated the 2006 Employment Agreement for cause because Pandey did not perform his duties as required. Id. ¶ 8.   For example, without right and without authority, Pandey abandoned his presence in the United States and in New Jersey and went home to India for a period of not less than six months, performing no services for Xechem as he was required to do under the 2006 Employment Agreement. Id. at ¶ 8 . Upon information and belief, in the course of this sojourn in India and elsewhere, Plaintiff used the credit facilities of Xechem without right and without authority.    Id. at ¶ 8. Pandey never received authority from the Board of Directors of Xechem to modify his status or election as an Officer of the Corporation and failed to fulfill his obligations as set forth above.    Id. at ¶ 9. Because his employment was terminated for cause, Plaintiff is not entitled to any severance package. Id. at ¶ 13.

The 2006 Employment Agreement provides, in part, that Pandey would be paid $250,000 per annum and would receive certain other employee benefits including an option to purchase 20,000,000.00 shares of Xechem's common stock (the "2006 Stock Option"). Id. at ¶ 10. In order to exercise the option, Pandey was required to tender the funds to pay for the 20 million shares of Xechem's common stock. Id. at ¶ 10. Additionally, to exercise his option regarding half of the 20 million shares, Pandey had to be employed by Xechem on the date of launch of certain Xechem products in Nigeria. Id. at ¶ 10. At no time did Pandey ever tender such funds or otherwise comply with the terms of the 2006 Stock Option. Id. at ¶ 10.

Xechem believes that Plaintiff and his brother defendant Ramesh Pandey had secret dealings among themselves to the detriment of Xechem, and that they executed secret, unauthorized documentation that form the basis for Pandey's claims against Xechem, including promissory notes that were not authorized by the Board of Directors or by corporate resolution. Id. at ¶ 12.

Xechem has been undoing severe financial strain. Id. at ¶ 20. As a result, it was unable to retain counsel until the present time because of its difficulty in securing the appropriate funds necessary to retain counsel to defend its interest in the litigation. Id. at ¶ 20. As Xechem is a corporation, it is unable to make a *pro-se* appearance in Court. Xechem's failure to timely defend its interests in the matter was not due to any culpable misconduct, willfulness or bad faith but merely an inability to secure funding to retain counsel. Id. at ¶ 20.

## ARGUMENT

## POINT I

**PLAINTIFF HAS FAILED TO EFFECT PROPER SERVICE
UPON XECHEM AND THIS COURT SHOULD DISMISS
THE COMPLAINT PURSUANT TO FED. R. CIV. P. 12(B)(5)**

It is well settled that a Plaintiff must effectuate proper service in order to receive an entry of default. *Mettle v. First Union Nat'l Bank*, 279 F.Supp.2d 603 n. 3 (D.NJ.2003) (deeming entry of default void based on improper service). Moreover, a default judgment is void if the issuing court lacks personal jurisdiction over the allegedly defaulting defendant. *Gold Kist, Inc. v. LaurinSwift Oil Co., Inc.*, 756 F.2d 14, 19 (3d Cir.1985); *D'Onofrio v. Il Mattino*, 430 F.Supp.2d 431, 437 (E.D.Pa.2006); *O'Donnell v. Shalayev*, No. 01-4721, 2004 WL 2958698, at *7 (D.N.J. Dec. 22, 2004). A court does not have personal jurisdiction in cases where service of process has not been properly made. *Lampe v. Xouth, Inc.*, 952 F.2d 697, 700-701 (3d Cir.1991) ("A court obtains personal jurisdiction over the parties when the complaint and summons are properly served upon the defendant. Effective service of process is therefore a prerequisite to proceeding in the case.").

Therefore, before analyzing whether the Complaint states a cause of action sufficient to warrant entry of default judgment, the Court must satisfy itself that service of process has properly been made on the defendant(s). See *D'Onofrio, supra*, 430 F.Supp.2d at 438; *Gold Kist, Inc., supra*, 756 F.2d at 19 ("A default judgment entered when there has been no proper service of a complaint is, a fortiori, void, and should be set aside.").

Under both the Federal Rules of Civil Procedure and the New Jersey Rules of Court

(which are incorporated, in part, by the pertinent Federal Rule), Plaintiff has failed to effect proper service upon Xechem  This Court should therefore quash service as to Xechem and dismiss the Complaint pursuant to Fed.R.Civ.P. 12(b)(5) for insufficiency of service of process.

A defendant may file a motion to dismiss the complaint under Fed.R.Civ.P.12(b)(5) for insufficiency of service of process. Rule 12(b)(5) states that "[e]very defense, in law or fact, to a claim for relief in any pleading, whether a claim, counterclaim, cross-claim, or third-party claim, shall be asserted in the responsive pleading thereto if one is required, except that the following defenses may at the option of the [movant] be made by motion: ... (5) insufficiency of service of process." "The party making the service has the burden of demonstrating its validity when an objection to service is made." *Petsinger v. Pa, Dep't of Transp.*, 211 F.Supp.2d 610, 611 (E.D.Pa.2002); *Grand Entm't Group, Ltd. v. Star Media Sales, Inc.*, 988 F.2d 476, 488-89 (3d Cir.1993).

"Before a federal court may exercise personal jurisdiction over a defendant, the procedural requirements of service of summons must be satisfied." *Omni Capital Int'l v. Rudolf Wolff & Co., Ltd.*, 484 U.S. 97, 104 (1987). It is axiomatic that service of a summons must meet procedural requirements before a federal court can exercise personal jurisdiction over a defendant. *Khorozian v. McCullough*, 183 F.R.D. 325 (3d Cir.1999); *Adams v. AlliedSignal Gen. Aviation Avionics*, 74 F.3d 882, 886 (8th Cir.1996) (finding that where defendant is improperly served, the district court lacks jurisdiction over defendant regardless of whether defendant had actual notice of lawsuit).

Fed. R. Civ. P. 4(h), governing service of process on corporations, provides:

> (h) Serving a Corporation, Partnership, or Association. Unless federal law provides otherwise or the defendant's waiver has been filed, a domestic or foreign corporation, or a partnership or other unincorporated association that is subject to suit under a common name, must be served:

(1) in a judicial district of the United States:

(A) in the manner prescribed by Rule 4(e)(1) for serving an individual; or

(B) by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process and--if the agent is one authorized by statute and the statute so requires--by also mailing a copy of each to the defendant; or

(2) at a place not within any judicial district of the United States, in any manner prescribed by Rule 4(f) for serving an individual, except personal delivery under (f)(2)(C)(i).

Thus, Fed. R. Civ. P. 4(h) provides two methods by which a defendant corporation may be served with a copy of the summons and complaint absent a valid waiver of service. One of the permissible methods of service under Rule 4(h) requires "delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or to any other agent authorized by appointment or law to receive service of process." Fed.R.Civ.P. 4(h)(1). The term "delivery" as used in the above-quoted language from Rule 4(h)(1) does not include service by mail. *Shomide v. ILC Dover LP*, No. 03-1019, 2006 WL 2042969, at *4 (D.Del. July 20, 2006) (finding that Plaintiff's service by certified mail did not satisfy the requirements of Federal Rule 4(h)); *Spears v. Kroger Co.*, No. 05-2832, 2006 WL 2044986, at *2 (N.D.Ohio July 19, 2006) (noting that the term "delivery" in Federal Rule 4(h)(1) does not include service by mail); *Mettle v. First Union Nat'l Bank*, 279 F.Supp.2d 598 (D.N.J.2003) (finding that service by certified mail alone is insufficient to effectuate service in accordance with Federal Rule 4(h)).

In the instant matter, Plaintiff did not deliver the Summons and Complaint to an officer or authorized agent of Xechem as permitted by Fed. R. Civ. P. 4(h). The only purported service effected in this matter had been through delivery of papers on October 29, 2007, to an individual named "Leonard Mundry" at Xechem International Corp., 379 Thornall Street West Tower,

Edison, New Jersey 08817. (See Goodman Cert. Exhibit A, Return of Service filed with the Court by Plaintiff on or about November 1, 2007, concerning service on Xechem). The return of services indicates that "Leonard Mundry" was an "authorized agent" of Xechem.

Xechem did not authorize Leonard Mudry to accept service on the Corporation's behalf on October 29, 2007. (See Certifications of Robert Swift (¶ 18) and Leonard Mudry). Leonard Mudry is a consultant who performs individual contracts for the benefit of Xechem and is not a registered agent and/or authorized agent or employee of Xechem. (Ibid). In 2007, defendant Ramesh Pandey was the registered agent of Xechem at the following address, 100 Jersey Avenue, Building B, Suite 310, New Brunswick, New Jersey 08901. (See Goodman Cert. Exhibit B).

Alternatively, Fed. R. Civ. P. 4(h)(1) provides that service upon a corporation may be made "in a judicial district of the United States in the manner prescribed for individuals by subdivision (e)(1)." Fed.R.Civ.P. 4(h)(1). Fed. R. Civ. P. 4(e)(1) states that service may be made "pursuant to the law of the state in which the district court is located, or in which service is effected, for the service of a summons upon the defendant in an action brought in the courts of general jurisdiction of the State." Fed.R.Civ.P. 4(e)(1). In other words, service upon a corporation may be made in accordance with the New Jersey Rules of Court relating to service of process.

New Jersey Court Rule 4:4-4 governs service of process in New Jersey state courts. In particular, New Jersey Court Rule 4:4-4(a)(6) provides that personal jurisdiction can be obtained over a defendant corporation by:

> [S]erving a copy of the summons and complaint in the manner prescribed by paragraph (a)(1) of this rule on any officer, director, trustee or managing or general agent, or any person authorized by appointment or by law to receive service of process on behalf of the corporation, or on a person at the registered office of the corporation in charge thereof,

or, if service cannot be made on any of those persons, then on a person at the principal place of business of the corporation in this State in charge thereof ...

[N.J. Ct. R. 4:4-4(a)(6)]

*See also Mettle v. First Union Nat'l Bank*, 279 F.Supp.2d, 602-603 (D.NJ.2003) (noting that under New Jersey Court Rule 4:4-4(a)(6) service upon a domestic corporation generally requires personal service upon any of the individuals listed in New Jersey Court Rule 4:4-4(a)(6)). As addressed above, Plaintiff did not deliver the Summons and Complaint to an officer, director, trustee or managing or general agent, or any person authorized by appointment or by law to receive service of process on behalf of agent of Xechem as provided by New Jersey Court Rule 4:4-4(a)(6).

It is only if the "officer, director, trustee or managing or general agent, or any person authorized by appointment or by law to receive service of process on behalf of the corporation" are unable to be served then service may be made upon the person in charge of the principal place of business within the State as provided for in New Jersey Court Rule 4:4-4(a)(6). Plaintiff would first have to attest that service was first attempted upon an "authorized agent" but unsuccessful, which did not occur in the instant matter. Even if Plaintiff had taken this step, the second method of service pursuant to New Jersey Court Rule 4:4-4(a)(6) is inapposite in the instant matter because Leonard Mudry is not in charge of the principal place of business of Xechem within the State of New Jersey. (See Certifications of Robert Swift (¶ 18) and Leonard Mudry).

If all of the methods of service provided for in New Jersey Court Rule 4:4-4(a)(6) fail, New Jersey Court Rule 4:4-4(b) provides for substituted or constructive service in some situations. Subsection (b) states that "[i]f it appears by affidavit satisfying the requirements of R. 4:4-5(c)(2) that despite diligent effort and inquiry personal service cannot be made in accordance

with paragraph (a) of this rule," then personal jurisdiction may be obtained over a corporation by mailing a copy of the summons and complaint "by registered or certified mail, return receipt requested, and simultaneously by ordinary mail to ... a registered agent for service, or to its principal place of business, or to its registered office." N.J. Ct. R. 4:4-4(b)(1),-(b)(1)(C).

In the instant matter, Plaintiff relies exclusively on the rule permitting service upon a corporation by delivering the summons and complaint to an "authorized agent". N.J. Ct. R. 4:4-4(a)(6). Since Leonard Mudry was not an officer, director, trustee or managing or general agent, or any other person authorized by appointment or by law to receive service of process on behalf of Xechem, service was invalid and, in this case, the entry of default would be void. *Rosa v. Araujo,* 260 N.J.Super. 458, 462 (App.Div.1992), certif. denied, 133 N.J. 434 (1993).

"[P]laintiff has the burden of showing that an alleged agent has specific authority, express or implied, for the receipt of process." *Zoning Bd. of Adjustment of Sparta v. Serv. Elec. Cable T.V. of N.J., Inc.,* 198 N.J.Super. 370, 377 (App.Div.1985) (citing *Local 617 v. Hudson Bergen Trucking Co.,* 182 N.J.Super. 16, 19-20 (App.Div.1981)); see *Richards v. N.Y. State Dep't of Corr. Servs.,* 572 F.Supp. 1168, 1173 (S.D.N.Y.1983). "[I]n the absence of circumstances which clearly show that [an agency agreement] was intended by the parties, authorization to accept service of process on behalf of a corporation ... would not be deemed to exist." *Zoning Bd. of Adjustment of Sparta, supr*a, 198 N.J.Super. at 377 (quoting *Local 617, supra,* 182 N.J.Super. at 20). The mere acceptance of service by an employee, other than an officer, director, trustee or managing or general agent, does not establish that the employee was authorized to do so. *Local 617, supra,* 182 N.J.Super. at 20; *Lamont v. Haig,* 539 F.Supp. 552, 557 (D.C.S.D.1982); 2 Moore's Federal Practice ¶ 4.12 (2d ed.1982); 4A. Wright and Miller, Federal Practice and Procedure § 1097, 1101 (3d ed.2002).

The record fails to reveal evidence of personal service on any Xechem officer or agent, or the submission of any affidavit of diligent effort, as required for effective service under the New Jersey Rules of Court. N.J. Ct. R. 4:4-4(a)(6),(b)(1). In fact, this Court has previously dismissed the complaints against four of the co-defendants in this case for failure to serve them properly. Therefore, Plaintiff has failed to meet the service requirements set forth in the New Jersey Rules of Court, and consequently, Fed.R.Civ.P. 4(h). Leonard Mudry was not "authorized by appointment or by law" to accept service of process on behalf of Xechem. Under both the Federal Rules and the New Jersey Rules of Court, "an actual appointment for the specific purpose of receiving process is normally expected." *Gipson v. Bass River*, 82 F.R.D. 122, 125 (D.N.J. 1979). Here, the evidence clearly exhibits that Leonard Mudry was not authorized to accept service of process on behalf of Xechem. Therefore, Xechem has not been served with the Summons and Complaint in this case, and this Court should quash service and dismiss the Complaint pursuant to Fed.R.Civ.P.12(b)(5) for insufficiency of service of process.

## POINT II

### THE ENTRY OF DEFAULT AGAINST XECHEM SHOULD BE VACATED PURSUANT TO FED. R. CIV. P. 55(C), PLAINTIFF'S DEFAULT JUDGMENT MOTION SHOULD BE DENIED, AND XECHEM SHOULD BE GRANTED LEAVE TO ANSWER PLAINTIFF'S COMPLAINT.

#### A. Standard to vacate entry of default under Fed. Civ. P. 55(c)

In the alternative, if the Court concludes that service was proper, the entry of default against Xechem should be vacated pursuant to Fed. R. Civ. P. 55(c), Plaintiff's default judgment motion should be denied, and Xechem should be granted leave to file an Answer to Plaintiff's Complaint.

Federal courts disfavor defaults, and where a party moves to set aside a default, courts should decide doubtful cases in favor of the party moving to set aside a default entry "so that cases may be decided on their merits." *United States v. $55,518.05 in U.S. Currency*, 728 F.2d 192, 194-95 (3d Cir.1984).

Fed. R. Civ. P. 55(c) states that "[f]or good cause shown the court may set aside an entry of default ...." Fed.R.Civ.P. 55(c). The Third Circuit requires lower courts to consider three factors when determining whether to set aside a default judgment under Rule 55(c): "(1) whether Plaintiff will be prejudiced if default is not granted; (2) whether defendant has a meritorious defense; and, (3) whether defendant's delay was the result of culpable misconduct." *$55,518.05 in U.S. Currency, supra*, 728 F.2d at 194-95; *Gold Kist, Inc. v. LaurinSwift Oil Co.*, 756 F.2d 14, 19 (3d Cir.1985); *Emcasco Ins. Co. v. Sambrick*, 834 F.2d 71, 73 (3d Cir.1987). Default judgments are not favored and close cases should be resolved in favor of deciding the matter on the merits. *Zawadski de Bueno v. Bueno Castro*, 822 F.2d 416, 420 (3rd Cir. 1987).

The Third Circuit has indicated that the standard for setting aside a default is less stringent than for setting aside a default judgment. *Feliciano v. Reliant Tooling Co., Ltd.*, 691 F.2d 653, 656 (3d Cir.1982) ("Less substantial grounds may be adequate for setting aside a default....").

## B. Meritorious Defense

### 1. Applicable Standard

The Third Circuit stated that "the threshold question in th[ese] cases is whether [the defendant] ... established a meritorious defense." *$55,518.05 in U.S. Currency, supra*, 728 F.2d at 194-95. Setting aside the default judgment would be pointless if the defendant "could not demonstrate the possibility of winning." Id. A defendant establishes a "meritorious defense when [defendant's] allegations, if established at trial, would constitute a complete defense." Id. A complete defense must "allege specific facts beyond simple denials or conclusionary statements." Id.

If on their face, the asserted defenses have merit, at this point in the proceedings, the Court need not delve any deeper to evaluate their relative strengths and weaknesses. *Accu-Weather, Inc. v. Reuters Ltd.*, 779 F.Supp. 801, 803 (M.D.Pa.1991) ( "[t]he defendant is not required to prove beyond the shadow of a doubt that it will win at trial, but merely to show that it has a defense to the action which at least has merit on its face"). Thus, the defendant need not "prove beyond a shadow of a doubt that [he] will win at trial." *Emcasco, supra*, 834 F.2d at 74. Rather, it is enough for the defendant to show that his defense is not "facially unmeritorious." Id. (quoting *Gross v. Stereo Component Systems, Inc.*, 700 F.2d 120, 123 (3d Cir.1983)).

## 2.  The Employment Agreement was terminated for cause

On or about May 4, 2004, Pandey entered into an Employment, Non-Competition and Proprietary Rights Agreement (the "2004 Employment Agreement") with Xechem. (See Swift Cert. ¶ 5). Pursuant to the 2004 Employment Agreement, Xechem hired Pandey to act as Vice President of International Operations for the company and its subsidiaries, which specifically required that Pandey live in Nigeria. (Ibid.)

The 2004 Employment Agreement was terminated in 2006, with no further force or effect, upon mutual consent of Pandey and Xechem and completely replaced on or about April 17, 2006, by a substituted agreement, when Pandey and Xechem entered into an Employment, Non-Competition and Proprietary Rights Agreement (the "2006 Employment Agreement"). (See Swift Cert. ¶ 6 and Goodman Cert. Exhibit C) Section 5.2 of the 2006 Employment Agreement provided that the Agreement superseded all prior agreements between the parties. (Ibid).

On or about June 12, 2007, Xechem terminated the 2006 Employment Agreement on the basis of cause pursuant to Section 2.2 of the Agreement because Pandey did not perform his duties as required. (See Swift Cert. ¶ 8 and Goodman Cert. Exhibit C). For example, without right and without authority, Pandey abandoned his presence in the United States and in New Jersey and went home to India for a period of not less than six months, performing no services for Xechem as he was required to do under the 2006 Employment Agreement. (See Swift Cert. ¶ 8 ). Upon information and belief, in the course of this sojourn in India and elsewhere, Plaintiff used the credit facilities of Xechem without right and without authority. (Ibid.)

Xechem's assertion that Pandey was terminated for cause pursuant to Section 2.2 of the 2006 Employment Agreement clearly constitutes a meritorious defense as Plaintiff would not be

entitled to the remedies he is seeking in the Complaint such as the severance package if he was properly terminated for cause.

### 3. The Stock Options were not properly exercised by Pandey

Plaintiff seeks to enforce certain stock options as provided for in the 2004 and 2006 Employment Agreements. With regard to the 2004 Stock Option, Pandey never exercised this option prior to the termination of the 2004 Employment Agreement in 2006. (See Swift Cert. ¶ 7). As such, the 2004 Stock Option was extinguished at the time of the termination of the 2004 Employment Agreement. (See Swift Cert. ¶ 5-7 ).

On October 2, 2006, Pandey alleged that he exercised the 2006 Stock Option by delivery of an Exercise Notice together with a check in the amount of the Exercise Price. Upon information and belief, Pandey and his brother, Ramesh Pandey, without authority from the Board of Directors or any resolution of the Corporation, modified the terms of the 2006 Stock Option. (See Swift Cert. ¶ 11 ). At no time did Pandey ever tender such funds or otherwise comply with the terms of the 2006 Stock Option. (See Swift Cert. ¶ 10 ).

Based on the above, Xechem most certainly has a meritorious defense regarding Pandey's assertions that he is entitled to the benefits of the 2004 and 2006 Stock Options as Pandey failed to exercise these options within the parameters of the appropriate employment agreements.

Additionally, Pandey alleges that the value of the 2004 and 2006 Stock Options are $1,350,000.00 and $1,800,000.00 respectively and seeks a default judgment inclusive of these figures. However, even if the Court was inclined to grant default judgment, Pandey would not be entitled to the purported monetary value of the 2004 and 2006 Stock Options, but at best would be entitled to delivery of the Common Stock.

1095249-1                                17

### 4. **Pandey and Dr. Ramesh Pandey's conduct**

Xechem was originally formed by defendant, Dr. Ramesh Pandey ("Ramesh Pandey"), the brother of Plaintiff, who was a Director and Officer of Xechem at all relevant times.  (See Swift Cert. ¶ 3 ).  Pandey and Ramesh Pandey have had secret dealings among themselves to the detriment of Xechem. (See Swift Cert. ¶ 12 ).   From time to time the Plaintiff and Ramesh Pandey executed secret, unauthorized documentation with regard to the Pandey's claims against Xechem. (Ibid.) Such documentation Xechem alleges, upon information and belief, failed to accurately set forth the relationship between Pandey and Xechem. (Ibid.) Pandey was part of a plan entered into with his brother, Ramesh Pandey, to misuse the property of Xechem to the detriment of Xechem and without authority of the Board of Directors.  (Ibid.)

Pandey and Ramesh Pandey executed certain documents such as the promissory notes and payroll reconciliation without authority from the Board of Directors or any resolution of the Corporation.  (See Swift Cert. ¶ 15-16 ).   As such, Xechem has a meritorious defense regarding Pandey's assertions regarding the promissory notes and payroll reconciliation.

### 5. **Xechem has Meritorious Defenses**

For the reasons set forth above, Xechem has multiple defenses that are meritorious and entitled to be flushed out in the course of discovery.  Xechem has established that its defenses are not "facially unmeritorious." *Gross v. Stereo Component Systems, Inc.*, 700 F.2d 120, 123 (3d Cir.1983).  Clearly, the instant matter should be decided on the merits and not in a default judgment motion.

### C. **Culpable Misconduct**

The next question is whether defendant's failure to answer or otherwise respond to Plaintiff's Complaint is the result of defendant's culpable misconduct. To determine whether a

default entry resulted from the culpable conduct of a defendant, courts in this Circuit examine the "willfulness or bad faith of a non-responding defendant." *Hritz v. Woma Corp.*, 732 F.2d 1178, 1183 (3d Cir.1984).

To find this factor in favor of default, district courts must find "flagrant bad faith." *National Hockey League v. Metro. Hockey Club, Inc.*, 427 U.S. 639, 643 (1976). This definition contemplates contumacious conduct that is strategic and self-serving as opposed to "innocent mishaps or mere mistakes." *Adams v. Trustees of the New Jersey Brewery Employees' Pension Trust Fund*, 29 F.3d 863, 876 (3d Cir.1994). Indeed, the Third Circuit explicitly excluded "inexcusable negligent behavior" from the definition of "flagrant bad faith." *Adams, supra*, 29 F.3d at 876.

Xechem has been unable to retain counsel until the present time as it has unfortunately experienced financial difficulties and has had trouble securing the appropriate capital to retain counsel in order to appropriately defend its interest in the litigation. (See Swift Cert. ¶ 20 ).   As Xechem is a corporation, it is unable to make a pro-se appearance in Court.  Xechem's failure to timely defend its interests in the matter was not due to any culpable misconduct, willfulness or bad faith but merely an inability to secure funding to retain counsel.   (Ibid.) Certainly, the unavailability of funds does not constitute flagrant bad faith on the part of Xechem.

### D. Prejudice

The final factor in deciding whether to set aside a default is whether such action will prejudice the Plaintiff. The Third Circuit stated that "delay in realizing satisfaction on a claim rarely serves to establish the degree of prejudice sufficient to prevent the opening a default judgment entered at an early stage of the proceeding." *Feliciano v. Reliant Tooling Co., Ltd.*, 691 F.2d 653, 656-57 (3d Cir.1982) (citing *Tozer v. Charles A. Krause Mill. Co.*, 189 F.2d 242, 246

(3d Cir.1951)). However, a plaintiff can demonstrate the requisite degree of prejudice by claiming "the irretrievable loss of evidence, the inevitable dimming of witnesses' memories, or the excessive and possibly irremediable burdens or costs imposed" on the plaintiff. *Scarborough v. Eubanks,* 747 F.2d 871, 876 (3d Cir.1984).

Plaintiff will not be prejudiced by the Court setting aside entry of default. Plaintiff cannot establish "the irretrievable loss of evidence, the inevitable dimming of witnesses' memories, or the excessive and possibly irremediable burdens or costs imposed" on the Plaintiff as set forth in *Scarborough.* The Complaint was filed on October 23, 2007. Plaintiff did not move for entry of default against Xechem until April 3, 2008, and for default judgment until May 16, 2008. The fact that the matter has been pending since October of 2007 even further establishes that Plaintiff will not be prejudiced by the Court setting aside entry of default and permitting the matter to be adjudicated on the merits given that default judgments are not favored and close cases should be resolved in favor of deciding the matter on the merits. *Zawadski de Bueno v. Bueno Castro,* 822 F.2d 416, 420 (3rd Cir. 1987).

### E. Xechem has made a showing of Good Cause

Fed.R.Civ.P. 55(c) states that "[f]or good cause shown the court may set aside an entry of default ...." Fed.R.Civ.P. 55(c). For the foregoing reasons, Xechem has established that: (1) Plaintiff will not be prejudiced if default is not granted; (2) Xechem has a meritorious defense; and, (3) Xechem's delay was not the result of culpable misconduct. $55,518.05 in U.S. Currency, supra, 728 F.2d at 194-95. Accordingly, Xechem clearly has show good cause and is entitled to have the entry of default vacated so that the matter may be adjudicated on the merits as is favored by the principals of justice and fairness. Accordingly, Xechem respectfully requests that the Court vacate entry of default and grant Xechem leave to file an Answer to

Plaintiff's Complaint.

## CONCLUSION

For the foregoing reasons, Xechem respectfully request that the Court quash service, and dismiss the Complaint as to Xechem pursuant to Fed. R. Civ. P. 12(b)(5), or, in the alternative, vacate entry of default pursuant to Fed. R. Civ. P.  55(c), deny Plaintiff's motion for default judgment and grant Xechem leave to file an Answer to Plaintiff's Complaint.

Respectfully submitted,

**McELROY, DEUTSCH, MULVANEY & CARPENTER, LLP**
Attorneys for defendant, Xechem International Corporation

By:    /s/ LOIS H. GOODMAN, ESQ.
LOIS H. GOODMAN, ESQ.
Three Gateway Center
100 Mulberry Street
Newark, New Jersey 07102-4079
Telephone: (973) 622-7711
Facsimile: (973) 622-5314
Email: lgoodman@mdmc-law.com

Dated: June 6, 2008.

# EXHIBIT

I

ZOHN & ZOHN, LLP
Patricia Mullon Zohn, Esq.
744 Mountain Boulevard
Watchung, New Jersey  07069
Telephone (908) 791-0312
Facsimile (908) 791-0316
pzohn@zohnlaw.com
Attorney for Plaintiff Bhuwan Pandey

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

. . . . . . . . . . . . . . . . . . . . . . . . . . . .

| | |
|---|---|
| **BHUWAN PANDEY** : | |
| : | |
| Plaintiff, : | |
| : | |
| v. : | Civil Action No. 07 cv 5123(PGS) |
| : | |
| **XECHEM INTERNATIONAL** : | CIVIL ACTION |
| **CORPORATION; ROBERT** : | |
| **SWIFT; STEPHEN F. BURG;** : | |
| **ADESOJI ADELAJA; MARTIN** : | |
| **BIGGS; RAMESH PANDEY;** : | |
| **JOHN AND JANE DOES 1-25;** : | |
| **and ABC CORPORATIONS 1-25,** : | |
| : | |
| Defendants. : | |

. . . . . . . . . . . . . . . . . . . . . . . . . . . .

---

PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANT XECHEM INTERNATIONAL
CORPORATION'S CROSS MOTION TO QUASH SERVICE AND VACATE DEFAULT

---

ZOHN & ZOHN, LLP
Patricia Mullon, Esq.
744 Mountain Boulevard
Watchung, New Jersey  07069
Telephone (908) 791-0312
Facsimile (908) 791-0316
pzohn@zohnlaw.com
Attorney for Plaintiff Bhuwan Pandey

Of Counsel and On the Brief:
Patricia Mullon, Esq.

## TABLE OF CONTENTS

Table of Authorities ....................................................................................................2
Preliminary Statement....................................................................................................3
Statement of Facts and Procedural Status......................................................................5
Argument .......................................................................................................................10
Conclusion .....................................................................................................................17

## TABLE OF AUTHORITIES

### Cases

$55,518.05 in U.S. Currency, 728 F.2d 192, 195 (3d Cir. 1984)............................................ 15, 16
American Football League v. National Football League, 27 F.R.D. 264, 269 (D. Md.1961)) ....... 1
Davis v. DNA/Fidoreo, Inc., 317 N.J. Super. 92 ((App. Div. 1988) ........................................... 12
in Pioneer Investment Services Company v. Brunswick Associates Limited Partnership et al., 507
    U.S. 380, (1993)..................................................................................................................... 16
In re. U.S.N. Communications, Inc., et al., 288 B.R. 391, 394 (Bankr. D. Delaware 2003.... 14, 15
Massaro v. Massaro (In re Massaro), 235  B.R. 757, 761 (Bankr. D.N.J. 1999 ......................... 14
Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 314 (1950) ......................... 10, 13
O'Connor v. Altus, 67 N.J. 106, 127 (1975)................................................................... 12, 13
Trustees of Local 478 Trucking and Allied Industries Pension Fund v. Baron Holding Corp., 224
    N.J. Super. 485, 490 (App. Div. 1988) .................................................................................. 12

### Statutes

N.J.S. 14A:4-1(1)........................................................................................................... 10
N.J.S. 14A:4-3(1)........................................................................................................... 11
N.J.S. 14A:4-3(2)........................................................................................................... 11

### Rules

Fed. R. Civ. P. 4(e)(1)..................................................................................................... 10
Fed. R. Civ. P. 4(h)(1)............................................................................................... 10, 13
Fed. R. Civ. P. 55(c) ...................................................................................................... 14
Fed. R. Civ. P. 60(b) ...................................................................................................... 14
R. 4:4-4(a)(6) ................................................................................................................. 13

PRELIMINARY STATEMENT

In or around October and November of 2007, following receipt of service of the

Complaint in this case, Xechem International Corporation made a strategic decision not to

answer the complaint and not to defend against the claims asserted by Bhuwan Pandey ("Col.

Pandey" or "Plaintiff").  The claims made in the complaint arise out of Plaintiff's employment by

Xechem International Corporation ("Xechem") and even after all this time, Xechem has been

unable to craft defenses to these claims that don't include odd conspiracy theories which, even if

true, at best constitute counterclaims, not defenses.

Apparently, after choosing to allocate corporate resources to matters other than the

defense of this action, Xechem has had a change of heart.   This change of heart has led it to

assert lack of proper service despite its own unlawful attempts to thwart service by failing to

maintain a registered agent and address for service, despite the undisputed fact that it actually

received the complaint and promptly engaged counsel with regard to this matter before

abandoning the case, and despite service at the corporate offices on a person who claimed

authority to accept service.

This change of heart has also led Xechem to pull out of thin air the suggestion that

Plaintiff was dismissed for cause despite the fact that the termination letter to Plaintiff said the

contrary, despite the fact that at no time in the almost one year since termination has "cause" ever

been suggested, and despite the fact that Xechem failed to raise a claim of "for cause"

termination when Plaintiff first made demand under the his employment agreement for the

severance due to him.  This "for cause" defense as stated in Xechem's Motion to Vacate Default,

lacks specificity and is a mere recitation of a legal concept and is insufficient to constitute a

3

"meritorious defense" as required in order to vacate entry of default.

The only other "defense" offered as meritorious enough to warrant vacating default is the suggestion that Plaintiff and the Former CEO of Xechem "executed secret, unauthorized documentation regarding the claims which falsely set forth the relationship between Plaintiff and Xechem". I challenge the reader to even understand what that sentence means. Its certainly doesn't seem to raise either facts or law relevant to this case. Xechem goes on to state that this was part of a "plan to misuse the property of Xechem to the detriment of Xechem". This "defense" bears close resemblance to a conspiracy theory and, at best, is a counterclaim – not a defense.

Plaintiff recognizes that Courts properly disfavor disposing of cases by default. While the predisposition of Courts to grant motions to vacate default is difficult to overcome, this is one of those rare instances where it is warranted. Not only has Xechem failed to raise meritorious defenses, vacating default would severely prejudice the Plaintiff. A significant portion of the damages claimed in this case relate to stock and, as of June 4, 2008, Xechem publicly announced that its stock was at risk of imminent deregistration by the SEC for failing to keep current on filings required under the Securities and Exchange Act for publicly traded companies. Additionally, Xechem's failure to answer was not negligent, let alone excusable. It was a choice. Xechem decided to use its assets on matters other than the defense in this case and should not now be tolerated to start the case over at great detriment to Plaintiff.

<u>STATEMENT OF FACTS AND PROCEDURAL STATUS</u>

On or about June 12, 2007, Col. Pandey was terminated from his position as Vice President of International Operations of Xechem. <u>See</u> Exhibit D to the Supplemental Certification of Patricia Mullon Zohn filed herewith (the "Supplemental Cert."). The Termination letter indicated that the termination was at the direction of the Board of Directors and that Col. Pandey would receive the six (6) months severance pay per his employment contract. <u>Id.</u>  No mention is made of any cause for the termination. <u>Id</u>.

On or about July 12, 2007, the CEO of Xechem was replaced and Robert Swift assumed the position of CEO.  <u>See</u> Exhibit K to the Certification of Patricia Mullon Zohn (the "Zohn Certification").

On or about August 15, 2007, Xechem made the first and only payment to Plaintiff of his severance pay.  A direct deposit in the amount of $7,228.75 was made to his personal bank account in accordance with previously established direct deposit instructions for payroll. However, within 24 hours, Xechem "backed out" or withdrew this deposit from his personal bank account without notice.  Xechem has failed to respond to any inquiry regarding this action specifically and has failed to respond to any inquiry regarding payment of the severance generally.  <u>See</u> Paragraph 24 of Pandey Certification attached to the Supplemental Cert.

On or about September 19, 2007, a demand letter was sent to Xechem International Corporation ("Xechem") at 100 Jersey Avenue, Suite 310, New Brunswick, New Jersey  08901. This address was the official address for notice listed in the employment contract between Col. Pandey and Xechem and was also the address for service on Xechem as listed with the State of New Jersey.  The correspondence was returned as "Not Deliverable as Addressed, Unable to

Forward".  See Exhibit A to the Zohn Certification.  That same letter was also sent to the

attention of the CEO of Xechem at the address of 379 Thornall Street (West Tower), Edison,

New Jersey  08818.  The demand letter sent to the Edison address was not returned as

undeliverable.  At the time of this demand letter, Robert Swift was the CEO of Xechem.  While

Mr. Swift presumably received the demand letter, Xechem did not assert that Plaintiff was

discharged for cause.  As the demand letter was sent in accordance with the notice requirements

of the 2006 Employment Agreement, a claim of discharge for cause would have triggered the

contract's mandatory arbitration language. See Exhibit B to the Supplemental Cert.

    As no response was received to the demand letter, on October 23, 2007, Plaintiff filed

with the Court a Civil Cover Sheet, Verified Complaint, Application for Order to Show Cause, a

supporting brief, certification of Bhuwan Pandey, a form of Order and Certification of Service

(collectively, the "Complaint").  Courtesy copies were also mailed on that day to all named

defendants as well as counsel for Xechem. See Exhibit B to the Zohn Certification.

    On or about October 25, 2007, Dr. Ramesh Pandey (the "Former CEO") accepted service

of the Complaint through his counsel.  At the time, the Former CEO was still listed as the

registered agent for receipt of service at the then defunct office address of 100 Jersey Avenue –

Building B, Suite 310, New Brunswick, New Jersey  08901.  In violation of New Jersey

Corporate Law, Xechem has failed to maintain current records with the State of New Jersey

designating a registered agent and address at which service of process could actually be made.

See Exhibit B to Certification of Lois Goodman filed on behalf of Xechem.  Despite service on

the Former CEO (who was then, and is still, a director of the company) personal service was

undertaken at Xechem's new business address as well.

On October 29, 2007, the Complaint and Summons was served on Xechem at 379
Thornall Street, West Tower, Edison, New Jersey 08817 by Guaranteed Subpoena Service.
Service was accepted by Mr. Leonard Mudry.  See Certification of Marian Zwierzynski.  Mr.
Mudry advised the process server that he was authorized to accept service on behalf of Xechem.
Id.

Mr. Mudry has filed an affidavit in this matter with materially misleading statements.
Mr. Mudry states in his affidavit that "[s]ince the year 2000, I have not been an officer or agent
authorized to receive process or summons on behalf of Xechem".  Mr. Mudry neglects to
mention that he was appointed as a director of the company in 2004.  See Exhibit E to Zohn
Certification.  Mr. Mudry also neglects to mention that as recently as 2006, he was performing
duties for the company that included acting as inspector of elections at the annual Shareholders
Meeting.  See Exhibit G to Zohn Certification.  Additionally, while Mr. Mudry denies that he is
authorized to receive service for any individuals (or is it "from" any individuals as he denies
authority to accept service on behalf of the Plaintiff), or that he is the registered agent for
Xechem (Xechem apparently doesn't have a registered agent) he does not mention that he, in
fact, said he was so authorized.  See Certification of Marian Zwierzynski.

It is incomprehensible that Xechem would be allowed to avoid service of process by
intentionally maintaining a false address in the public record as the address for service – an
address unoccupied and with no forwarding information – intentionally leaving the Former CEO
as the registered agent long after that CEO has been replaced, and denying the Mr. Mudry is
authorized despite Mr. Mudry's long history of holding positions as officer and director of the
company and despite Mr. Mudry accepting such service.

7

Importantly, although Xechem attempts to advance a flawed argument against the adequacy of service, Xechem does not and cannot say that they did not, in fact, receive the Complaint.  On October 29, 2007, Xechem acknowledged that it has actual notice of the lawsuit file against it.  Xechem filed a "Form 8-k" with the SEC on or about October 29, 2007 in which Xechem discloses that suit was filed against it by the plaintiff herein on or about October 23, 2007.  See Exhibit H to the Zohn Certification.

Xechem has asserted that it did not have the funds available to hire an attorney when it became aware of the lawsuit.  See Brief of Lois H. Goodman, Esq., page 2-3.  This cannot be so, since as early as November of 2007 Xechem had retained an attorney.  See Exhibit I to the Zohn Certification, which is a true copy of correspondence from the law office of Simon and Lupo, counsel for Xechem, dated November 15, 2007 in which counsel seeks to negotiate the withdrawal of the Order to Show Cause.  As Xechem has been previously represented with regard to this matter, and as Xechem is a corporation that continues to operate its business, it is clear that Xechem has assets to hire a lawyer, it just chooses to use those admittedly strained assets for other expenses, investments or endeavors.

Contrary to the suggestion that the failure to answer is non-culpable, Xechem made a strategic decision to not defend this case.  In fact, on or about December 3, 2007, Xechem's counsel was reminded of the necessity of Xechem filing an answer and responded that it was unclear whether Xechem would chose to do so. See Zohn Certification, paragraph 13.

From February 21, 2008 until June 4, 2008, on information and belief, there have been no SEC filings (as required by the Securities and Exchange Act) or press releases.  See Zohn Certification, paragraph 15.  On June 4, 2008, however, Xechem issued a press release disclosing

8

current financial difficulties and the imminent deregistration of it stock by the SEC.  <u>See</u> Exhibit J to the Zohn Certification.

Finally, Xechem seems to be in the process of organizing itself as a different entity. While Xechem's internet home page (under which there was an entire website) on September 17, 2007 reflected Xechem International, Inc., the same address (<u>http://www.xechem.com</u>) on June 16, 2008 shows only one page, and states: "Coming Soon, Xechem Inc., 379 Thornall Street, Edison, NJ, 08837."  <u>See</u> Exhibits K and L to the Zohn Certification.

ARGUMENT

Service of Process was Properly Made upon Xechem International Corp.

The United States Supreme Court has spelled out the only constitutional requirements for service of process. Justice Jackson stated for the Court in Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 314 (1950) that "an elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."

To give effect to the mandate of due process, the Federal Rules of Civil Procedure provide at R. 4 that service of process within the United States shall be made

> "in a the manner prescribed for individuals by subdivision (e)(1), or by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or to any other agent authorized by appointment or by law to receive service of process and, if the agent is one authorized by statute to receive service and the statute so requires, by also mailing a copy to the defendant…"
>
> Fed. R. Civ. P. 4(h)(1).

Pursuant to Fed. R. Civ. P. 4(e)(1), moreover, service on a competent person "for whom a waiver has not been obtained and filed" may be made "pursuant to the law of the state in which the district court is located, or in which service is effected." Fed. R. Civ. P. 4(e)(1).

Further, to avoid the possibility that a corporation could avoid service of process in New Jersey, every New Jersey corporation or non-New Jersey corporation "authorized to transact business in this State shall continuously maintain a registered office in this State, and a registered agent having a business office identical with such registered office." N.J.S. 14A:4-1(1).

Although a New Jersey corporation or a non-New Jersey corporation "authorized to transact business in this State may change its registered office or its registered agent, or both," the corporation "shall, by resolution of the board" establish a new address or new registered agent, or both. N.J.S. 14A:4-3(1).  These changes must be filed with the New Jersey Secretary of State. See N.J.S. 14A:4-3(2).

At the time of service of the Complaint, Xechem was not in compliance with the statute requiring it to maintain a registered office and registered agent and cannot now say that because they were not served at the previously registered office – the New Brunswick Office – service was ineffective.  It is undisputed that at the time of service, the New Brunswick Office was closed and the registered agent (the Former CEO) was no longer an officer of the company. Even so, it is important to note that the Former CEO was in fact served with the Complaint through his counsel.  The Former CEO continues to act as a director of Xechem and service upon him would be reasonably calculated to apprise Xechem of the pendency of the action.

However, due to Xechem's willful disregard for corporate law, and in an abundance of caution, Plaintiff chose to also serve Xechem International Corp. using Guaranteed Subpoena Service by, on October 29, 2007, handing a copy of the Summons and Complaint to Mr. Leonard Mudry at Xechem's offices at 379 Thornall Street, Edison New Jersey (the "Edison Office"). See Exhibit "C" to the Zohn Certification.

While service on a Registered Agent would be ideal, where, as here, the corporation has failed to properly designate an address and agent for service, plaintiffs can effect service of process by delivery of the papers to individuals other than the agent authorized by appointment. The New Jersey courts have developed a "two-pronged test" governing valid service, which

states that "the representative should be so integrated with the organization that he will know

what to do with the papers and that he or she should stand in a position as to render it fair,

reasonable and just to imply the authority to receive service. Trustees of Local 478 Trucking and

Allied Industries Pension Fund v. Baron Holding Corp., 224 N.J. Super. 485, 490 (App. Div.

1988) (citing O'Connor v. Abraham Altus, 67 N.J. at 128, which adopt the federal test from

American Football League v. National Football League, 27 F.R.D. 264, 269 (D. Md.1961)).  See

also Davis v. DNA/Fidoreo, Inc., 317 N.J. Super. 92 ((App. Div. 1988) (effective service,

consistent with the U.S. Constitution, was made on an assistant manager of a corporate bank

defendant, at a branch office of the parent company).  In keeping with this test, in Trustees of

Local 478 Trucking, the court found that service of process was properly made upon a

receptionist, where the receptionist represented to the deputy that she was authorized to accept

service, and the office where service was made was that of president of the corporation.  See

Trustees of Local 478 Trucking, 224 N.J. Super at 490.

Defendant Xechem asserts that service of the Summons and Complaint was faulty

because the documents were handed to a person "named 'Leonard Mudry' at Xechem

International Corp., 379 Thornall Street West Tower, Edison, New Jersey 08817."  Brief of Lois

Goodman, Esq. ("Goodman Brief") at 9-10.  Xechem also asserts that Mr. Mudry was not an

authorized agent of Xechem since he was a consultant or contractor to Xechem and not an

employee.  See Goodman Brief at 10.

However, Leonard Mudry has worked at, with and for Xechem for more than a decade.

He has indisputably been an officer of the company, a director of the company, a person so

integrated with the organization that he has been entrusted with signing SEC filings on behalf of

the corporation. Additionally, Mr. Mudry actually indicated that he could accept service and was unhesitant when asked to spell his name for the process server.

Very importantly, service upon Leonard Mudry conforms to the federal rules because Xechem was fully aware of the action against it and was given the opportunity to present their case. See Mullane v. Central Hanover Bank & Trust Co. et al, 339 U.S. 306, 314 (1950). Fed. R. Civ. P. 4(h)(1) (formerly 4(d)(3)) "does not require that the delivery of process be accomplished during a face to face meeting with the person upon whom service is to be effected." O'Connor v. Altus, 67 N.J. 106, 127 (1975). Moreover, where the process server "acts in a manner . . . which he can reasonably expect will result in the delivery of the process to a person described in Rule 4(d)(3); and where his acts are effective in achieving delivery of the process to such a person, thereby giving the defendant notice that an action has been commenced against it, the service is sufficient." Ibid. (citations omitted).

In the alternative, service upon Leonard Mudry conforms to the New Jersey state rules of service. New Jersey Court Rule 4:4-4(a)(6) allows service to be made on a corporation

> by serving a copy of the summons and complaint in the manner prescribed by paragraph (a)(1) of this rule on any officer, director, trustee or managing or general agent, or any person authorized by appointment or by law to receive service of process on behalf of the corporation, or on a person at the registered office of the corporation in charge thereof, or, if service cannot be made on any of those persons, then on a person at the principal place of business of the corporation in this State in charge thereof, or if there is no place of business in this State, then on any employee of the corporation within this State acting in the discharge of his or her duties, provided, however, that a foreign corporation may be served only as herein prescribed subject to due process of law...

> [R. 4:4-4(a)(6).]

In turn, R. 4:4-4(a)(1) allows service to be made upon "a competent individual" age 14 or older, or by delivery "to the individual personally," or by leaving a copy at the individual's home with a competent member of the household 14 or older, or by delivery "to a person authorized by appointment or by law." R. 4:4-4(a)(1).

In summary, Xechem has moved its office without forwarding address, terminated its former registered agent, and located all but one director out of the State of New Jersey. In the face of this concerted attempt to avoid service, plaintiff still successfully served the only director in the state who was also the individual listed as the registered agent, successfully served an individual integrated within the corporation at its new corporate offices which individual has been (and may still be) an officer, a director, and a person who agreed to accept service. And finally, plaintiff successfully delivered the Complaint to Xechem who does not even make an attempt at denying actual notice of the case and the fact is that Xechem then engaged counsel to represent it with regard to this matter.

<u>Default Should Not be Vacated</u>

Pursuant to <u>Fed. R. Civ. P.</u> 55(c), the court may set aside an entry of default for good cause, and it may set aside a default judgment under Rule 60(b). <u>Fed. R. Civ. P. 60(b)</u> "controls in cases where both an entry of default and a default judgment exist." <u>In re. U.S.N. Communications, Inc., et al.</u>, 288 B.R. 391, 394 (Bankr. D. Delaware 2003) (citing <u>Massaro v. Massaro (In re Massaro)</u>, 235 B.R. 757, 761 (Bankr. D.N.J. 1999).

Trial courts must consider three factors in deciding whether to vacate a default judgment: "(1) whether the plaintiff will be prejudiced if the judgment is vacated; (2) whether the defendant has a meritorious defense to the underlying action; and (3) whether the default was the product of

14

defendant's culpable conduct." <u>In re U.S.N.</u>, 288 B.R. at 395 (citing <u>$55,518.05 in U.S.</u>

<u>Currency</u>, 728 F.2d 192, 195 (3d Cir. 1984)).  Moreover, "[t]hese standards apply regardless of

whether the motion to vacate is brought under" Rule 55(c) or Rule 60(b).  <u>Ibid</u>.

 "The threshold question is … whether [the defendant] has established a meritorious

defense."  <u>$55,518.05 in U.S. Currency</u>, 728 F.2d at 195.  Without a meritorious defense, the

moving party could not win at trial" and "there would be no point in setting aside the default

judgment."  <u>Ibid</u>.  Moreover, "'the showing of a meritorious defense is accomplished when

allegations of defendant's answer, if established on trial, would constitute a <u>complete</u> defense to

the action.'"  <u>Id</u>. (citations omitted).  Mere statements constituting "conclusory language" or

"verbatim excerption of … statutory language" are not enough to constitute a meritorious

defense.  <u>Id</u>. at 196.

 Here, defendant Xechem has not presented any meritorious defenses.  The mere statement

that Plaintiff was terminated "for cause" is a clear example of conclusory language.  The concept

of "cause" is a legal conclusion and not, in itself, a fact.  Xechem's proposed defenses are

analogous to the defenses offered, and rejected, in <u>In re USN Communications</u>.  In that case, the

court determined that the defendant was not entitled to relief from default judgment where

defendant, although asserting that transfers at issue were not subject to avoidance as having been

made in the ordinary course of business or in exchange for new value, failed to allege any facts in

support of such defenses.  A review of Xechem's Motion to Vacate Default and the supporting

certifications are equally devoid of facts and state merely (and in conflict with actually

documents already in the record of this case) that Col. Pandey was terminated "for cause".

 The only other "defenses" offered by Xechem relate to claims against the Former CEO

(for apparently acting outside of his authority) and for some odd conspiracy theory that suggest

Col. Pandey was involved in some vague plan to misuse corporate assets.  If true (and given the

lack of detail, who could guess what this claim means), the conspiracy theory would constitute a

counterclaim, not a defense.

   The first and third factors (prejudice to the plaintiff and defendant's culpable conduct)

identified in "$55,5198.05 in U.S. Currency are similar to the excusable neglect requirement

developed by the United States Supreme Court in Pioneer Investment Services Company v.

Brunswick Associates Limited Partnership et al., 507 U.S. 380, (1993)."  In re U.S.N., 288 B.R.

at 395.  "In determining the existence of excusable neglect, courts are to address: (1) whether

there is a danger of prejudice to the non-movant; (2) the length of the delay and its potential

impact on judicial proceedings; (3) the reason for the delay, including whether it was within the

reasonable control of the movant; and (4) whether the movant acted in good faith."  Pioneer, 507

U.S. at 395.

   Defendant Xechem made a strategic decision to not answer this Complaint.  Although

Xechem acknowledges that part of that decision was based on not wishing to spend the money on

a defense, we will likely never know the entire decision matrix that led to the failure to answer

this complaint.  Xechem was represented by counsel at the time and no doubt benefited from

advice in making the decision to ignore this case.  Xechem now comes forth with wild and

creative arguments which, if accepted, would greatly prejudice the Plaintiff.  Based on recent

public information, Xechem appears to be on the brink of insolvency.  In the meantime, Col.

Pandey has been deprived of a living wage, severance pay, and/or consistent health coverage.

   Clearly, courts disfavor disposing of cases by defaults.  However, vacating default is not

16

an automatic relief granted merely upon request. Defendant must meet the admittedly low

standard. In this case, we submit, Xechem fails to meet that standard and the Motion to Vacate

Default should be denied.

<u>CONCLUSION</u>

For the reason state herein, an injunction should be granted requiring Xechem to continue

Col. Pandey and his family on the company's group health insurance plan.

Dated: June 18, 2008                    ZOHN & ZOHN, LLP
                                        Attorneys for Plaintiff Bhuwan Pandey


                                        By:    /s/ Patricia Mullon
                                               Patricia Mullon

17

# EXHIBIT

# J

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CIVIL NO: 07-5123

```
- - - - - - - - - - - - - -
BHUWAN PANDEY, et al.,          :
                                :
              Plaintiffs,       :
                                :
      vs.                       :
                                :
XECHEM INTERNATIONAL, et al,    :
                                :
              Defendants.       :
- - - - - - - - - - - - - -
```

Newark, New Jersey
Monday, June 23, 2008

B E F O R E:

HONORABLE PETER G. SHERIDAN, U.S.D.J.


A P P E A R A N C E S:


ZOHN & ZOHN, ESQS.,
BY:  PATRICIA MULLION ZOHN, ESQ.,
Attorneys for the Plaintffs.

McELROY, DEUTSCH, MULVANEY & CARPENTER, ESQS.,
BY:  LOIS H. GOODMAN, ESQ.,
Attorneys for the Defendants.


---

Pursuant to Section 753 Title 28 United States Code, the
following transcript is certified to be an accurate record taken
stenographcially in the above entitled proceeding.

---

IRA N. RUBENSTEIN, C.S.R.
Official Court Reporter




IRA N. RUBENSTEIN, CSR, Official Reporter, Newark, N.J.

1          THE COURT:  This is the matter of Pandey, am I saying

2     that coorectly, versus Xechem.  Did I get either of those right?

3          May I have appearances please.

4          MR. ZOHN:  Patricia Zohn for the plaintiff.

5          MR. GOODMAN:  Good afternoon, your Honor, Louis Goodman

6     from McElroy Deutsch for defendant Xechem.

7          THE COURT:  All right.  So I don't have a particular

8     order in which to handle these.

9          I guess there's a notice to squash service.  We'll do

10     that one first.

11          MR. GOODMAN:  Your Honor, good afternoon, your Honor.

12          Xechem defendants has moved to dismiss for improper

13     service.

14          THE COURT:  What happened?

15          MR. GOODMAN:  As best we can tell based upon the

16     process service affidavit and based upon the affidavit of a

17     person who supposedly accepted service, Leonard Major, he told

18     me and put in his affidavit that he is not a person to accept

19     personal service, not authorized to accept service in 2007.

20          The fact is, that he held a position as an officer of

21     Xechem for short period of time.  In 2004 he was director of

22     Xechem and plaintiffs submitted a public filing that makes that

23     point that he was director in 2004.  What plaintiff did not

24     submit is that the DeLoren file, 2004, shows that Mr. Major

25     resigned as director for personal reason.  Director only for

1    short period of time in 2004.  I have a copy of that filing,

2    pertinent pages if the Court would allow me to pass them up.

3            THE COURT:  Did you show it to your adversary?

4            MR. GOODMAN:  I'd be happy to do that.  I don't have

5    the full filing which is about a 180 pags, but I do laugh the

6    pertinent pages.

7            MR. ZOHN:  That's not necessary.  We have a brief as

8    well.

9            THE COURT:  Okay.  So do you then agree that service

10   hasn't been effectuated?

11           MR. ZOHN:  Absolutely not, Judge, it hasn't been

12   affectuated.  I merely agree as to that part and per the

13   entries.  I do not agree service --

14           THE COURT:  Okay.  So herre we are.

15           MR. GOODMAN:  Well, Mr. Mudtry (phonetic) was not

16   aurthorized to accept service.  He was not an officer, director

17   or managing agent to accept service under the rules and he has

18   stated unequivocally that he did not indicate that he was an

19   authorized agent.  Even if he had, your Honor, that's not enough

20   to make someone who's not an authoirzed entity authoirzed for

21   purposes of the rule to accept service.

22           THE COURT:  Does Mr. Mudtry work there?

23           MR. GOODMAN:  Mr. Mudtry is a part-time independent

24   consultant so he does perform a function for Xechem.  That is

25   not disputed.  So it is likely, I do believe that he was there

1    when the process server came.  But he was not -- certainly not

2    the person in charge of the office.  He's not an employee of

3    Xechem.  He's not an officer, director or managing agent.  So

4    that service upon Mr. Mudtry was not proper.

5         The other method of service raised by plaintiff in

6    their reply papers are that they think the company had actual

7    knowledge of the lawsuit.  We submit that is not sufficient.

8    Under the rules you have to serve process in accordance with the

9    rules.  That was not done.  They did serve Ramish Pandey, who

10   was another defendant.  But they served him individually.  Mr.

11   Pandey was not served as a registered agent or as director of

12   Xechem.  Had he been, we'd be having a different discussion.

13   But he was not.  Instead, they chose to affect service on Mr.

14   Mudtry.

15        THE COURT:  Okay.  We can't get through this issue of

16   service?  You'll accept service?

17        MR. GOODMAN:  I am not currently authorized to accept

18   service, your Honor, but if the Court is inclined, certainly go

19   to my client, see if I can be authoirzed or provide permission

20   with the appropriate person to affectuate proper service.

21        THE COURT:  Let me hear from Mr. Zohn first.

22        MR. ZOHN:  Good afternoon, your Honor.

23        Just like to give you the full flavor.  Xechem is a

24   Delaware corporation doing business in New Jersey.  Primary

25   place in the United States is in fact in New Jersy.  It's

1    registered office for purposes of service under the New Jersey

2    statute is an office that's closed.  They haven't updated it.

3    It's New Brunswick.  It's shut.  There isn't a person there.

4    There's no forwarding address.  Service upon the registered

5    agent or registered office is, has been rendered impossible by

6    Xechem's failure to maintain in accordance with New Jersey

7    statutes a current registered agent or office.

8          Knowing that, we served Xechem at its relocated office

9    using a process server, Guaranteed Subponea.  Guaranteed

10   Subponea went to Xechem's corporate offices now relocated and

11   upon entry, there's a certification, been put in for your Honor,

12   by entering those premise sought the person authoirzed to accept

13   service as the process server is trained to do.

14         This a process service, has done over tens of thousands

15   of process serving in the State of New Jersey.  Has never had

16   anyone say the service was improper.  Mr. Mudtry accepted

17   service.  Spelled his name for the process server and in fact is

18   so integrated within that company that service was in fact

19   effectuated.

20         Xechem can't deny they received the complaint and

21   received service because in fact they -- they disclosed it in a

22   filing to the Exchange Commission.  Promptly hired counsel to

23   deal with the matter McElroy Deutsch.

24         Mr. Mudtry to say -- well he's a contract worker today.

25   Ignores the fact that he has been an officer of this company.

1    He has been a director of this company.  He has signed or

2    sponsors on Xechem International letterhead as a representative

3    of the company in 2002.  In 2006 was listed in the Securities

4    and Exchange Commission filings as the individual handling the

5    balloting at the annual shareholders meeting.

6         This is an individual who is fully and completely

7    integrated within this corporation.  The corporation shouldn't

8    be allowed to avoid service by putting in its office individuals

9    who they can throw up the banner, they're not an employee.

10         Clearly parent authority existed and the process

11    server, you know, has indicated in his certification he made

12    actual inquiry and Mr. Mudtry indicated to him he was in fact

13    authorized to accept service.  There are some cases I listed in

14    my brief, including one where service upon a receptionist who

15    claimed authority was sufficient to constitute service upon a

16    corporation.

17         THE COURT:  Okay.  So, if we resolve the service issues

18    does that resolve the rest of the motions?

19         MR. GOODMAN:  Your Honor, if we resolve -- if the

20    service issues are resolved in favor of dismissing the complaint

21    I think that would resolve the other issues.  If not, then we

22    still have our motion to vacate the default and give us leave to

23    file the answer to the complaint if the Court finds service was

24    proper.

25         With regard to some of the points that were just made,

1    as I said earlier, we do not deny that Mr. Mudtry is involved

2    with the company, has a role with the company.  Has had a role

3    with the company.  That does not make him an employee or

4    otherwise position as to accept service on behalf of the

5    corporation and he, he denies that he said he was authorized.

6    He denies he accepted service on behalf --

7              THE COURT:  Okay.  What is the exact rule?

8              MR. GOODMAN:  For service of process?

9              THE COURT:  Right.  Is it -- with regard to

10   corporations?

11             MR. ZOHN:  I believe that's -- 4(h), your Honor.

12             THE COURT:  4(h)?

13             MR. ZOHN:  I believe so.

14             MR. GOODMAN:  Also have four colon four.

15             THE COURT:  So does the plaintiff presently have the

16   correct address where to serve?  Is there someone at that

17   address?

18             MR. GOODMAN:  Plaintiff, my understanding is, yes and,

19   your Honor, it is true that Xechem moved corporate offices about

20   within four weeks or so of this attempt to serve the complaint.

21   They've not changed the registered agent.

22             But clearly plaintiff is aware they do business at the

23   address in Edison.  They have that address.  My understanding is

24   that there is a person there who is -- there is someone in

25   charge of that office.  That person is not Leonard Margery

1    (phonetic) however.

2         THE COURT:  Okay.  Ms. Zohn, do you know who their

3    registered agent is now?

4         MR. ZOHN:  They have not changed the registered agent,

5    your Honor.  They still have the registered agent listed in the

6    office.  Listed in the public record.  The individual listed as

7    the agent is a Dr. Ramish Pandey, former CEO of the company.  He

8    has not been changed.  He is aso a party to this action and was

9    successfully served in his individual capacity.

10        But you cannot rely -- unfortunately this is in

11   violation of the New Jersey state statute with regard to

12   maintaining a registered office as Xechem is not in compliance.

13   The address at which they are operating is in fact the address

14   at which they were served.

15        THE COURT:  Okay.  With regard to this matter, I'm

16   looking at Rule 4(h).  It describes, "Serving a Corporation,

17   Partnership or Association."

18        Service in the United States which is 4(h)(1)(B),

19   "by delivering a copy of the summons and of the complaint to an

20   officer a managing or general agent, or any other agent

21   authorized by appointment or by law to receive service of

22   process and -- if the agent is one authorized by statute and the

23   statute so requires -- by also mailing a coopy of each to the

24   defendant."

25        Then under the rule, under there where it talks about

9

1    general agent comment, I should say there is a case Baade v.

2    Price, 175 F.R.D. 403, 405 (D.D.C. 1997 ).  Holding, "Generally

3    persons served must have some degree of discretion in operating

4    some phase of defendant's business or in the managment of a

5    given office must have such status that common sense would

6    expect that person to see that summons promptly gets into the

7    hands of appropriate personnel and must be working for the

8    company at the same time of service."  That's Roman v.

9    Zimmerman, 81 F. Supp 806 (N.D.N.Y. 1995).

10        My view in this case is that since Mr. Mudtry, is it,

11   was a former employee and officer and is currently a consultant

12   to the company, although he's not an employee, he was definitely

13   at their place of business.

14        It seems that the process service thought he had some

15   degree of control, would make certain that people there would,

16   appropriate person would be given notice of the lawsuit.  Also

17   since Mr. Ramish Pandey I think is the fellows name, was also

18   served, even though on an individual basis, it seems to me that

19   service was effectuated and the corporation knows of the lawsuit

20   and that the defendant should answer the suit.

21        Based on that understanding that the motion to squash

22   service, referring to transfer to a default, I'll grant the

23   motion to vacate default and I'll grant leave for Xechem to file

24   an answer or otherwise plead within 30 days.

25        MR. ZOHN:  Your Honor would you wish oral argument

1    on -- as to factual argument, I do believe strongly --

2         THE COURT:  I've read your papers.  I'm satisfied the

3    defendant should be able to put forth a defense in this case.

4    As such, I'm going to permit them to answer, otherwise permit

5    within the normal course.

6         Now, that's the vacated default.  As with regard to the

7    summary judgment, are there other defendants?

8         MR. GOODMAN:  Your Honor, there were other defendants.

9    Defendant Roman Pandey has answered.  There were four other

10    individual defendants named.  Your Honor granted their motion to

11    dismiss, to vacate service and gave plaintiff 30 days leave to

12    reserve and they did not reserve.  So these are all the parties.

13         THE COURT:  All right.  So that takes care of all the

14    motions.  Correct?

15         MR. GOODMAN:  Yes.

16         THE COURT:  All right.  Thank you.

17         (Court adjourned.)

18

19

20

21

22

23

24

25