IN THE HIGH COURT OF DELHI AT NEW DELHI

CS (OS) NO.                OF 2007

IN THE MATTER OF:

Xechem International, Inc. & Anr.                ...Plaintiffs

Versus

Xechem ( India ) Pvt. Ltd. & Ors.                ...Defendants

MEMO OF PARTIES

1.   Xechem International, Inc.
     having its office at
     379, Thornall Street
     Edison, NJ 08937
     USA.

2.   Xechem Pharmaceuticals Nigeria Limited
     Sheda Science and Technology Centre
     Technology Park, Sheda, Abuja
     Nigeria.                                    ...Plaintiffs

Versus

1.   Xechem ( India ) Pvt. Ltd.
     Having its office at:
     B-3/17, Safdarjung Enclave
     New Delhi – 110 029.

2.   Dr. Ramesh Chandra Pandey
     Chairman & Chief Executive Officer
     Xechem (India) Pvt. Ltd.
     B-3/17, Safdarjung Enclave
     New Delhi – 110 029.

3.   Shri Bhuwan Chandra Pandey
     Director
     Xechem (India) Pvt. Ltd.
     B-3/17, Safdarjung Enclave
     New Delhi – 110 029.

4.   Shri Bhairab Dutt Pandey
     Director
     Xechem (India) Pvt. Ltd.
     B-3/17, Safdarjung Enclave
     New Delhi – 110 029.

5.    Pant Nagar University of
      Agriculture and Technology
      Pant Nagar, Uttranchal,
      Through Registrar

                                        ...Defendants

                                        PLAINTIFFS

                    Through :

                            DUTTMENON DUNMORRSETT
                            Advocates for the Plaintiffs
                            30, Nizamuddin (East),
                            New Delhi-110013

      Place: New Delhi
      Date: 29-10-2007

                            Certified to be True Copy

                            Exami_____ _____ment
                            A_____ _____ fro 70
                            of The Indian Evidence Act.

*O/C*

## IN THE HIGH COURT OF DELHI AT NEW DELHI

### CS (OS) NO. 2151   2007

**IN THE MATTER OF:**

Xechem International, Inc. & Anr                    ...Plaintiffs

Versus

Xechem ( India ) Pvt. Ltd. & Ors                   ...Defendants

### I N D E X

| | | |
|---|---|---|
| 1. | Urgent Application | A |
| 2. | Format | B |
| 3. | Memo of Parties | C-D |
| 4. | Court Fees Stamp Papers for Rs.22,800/- | E-L |
| 5. | Suit for Permanent Injunction, Declaration, Rendition of Accounts, Delivery Up, etc. along affidavit | 1-25 |
| 6. | Application under Order 39 Rules 1 and 2 read with Section 151 CPC along with affidavit | 26-48 |
| 7. | Application under Order 26 Rule 9 read with Section 151 CPC along with affidavit | 49-70 |
| 8. | Application under Section 151 CPC for Exemption from filing Certified Copies of the Documents alongwith Affidavit | 71-73 |
| 9. | List of Documents filed on behalf of Plaintiffs with list of Reliance (Vol.I to VI) | 74-81 (1-1441) |
| 10. | Vakalatnama | 82 |

Note : No notice of Caveat has been
    received so far

**PLAINTIFFS**

Settled by :                    Through :
Shri Parag P. Tripathi
Sr. Advocate

New Delhi                    **DUTTMENON DUNMORRSETT**
                                 Advocates for the Plaintiffs
Dated :                    30, Nizamuddin East,
                                 New Delhi-110013.

146222
29/10/07

A

# IN THE HIGH COURT OF DELHI AT NEW DELHI

To,

    The Deputy Registrar
    Delhi High Court of Delhi.
    New Delhi

C S(OS) Case No. ___2151___ of 2007

XECHEM INTERNATIONAL, INC. & Any. Plaintiff /Appellants/
                                       Petitioner

### V E R S U S

XECHEM (INDIA) PVT. LTD. & ORS. Defendant/Respondent

Sir,

    Will be you kindly treat this accompanying his application as an urgent one in accordance with the High Court Rules and Orders.

1.    The grounds of urgency are :-

                                                          Yours faithfully,

                          Address

                                    Advocate for Petitioner /
                                      Respondent

New Delhi
Dated : 29-10-2007

DUTT MENON DUNMORRSETT
30, Nizamuddin East
New Delhi - 13.

# High Court of Delhi

B

SUIT / PETITION / O.M.P, No. 2151 OF 2007

XECHEM INTERNATIONAL INC & ANY .......Plaintiff[s] Patitioner[s]

### VERSUS

XECHEM (INDIA) PVT. LTD. & OPS .......Defendent [s] / Respondent[s]

Nature of the matter ...............................................................................
...............................................................................
...............................................................................

Statutes invocked ...............

### ADVOCATES

DUTT MENON DUNMORRSETT .......................................
3a, Nizamuddin East .......................................
New Delhi - 110013 .......................................
Plaintiff[s] Petitioner[s]                    Defendent [s] / Respondent[s]

## INTERLOCUTORY  APPLICATIONS  [IAS]

| S. No. | No. of Yr. | Filled by Pltff. / Deft. | Provisions of Laws | Nature of Relief sought | Remarks |
|--------|-----------|--------------------------|--------------------|-----------------------|---------|
|        | 2007      | Plaintiffs               | Suit for Injunction | u/o 39 Rule 1 & 2     |         |

DUTT MENON  DUNMORRSETT

5000 Rs.



IN THE HIGH COURT OF DELHI AT NEW DELHI

CS (OS) NO. 2151 OF 2007

**IN THE MATTER OF:**

Xechem International, Inc. & Anr.                    ...Plaintiffs

                                   Versus

Xechem ( India ) Pvt. Ltd. & Ors.                   ...Defendants


                                                    **PLAINTIFFS**

Through :

                                   **DUTTMENON DUNMORRSETT**
                                   Advocates for the Plaintiffs
                                   30, Nizamuddin (East),
                                   New Delhi-110013

Place: New Delhi
Date: 29-10-2007



IN THE HIGH COURT OF DELHI AT NEW DELHI

CS (OS) NO. 2151 OF 2007

**IN THE MATTER OF:**

Xechem International, Inc. & Anr.                    ...Plaintiffs

                                    Versus

Xechem ( India ) Pvt. Ltd. & Ors.                   ...Defendants

                                                          **PLAINTIFFS**

                    Through :

                                              DUTTMENON DUNMORRSETT
                                              Advocates for the Plaintiffs
                                              30, Nizamuddin (East),
                                              New Delhi-110013

Place: New Delhi
Date: 29-10-2007



IN THE HIGH COURT OF DELHI AT NEW DELHI

CS (OS) NO. 2151   OF 2007

<u>IN THE MATTER OF:</u>

Xechem International, Inc. & Anr.                    ...Plaintiffs

                                        Versus

Xechem ( India ) Pvt. Ltd. & Ors.              ...Defendants


                                                              **PLAINTIFFS**

                        Through :

                                                **DUTTMENON DUNMORRSETT**
                                                Advocates for the Plaintiffs
                                                30, Nizamuddin (East),
                                                New Delhi-110013

Place: New Delhi
Date: 29-10-2007



IN THE HIGH COURT OF DELHI AT NEW DELHI

CS (OS) NO. 2151 OF 2007

**IN THE MATTER OF:**

Xechem International, Inc. & Anr.                    ...Plaintiffs

Versus

Xechem ( India ) Pvt. Ltd. & Ors.                    ...Defendants


                                                    **PLAINTIFFS**

                    Through :

                                        **DUTTMENON DUNMORRSETT**
                                        Advocates for the Plaintiffs
                                        30, Nizamuddin (East),
                                        New Delhi-110013

        Place: New Delhi
        Date: 29.10-2007



IN THE HIGH COURT OF DELHI AT NEW DELHI

CS (OS) NO. 215  OF 2007

<u>IN THE MATTER OF:</u>

Xechem International, Inc. & Anr.                    ...Plaintiffs

Versus

Xechem ( India ) Pvt. Ltd. & Ors.                   ...Defendants

                                                                    **PLAINTIFFS**

Through :

                                        **DUTTMENON DUNMORRSETT**
                                        Advocates for the Plaintiffs
                                        30, Nizamuddin (East),
                                        New Delhi-110013

Place: New Delhi
Date: 29/10/07

1000 Rs.



IN THE HIGH COURT OF DELHI AT NEW DELHI

CS (OS) NO. 2151 OF 2007

**IN THE MATTER OF:**

Xechem International, Inc. & Anr.                    ...Plaintiffs

Versus

Xechem ( India ) Pvt. Ltd. & Ors.                    ...Defendants

                                                    PLAINTIFFS

Through :

                                        DUTT MENON DUNMORRSETT
                                        Advocates for the Plaintiffs
                                        30, Nizamuddin (East),
                                        New Delhi-110013

Place: New Delhi
Date: 29|7|07





IN THE HIGH COURT OF DELHI AT NEW DELHI

CS (OS) NO. 2151 OF 2007

**IN THE MATTER OF:**

Xechem International, Inc. & Anr.                              ...Plaintiffs

                                   Versus

Xechem ( India ) Pvt. Ltd. & Ors.                             ...Defendants


                                                              **PLAINTIFFS**

                    Through :

                                        DUTTMENON DUNMORRSETT
                                        Advocates for the Plaintiffs
                                        30, Nizamuddin (East),
                                        New Delhi-110013

Place: New Delhi
Date: 29|6|07

300 Rs.





IN THE HIGH COURT OF DELHI AT NEW DELHI

CS (OS) NO. 215( OF 2007

**IN THE MATTER OF:**

Xechem International, Inc. & Anr.                    ...Plaintiffs

                                    Versus

Xechem ( India ) Pvt. Ltd. & Ors.                    ...Defendants

                                                        **PLAINTIFFS**

Through :

                                        **DUTTMENON DUNMORRSETT**
                                        Advocates for the Plaintiffs
                                        30, Nizamuddin (East),
                                        New Delhi-110013

Place: New Delhi
Date: 20/10/07

## IN THE HIGH COURT OF DELHI AT NEW DELHI

### CS (OS) NO. २१ ८ १    OF 2007

**IN THE MATTER OF:**

1.    Xechem International, Inc.
      having its office at
      379, Thornall Street
      Edison, NJ 08937
      USA.

2.    Xechem Pharmaceuticals Nigeria Limited
      Sheda Science and Technology Centre
      Technology Park, Sheda, Abuja
      Nigeria.                                        ...Plaintiffs

                          Versus

1.    Xechem ( India ) Pvt. Ltd.
      Having its office at:
      B-3/17, Safdarjung Enclave
      New Delhi – 110 029.

2.    Dr. Ramesh Chandra Pandey
      Chairman & Chief Executive Officer
      Xechem (India) Pvt. Ltd.
      B-3/17, Safdarjung Enclave
      New Delhi – 110 029.

3.    Shri Bhuwan Chandra Pandey
      Director
      Xechem (India) Pvt. Ltd.
      B-3/17, Safdarjung Enclave
      New Delhi – 110 029.

4.    Shri Bhairab Dutt Pandey
      Director
      Xechem (India) Pvt. Ltd.
      B-3/17, Safdarjung Enclave
      New Delhi – 110 029.

5.    Pant Nagar University of
      Agriculture and Technology
      Pant Nagar,  Uttranchal,
      Through Registrar                          ...Defendants

**SUIT FOR PERMANENT INJUNCTION, DECLARATION,
RENDITION OF ACCOUNTS, DELIVERY UP, ETC.**

The Plaintiff abovenamed :

**MOST RESPECTFULLY SHEWETH:**

1.     The Plaintiff No. 1 is a Company registered in and according
       to the laws of the United States of America and its shares are
       publicly held.  The Plaintiff No.1 Company was incorporated
       on 10th Feb. 1994 and adopted the name Xechem from Xechem
       Inc. which came into existence on 30th March, 1990 and
       became a wholly owned subsidiary Company of Plaintiff No.1
       after its incorporation. The Plaintiff Companies are engaged in
       the research, development and production of generic and
       proprietary drugs from natural sources.   The Plaintiff
       Companies have tremendous amount of reputation and enjoy
       goodwill all over the world primarily in the field of
       pharmaceuticals and biological research and has been granted
       a number of patents in the related field.

2.     The Plaintiff No.2 is a wholly owned subsidiary of the Plaintiff
       No.1 Company and is registered and has principal place of
       business in Nigeria.  It was incorporated on 2nd July, 2002.

3.     This suit is being filed by Mr. Shekhar Basu, who has been
       authorized by the Plaintiff Companies by Resolution dated
       12th October, 2007. A copy of the Resolution is being filed
       separately.

4.     The Defendant No.1 Company is a private limited Company
       with its registered office and principal place of business in
       New Delhi and Defendant No.2 is the Chairman and Chief
       Executive Officer of the Defendant No.1 and Defendants No.3

and 4 are its directors. The Defendant nos. 2, 3 and 4 are real brothers and thus, related by blood. The Defendant No.5 is the Registrar of Pant Nagar University of Agriculture & Technology, Pant Nagar. The Defendant No.5 is a proforma party as relief are being sought, inter alia, in relation to an agreement dated 2.4.2005, which has been entered into between Defendant No.5 and Defendant No.1.

5.     In addition to the focus of the Plaintiff Companies on the development and production of various pharmaceutical combinations, they continue to apply their expertise to research and development to other generic compounds, by microbial fermentation or semi-synthesis and on the development of drugs from sources derived from various countries including China, India and Nigeria of traditional medicinal plants in the anti-cancer, anti-malaria, anti-fungal, anti-viral, anti-inflammatory, anti-aging, memory enhancing areas and sickle-cell disease. A copy of the Memorandum and Article of Association including the Certificate of Incorporation is being filed separately.

6.     The Defendant No.2 was the Chairman and Chief Executive Officer of the Plaintiff No.1 Company. The Defendant No.2 was appointed as Chief Executive Officer of the Plaintiff No.1 Company vide an employment agreement of February, 1994 and in terms of the agreement, the Defendant No.2 was to perform duties and responsibilities in the interest of the Plaintiff No.1 Company. Some of the important clauses of the employment agreement are re-produced below:-

> *"Section 2.   Duties.       Executive shall serve as the Chief Executive Officer of Corporation and shall properly perform such duties as may be assigned to him from time to time by the Board of Directors of Corporation.  If requested by Corporation, Executive shall serve on any committee of Corporation's Board of Directors without additional compensation.  During the term of this Agreement, Executive shall devote his*

*full time and efforts to the performance of his duties hereunder unless otherwise authorized by the Board of Directors.*

Section 3.    <u>Terms of Employment</u>.    The term of Executive's employment, unless sooner terminated as provided herein (the "Term"), shall be for a period of ten (10) years commencing on the date hereof (the "Commencement Date").

*Executive recognizes, that the services to be performed by him hereunder are special, unique and extraordinary. The parties confirm that it is reasonably necessary for the protection of Corporation that Executive agree, and accordingly, Executive does hereby agree, that he shall not, directly or indirectly, at any time during the "Restricted Period" within the "Restricted Area" (as those terms are defined in <u>Section</u> 9 (e) below) :*

*The term "Restricted Period", as used in this <u>Section 9</u> shall mean the period of Executive's actual employment hereunder plus six (6) months after the date Executive is actually no longer employed by Corporation in the event this Agreement expires or Executive's termination For Cause or if executive resigns during the Term; to the extent Executive seeks to terminate this Agreement with 120 days' prior notice but less than 180 days' prior notice, then the Restricted Period shall be automatically increased for each additional day, up to a total of 60 additional days, that such notice was delivered less than 180 days prior to the date of Executive's termination of employment, unless the Corporation wishes Executive to terminate his employment prior to the full 180 day period, in which event the Restricted Period shall remain at 120 days. The term "Restricted Area" as used in this <u>Section 9</u> shall mean the continental United States' borders.*

Section 8.    <u>Disclosure of Confidential Information</u>. *Executive recognizes, acknowledges and agrees that he has had and will continue to have access to secret and confidential information regarding Corporation, including but not limited to its products, formulae, patents, knowhow and business plans, provided such information is not in or does not hereafter become part of the public domain, or become known to others through no fault of Executive. Executive acknowledges that such information is of great value to Corporation, is the sole property of Corporation, and has been and will be acquired by him in confidence.    In*

*consideration of the obligations undertaken by Corporation herein, Executive will not, at any time, during or after his employment hereunder, reveal, divulge or make known to any person, any information acquired by Executive during the course of his employment, which is treated as confidential by Corporation, and not otherwise in the public domain; provided, however the above restrictions shall not apply in the event Corporation breaches any of its obligations hereunder or in any other agreement with Executive, and Executive subsequently leaves the employ of Corporation. The provisions of this Section 8 shall survive Executive's employment hereunder except in the event of a termination of this Agreement pursuant to Section 5.5 hereof, or as detailed in the provision above."*

A copy of the said employment agreement of February 1994 is being filed separately.

7.  The Defendant No.1 was incorporated and registered in India in January, 1994 under the Companies Act, 1956. It is pertinent to note that the Defendant No.2 who was the Chief Executive Officer of Xechem Inc. and also became Chief Executive Officer of Plaintiff No.1 Company after it was incorporated had substantial shareholding, as represented by him, in Defendant No.1 Company. The Plaintiff No.1 had been receiving supplies of raw material primarily the plant extracts from India through various sources and the Defendant No. 1 Company was established to formalize such sources by obtaining contracts for dependable supplies of plants and other raw material. Since the substantial business of Defendant No.1 was to find feed stock, i.e., herbal sources for the development of drugs to be manufactured by Plaintiffs, the Plaintiff No.1, at the representation of the Defendants, acquired the entire shareholding of Defendant No.2 in Defendant No.1 Company which was represented to be 66.6% of the equity shareholding owned and/or controlled by Defendant No.2 in the Defendant No.1 Company for a total consideration of US $ 5000. Accordingly, it was represented by

Defendant No.2 to the Plaintiff No.1 that the 66.6% shareholding had been transferred in favour of Plaintiff No.1 in the Defendant No.1 and that Defendant No.1 Company had become the subsidiary of Plaintiff No.1.

8.  The aforesaid consideration was duly paid and all subsequent statutory annual reports filed by the Plaintiff No.1 before the United States Securities and Exchange Commission, Washington incorporated a declaration to that effect. The aforesaid statutory reports were prepared and filed by the Plaintiff No.1 under the directions, representations and signature of Defendant No.2. In fact, the Defendant No.2 time and again issued statements/press releases mentioning therein the majority shareholding of the Plaintiff No.1 Company in the Defendant No.1 Company and copies of a few such declarations and statutory reports are being filed separately.

9.  The Plaintiff No.1 Company relying upon the aforesaid representations made by the Defendant No.2 that the Defendant No.1 Company was its Subsidiary Company, transferred huge sums of money from time to time into the various bank accounts maintained by Defendant No.1 in India from 1996 till April, 2007 through its wholly owned subsidiary i.e. Xechem Inc. All the expenses including the rent payments, salaries of the employees of the Defendant No.1 Company and other expenses were borne by the Plaintiff No.1 Company due to a bonafide belief that the Defendant No.1 Company was its subsidiary. The details of the some of the remittances to the bank accounts of Defendant No.1 Company and Defendant No.2 are given below. It is worth mentioning that all these remittances were sent on the instructions of Defendant No.2

who was at the relevant time was Chief Executive Officer of the Plaintiff No.1 Company.

| DATE | AMOUNT | RECIPIENT |
|---|---|---|
| 7/1/2000 | 11,000 USD | Defendant No.1 |
| 8/18/2000 | 10,000 USD | Defendant No.1 |
| 8/25/2000 | 11,394 USD | Defendant No.1 |
| 10/4/2001 | 8,000 USD | Defendant No.1 |
| 1/17/2002 | 10,000 USD | Defendant No.1 |
| 1/22/2002 | 7,000 USD | Defendant No.1 |
| 7/1/2002 | 15,000 USD | Defendant No.1 |
| 12/23/2004 | 15,000 USD | Defendant No.1 |
| 11/4/2003 | 10,000 USD | Defendant No.1 |
| 12/5/2003 | 10,000 USD | Defendant No.1 |
| 1/12/2004 | 10,000 USD | Defendant No.1 |
| 1/28/2004 | 20,000 USD | Defendant No.1 |
| 2/9/2004 | 20,000 USD | Defendant No.1 |
| 3/23/2004 | 55,000 USD | Defendant No.1 |
| 4/26/2004 | 50,000 USD | Defendant No.1 |
| 6/29/2004 | 10,000 USD | Defendant No.2 |
| 7/26/2004 | 25,000 USD | Defendant No.1 |
| 12/27/2004 | 50,000 USD | Defendant No.1 |
| 12/27/2004 | 1,50,000 USD | Defendant No.2 |
| 1/13/2005 | 50,000 USD | Defendant No.1 |
| 2/24/2005 | 50,000 USD | Defendant No.1 |
| 3/9/2005 | 50,000 USD | Defendant No.1 |
| 12/22/2005 | 25,000 USD | Defendant No.1 |
| 2/21/2006 | 25,000 USD | Defendant No.1 |
| 3/22/2006 | 30,000 USD | Defendant No.1 |
| 5/11/2006 | 1,00,000 USD | Defendant No.1 |
| 6/13/2006 | 50,000 USD | Defendant No.1 |
| 6/19/2006 | 50,000 USD | Defendant No.1 |
| 8/14/2006 | 50,000 USD | Defendant No.1 |

| 3/7/2007 | 60,000 USD | Defendant No.1 |
| 4/17/2007 | 10,0000 USD | Defendant No.1 |
| **Total:** | **11,37,394 USD** | |

A copy of the Business Banking statements issued by the Bankers reflecting the remittances as aforesaid are being filed separately.

10.    As a part of its continuing innovation in the field of pharmaceuticals and biological research, the Plaintiff No.1 Company had entered into an agreement dated 18th July, 2002 with National Institute for Pharmaceuticals Research and Development (hereinafter referred to as "NIPRD"), Federal Ministry of Health, Federal Republic of Nigeria for manufacture of a medicine, namely, Nicosan, based on the patent owned by NIPRD. The said agreement was signed by Defendant No.2 on behalf of the Plaintiff No.1 Company. In the terms of the agreement, the Plaintiff No.1 Company was granted an exclusive licence by NIPRD to practice, i.e., to make, have made, use, offer or transfer the licensed innovations including worldwide rights to the users of the said patent. Further, the said agreement also provided that the Plaintiff No.1 Company was required, with respect to the licensed innovations, to reduce it to practice and commercialize it, i.e., to manufacture it in the case of a composition or product, to practice it in the case of a process or a method, or to operate it in the case of a machine or system. It is submitted that the particular patent owned by NIPRD is for an innovation entitled "Piper guineense, Pterdcarpus osun, Eugenia caryophyllata and Sorghum bicolor extracts for treating sickle cell disease" issued by US Patent Office on 1st September 1998. A copy of the said patent as taken from US Patent Office website is being filed separately. Vide this agreement the Plaintiff No.1 Company

acquired the exclusive worldwide rights to produce, market and sell the sickle cell drug, formerly known as Niprisan and now as Nicosan under the above mentioned exclusive license agreement.

11.     Under the terms of the said agreement, the Plaintiff Company No.1 was required to ensure protection of the Intellectual Property Rights including patents owned by the NIPRD and was also obliged to maintain the ethical principles of confidentiality. Further, in terms of the said agreement the Plaintiff No.1 Company was required to use the said licensed innovation substantially in the Republic of Nigeria and/or otherwise in the defined area. A copy of the said agreement dated 2nd July, 2002 is being filed separately.

12.     In order to manufacture the said medicine, namely, Nicosan, using the patented technology of the NIPRD, the Plaintiff No. 1 Company, through its subsidiary Company i.e. Plaintiff No. 2, started setting up the necessary sate-of-the-art manufacturing plant in Nigeria, in collaboration with Shedo Science & Technology Complex, Abuja, Nigeria (SHESTCO). The medicine so manufactured there are to be sold in the African continent under the name Nicosan and in US and rest of the world under the name Hemoxin. The Plaintiff Companies have so far invested more than 5 million US dollars  in the development of technology for the production of the said medicine. A copy of the agreement entered into by Plaintiff No.2 with SHESTCO is being filed separately.

13.     The said medicine has been approved by the National Agency for Food and Drug Administration and Control (NAFDAC), which is Nigeria's medicine regulatory agency, on a limited term basis. The approval was for an initial term of two years, during which time, the Plaintiff Companies are to work toward completing confirmatory Phase 3 clinical trials in

Nigeria. In the meantime, the plaintiff companies also launched the medicine in Nigeria and are planning to embark upon the stringent US FDA approval process, which includes conducting pre-clinical and clinical trials in the United States in anticipation of the sale of the medicine in US. Gradually, the medicine to be launched commercially in other parts of the world including India.

14.    For the purpose of setting up the manufacturing facility in Abuja, Nigeria, the Plaintiff No. 1 through Plaintiff No. 2 Company placed an order for manufacture of the equipments including a Spray Dryer.  A Spray Dryer mixes a heated gas with an atomized (sprayed) liquid stream within a vessel (drying chamber) to accomplish evaporation and produce a free flowing dry powder with a controlled average particle size.  A purchase order dated 9th September, 2004 was placed on an Indian Company, namely, Acmefil based at Ahmedabad for US 139635 and another purchase order dated 9th September, 2004 for other material for an amount of US$ 73061. The part payments were made to the Indian Supplier by the Plaintiff Companies as under:

a.   US$ 39024 paid on 17th August, 2004 by Plaintiff No.1 Company;

b.   US$ 20363 paid on 21st September, 2004 by the Plaintiff No.2 Company;

c.   US$ 46900 paid on 1st October, 2004 by the Plaintiff No.2 Company.

In terms of the purchase orders the equipments were to be delivered at Nigeria. A copy of the said purchase orders is being filed separately.

15.    Sometimes in early July 2007 the Defendant No.2 ceased to be the Chairman and Chief Executive Officer of the Plaintiff No.1

Company and the present Chairman and Chief Executive Officer, namely Dr. Robert Swift, took over as Chairman and COO of the Plaintiff No.1 and 2 Companies.

16. On 2nd August, 2007, the Plaintiff No.1 Company came across an e mail message from Acmefil, the supplier in India addressed to Defendant No.2. The contents of the said mail came as a shock to the Plaintiff No.1 Company as it was revealed that the Defendant No.3 had in fact instructed the said Supplier to re-fabricate the said equipment and send to Pant Nagar University, Pant Nagar, which was meant to be sent to Nigeria. A copy of said e-mail is being filed separately. After looking into the files of the Plaintiff Company, which were earlier under the control of Defendant No.2, the Plaintiff Companies also came to know that the Defendant No.1 Company entered into an agreement with Pant Nagar University, Pant Nagar for development and manufacture of medicines for treatment of Sickle Cell Decease, for commercial use, using the patent and technology which was the subject matter of the agreement entered into between NIPRD and the Plaintiff No.1 Company. A copy of the said agreement dated 2.4.2005 entered into between the Defendant No.1 with the Pant Nagar University is being filed separately.

17. Some of the relevant clauses of the aforesaid agreement dated 2.4.2005 are reproduced hereunder :-

"**Preamble**

The G.B. Pant University of Agriculture & Technology and Xechem (India) Pvt. Ltd. a subsidiary of Xechem International Ltd. are convinced that if herbal wealth of Uttaranchal is properly harnessed, it will bring about accelerated socio-economic development of Uttaranchal.

It was realised that G. B. Pant University of Agriculture & Technology has immense technical expertise and

infrastructure where as Xechem (India) Pvt. Ltd. has requisite technical know-how and experience in developing herbal formulation and products as well as their marketing. A technical cooperation between two can be immensely beneficial to the society.

## 2. Xechem: Information

Xechem (India) Pvt. Ltd. is a subsidiary of Xechem International, Inc., through its parent Company possesses knowledge, expertise and technical know-how in many areas of Pharmaceutical, Neutraceutical, herbal and Phyto-Pharmaceutical discovery, development and international marketing. XECHEM is presently developing its proprietary natural product for the treatment of Sickle Cell Disease (SCD), for the African, Indian and the world market. Besides this, XECHEM has several patents for the treatment of cancer and other diseases. XECHEM also desires to impact positively, the treatment of Malaria, worldwide. XECHEM has the experience and the technical know-how, where it can render useful service to the state of Uttaranchal. In specific areas like 1) Cultivation of Medicinal Plants for the raw material, 2) Processing and Manufacturing, 3) Process Development, 4) Test and Analysis, 5) Formulation Development, 6) Training in current Good Manufacturing Practices 9CGMP) and current Good Lab Practices (CGMP).

H.    XECHEM will establish an experimental unit for production of herbal products. University will provide existing land and building. XECHEM will bear all expenses for addition, alternation, construction of accommodation for workers, alteration and equipment and infrastructure to make it functional and shall be

15

free to do so as and when required. It will also provide technical know-how, manpower and finances for modernization and running of the unit.

I.      University will receive 2.5% share of the net profit of sales of product generated from the facility for its contribution of land and building. This aspect will be reviewed after every 5 years."

18.    The Defendant No.1 was never authorized by the Plaintiff No.1 to enter into the aforesaid agreement dated 2.4.2005. The said agreement was concealed by Defendants No.1 to 4 from Plaintiff No.1. Further, a perusal of the agreement clearly reveals that the attempt of Defendants No.1 to 4 was to divert the technology, knowhow and the confidential information that came into the knowledge and possession of Defendants No.1 to 4 as Defendant No.2 was the Chairman and Chief Executive Officer of Plaintiff No.1 and as Defendant No.3 was an officer of Plaintiff No.2 and made illegal and fraudulent gains for themselves and their family members.

19.    Further the Defendants in connivance with each other decided to manufacture the licensed innovation of the Plaintiff Company No.1 in India, by using the patent technology owned by NIPRD and for which exclusive license was granted to the Plaintiff No.1 Company as is apparent from the agreement executed between the Defendant No. 1 Company and the Pant Nagar University wherein the Defendant No. 1 Company represented that it is the subsidiary of the Plaintiff No.1 Company. It is worth mentioning here that this agreement was executed on 2nd April, 2005 wherein it was stated that the Defendant No. 1 Company was the subsidiary of the Plaintiff No.1 Company while in the annual return filed before the Registrar of Companies, New Delhi on 30th September, 2005, there is no shareholding shown in the name

14

of the Plaintiff No.1 Company. (which has been revealed now when the Plaintiff Companies caused a search in the office of the Registrar of Companies).

20.    The Defendant No. 1 entered into the agreement with the Pant Nagar University, at the instance of Defendant No. 2, is setting up a complete plant at the Pant Nagar University complex for manufacture of the said medicine. The Defendant No.2, taking advantage of his position transferred huge amounts of money from the accounts of Plaintiff No.1 Company and the same money is being utilized to set up the plant at Pant Nagar. The Defendant No. 1 and 2, by these acts have caused and are continuing to cause tremendous amount of damage to the business and reputation of the Plaintiff Company which cannot be compensated in money.

21.    The Plaintiff No.1 Company was also able to have access to a communication dated 10th October, 2006 wherein the Defendant No.2 taking undue advantage of his position sent instructions to the said Supplier Acmefil Engineering systems Pvt. Ltd. in Ahmedabad to adjust the amount of 106.288 USD paid as an advance by the Plaintiff No.2 Company and deliver the said equipment i.e. the Spray Dryer at Pant Nagar. A copy of the said letter dated October 10, 2006 is being filed separately. A perusal of the said letter confirms that the Defendants in connivance with each other are setting up a plant for manufacture of medicine for sickle cell disease at Pant Nagar in blatant violation of the agreement Plaintiff No.1 Company executed with NIPRD.

22.    Alarmed by these revelations, the Plaintiff No. 1 Company carried out necessary search in the office of the Registrar of Companies, New Delhi and came to know that the Defendant No.1 Company has been formed as a private limited

Company with total shareholding in the name of Defendant Nos.2, 3 and 4 and there was no share holding in the name of the Plaintiff Company. A summary of information as extracted from records of the Registrar of Companies, Delhi as on 8th October, 2007 with regard to the Defendant No.1 Company is as under:

Authorized Capital: INR 2,000,000 divided into 200,000 shares of INR 10.00 each

| Name of Shareholder | Initial allotment at the time of formation (No. of shares) | Allotment made in December 1999 (No. of shares) | Total Shareholding as on 8th August, 2007 as per records of RoC (No. of Shares) |
|---|---|---|---|
| Bhuwan Chandra Pandey | 5 | 86,530 | 86,535 |
| Bhairab Dutt Pandey | 5 | 100 | 105 |
| Ramesh Chandra Pandey | 10 | | 10 |
| Total | 20 | 86,630 | 86,650 |
| Share Application Money (Number of shares) (Pending allotment of shares) | | | 4,55,535 |

Certified copies of the annual returns filed by the Defendant No.1 Company from the year 1998 to 2005, annual reports for the years from 1994-95 to 1995-96, 1997-98 to 2001-2002 and 2004-2005 and Form 2 with the Registrar of Companies, Delhi are being filed separately. There is no annual return filed by the Defendant No.1 Company after 2005.

23.    Further, it is to be noted that the consideration for allotment of 86,650 shares totaling Rs.866500 (19000 US dollars) was paid and sent by the plaintiff No.1 company during the year 1999-2000. However, the defendants instead of allotting the shares of defendant No.1 company in the name of the Plaintiff No.1

16

company mis-utilized the said amount and allotted the shares to themselves. Not only this, the plaintiff company urther remitted another amount of 79000 USD for purchase of equity in defendant No.1 company. A copy of the Form 10-QSB filed by the Plaintiff No.1 Company before Securities and Exchange Commission, USA showing the said remittance of 19000 US dollars for increase in equity of Defendant No.1 and 79000 US dollars towards allotment of shares is being filed separately.

24.   It is clear that the shares in Defendant No.1 which were stated to have been transferred in the name of Plaintiff No. 1 Company by Defendant No.2 were never transferred and the Defendants No. 1 to 4 in connivance with each other continued to give false statements and the Defendant No. 2, in particular, committed a breach of his employment contract by acting against the interest of the petitioner No. 1 Company by his acts of not transferring the shares, giving false statements and by entering into the agreement with the Pant Nagar University   for manufacture of the pharmaceutical preparations using the patented technology which was licensed to the petitioner No.1 Company. The Defendant No. 2 took undue and illegal advantage of his position of being a CEO of the Plaintiff No.1 Company.

25.   The records from the office of Registrar of Companies as on 8th October, 2007 clearly indicate that there was no shareholding in the name of the Plaintiff No.1 Company. Apparently the Defendant No.2 while being the CEO of the Plaintiff Company, took undue advantage of his position and in fact did not take any steps to transfer the shareholding in the favour of Plaintiff No.1 Company and continued to promote his own business for the benefit of himself and his family members at the cost of the Plaintiff Companies. The Defendants made wrong and fraudulent statements/

17

representations that Defendant No.1 Company was a subsidiary of the Plaintiff No.1 Company.

26. The Defendants No.2 to 4 have misrepresented and/or made fraudulent representations and/or perpetrated a fraud on the Plaintiffs by representing to the Plaintiffs that the Defendant No.1 was a subsidiary of Plaintiff No.1 Company and was engaged in procuring raw material for the Plaintiffs and that Defendant No.1 was a subsidiary of Plaintiff No.1 and that the Defendants No.2 to 4 were acting in the interest of the Plaintiffs while on the other hand these representations were false to their knowledge and were made with an intent to deceive the Plaintiffs. Further, the Defendants No.2 to 4 were acting in concert to defeat and delay the bona fide rights of the Plaintiffs and make illegal and unlawful gains to enrich themselves at the cost of the Plaintiffs.

27. The representative of Plaintiff Companies, namely, Shekhar Basu has visited Pant Nagar University and found that sheds have been constructed and some part of the machinery and/or equipment has been installed.

28. The Defendants vide their aforesaid conduct have caused and are continuing to cause an irreparable loss and damage to the Plaintiff Companies and unless restrained the Plaintiff Company may suffer not only suffer further huge losses but also may not be able to discharge its obligations under the agreement executed with the NIPRD.

29. The NIPRD agreement dated 18.7.2002 is valid and is subsisting and the parties thereto are acting thereunder. The Defendants have never had nor do they have any right to use the patent technology for manufacture of the medicine for Sickle Cell Disease. The agreement entered into between

18

Defendant No.1 and Defendant No.5 dated 2.4.2005 is unauthorized and illegal. In any event, the said agreement having been entered into by fraudulent representations and/or misrepresentations, is void and/or voidable and is liable to be delivered up and cancelled.

30. From the records filed before the Registrar of Companies by Defendant No.1, it appears that shares have been allotted in 1999 to Defendant No.3 and 4. By this allotment, 86530 shares have been allotted to Defendant No3. and 100 shares have been allotted to Defendant No. 4. Therefore, as of today, the shareholding of Defendant No. 2 is 10 shares i.e 0.011% of the total shareholding of 86650 shares, shareholding of Defendant No.3 is 86535 i.e. 99.86% and the shareholding of Defendant No. 4 is 195 shares i.e. 0.12%. This allotment of shares is illegal, void and is liable to be declared as illegal and void, as aforesaid, USD 19000 were remitted by the Plaintiff No.1 for increase its capital in Defendant No.1 during the year 1999-2000. However, the Defendant Nos.1 to 4 instead of allotting the shares to Plaintiff No.1 against the said remittance, allotted shares to themselves.

31. Further, the Defendant No.2 was a trustee for the Plaintiff No.1 in respect of 66.6% of equity shareholding of Defendant No.1 and no allotment could have taken place without the consent of Plaintiff No.1. Therefore, the allotment in December 1999 of 86630 shares is illegal and liable to be declared as such.

32. That all the activities and expenses of Defendant No.1, including but not restricted to acquiring of assets, moveable as immovable and research and development facilities etc., have been funded by the money transferred from the accounts of Plaintiff No.1 Company and therefore, the Plaintiff No.1 Company has the complete right, title and interest in such assets acquired by Defendant No.1.

33.  The Plaintiffs further state that Defendant 1 to 4 are jointly and severally liable for transfer of the shareholding of the Defendant No.1 Company in favor of Plaintiff No. 1 Company and appropriate directions ought to be passed for the same.

34.  That as the agreement dated 2.4.2005 entered into between the Defendant No.1 and Defendant No.5 is void and illegal, the Plaintiffs are entitled to the relief of delivering up and canceling of the said agreement and/or a decree of permanent injunction restraining Defendants No.1 to 4 and/or 5 to take any further steps in relation to the said agreement dated 2.4.2005.

35.  The Defendants are infringing the patents of the Plaintiff No.1 Company owned by it and/or exclusively licensed to it, which is being done without consent and/or knowledge of the Plaintiffs and the Plaintiffs are entitled to a decree of permanent injunction restraining the Defendants No.1 to 4 to infringe the aforesaid patents in any manner whatsoever.

36.  Since the consent of the Plaintiff No.1 to transfer huge funds to Defendant No.1 was obtained by the fraud and/or misrepresentations of the Defendants No.2 to 4 that the Defendant No.1 is the subsidiary Company of Plaintiff No.1, the Plaintiffs are entitled to the said majority shares of Defendant No.1 and a decree directing Defendants No.1 to 4 to register the aforesaid ownership of shares of Defendant No.1 Company in the name of Plaintiff No.1. As stated hereinbefore, since the allotment of shares by Defendant No.1 in December 1999 is void and illegal, the Plaintiffs are entitled to a declaration that the said allotment is void and illegal. Defendants No.1 to 4 having been the beneficiary of transfer of huge funds from Plaintiff No.1 are liable to render true and full accounts of the operation of Defendant No.1 and/or in any event since the Plaintiff No.1 is the majority shareholder

of Defendant No.1, it is entitled to rendition of accounts from Defendant No.1 to 4.

37. The Plaintiff Companies have made inquiries and have come to know that Defendant Nos.1 to 4 in connivance with the Defendant No.5 are in the process of starting active production of Nicosan medicine using the patent technology for which the Plaintiff Companies have exclusive licence, at their plant at Pant Nagar University, Pant Nagar, Uttranchal. The said act of defendants would cause irreparable loss and damages to the Plaintiff Companies, therefore, the Plaintiff Companies are entitled to an ex-parte ad interim injunction to protect their interest.

38. Further, the Plaintiff Companies have also come to know that since the Plaintiff Companies have stopped sending remittances to Defendants, the Defendants are planning to transfer/sell a part of their shareholding in Defendant No.1 Company to third parties. In view of the facts enumerated hereinabove, the Defendant Companies have no right to transfer/sell/assign and /or alter the shareholding pattern of Plaintiff Companies in any manner whatsoever. The Plaintiff Companies are, therefore, entitled to ex-parte ad interim relief to protect their interest.

39. The cause of action arose in October, 2007 when the Plaintiff Companies came to know of the nefarious designs and plans of the Defendant No. 1 to 4 and is continuing till date and no part of is barred by limitation and arises every day the Defendants continue with their activities in furtherance of the agreement executed with the Defendant No.5 and do not take steps to transfer the shares of Defendant No.1 in the name of the Plaintiff No.1 Company.

40. This Hon'ble Court has the jurisdiction to try and entertain this suit as the Defendant No.1 has its principal place of

21

business as well as registered office in Delhi and Defendant No. 2 to 4 are directors of the Defendant No. 1.

41.    The Plaintiffs seek leave of this Hon'ble Court under Order 2 Rule 2 of CPC for making additional claims against the Defendants.

42.    The Defendants No.1, 2 and 3 have filed claims before U.S. District Court, New Jersey on account of alleged claims of unpaid salaries and other dues and the Plaintiff has also filed the counter claim against Defendant No.2. The copies of the claims and the counter claims filed by parties are being filed separately.

43.    The value for the purpose of the court fees is as follows:

(a)    for an order of permanent injunction restraining the Defendants, their servants, agents or otherwise from continuing with their activities in furtherance of the agreement dated 2nd April, 2005, the relief is valued for the purpose of a court fee and jurisdiction at Rs.200/- and the court fees of Rs.20/- is affixed thereon;

(b)    for an order of permanent injunction restraining the Defendants No.1 to 4 and each one of them, themselves and/or through their servants, agents or otherwise from representing themselves as agents or subsidiary Companies of Plaintiff No.1, the relief is valued for the purpose of court fee and jurisdiction at Rs.200/- and court fee of Rs.20/- is affixed thereon;

(c)    for an order of permanent injunction restraining the Defendants No.1 to 4, their servants, agents or otherwise from operating the bank accounts of Defendant No.1 Company maintained with HSBC

22

Bank, Vasant Vihar Branch and Punjab National Bank at Haldi, Pant Nagar, the relief is valued for the purpose of court and jurisdiction at Rs.200/- and court fee of Rs.20/- is affixed hereon;

(d) for an order of permanent injunction restraining the Defendants No.1 to 4 and each one of them, themselves and/or through their servants, agents or otherwise from representing themselves as agents or subsidiary Companies of Plaintiff No.1, the relief is valued for the purpose of court fee and jurisdiction at Rs.200/- and court fee of Rs.20/- is affixed thereon;

(e) for a direction to the Defendants No. 1 to 4 to transfer 66.66% of the shares of the Defendant No.1 Company in favor of Plaintiff No.1 Company, the relief is valued at 20,50,000/- and court fee of Rs. Is paid thereon;

(f) for a direction to the Defendant No. 1 to 4 to provide access to all the records maintained with regard to the agreement dated 2nd April, 2005 and books of accounts and bank accounts of Defendant No. 1 , the relief is valued at Rs. 200/- and the court fee of Rs. 20 is paid thereon.

Thus the suit is valued for the purpose of court fee and jurisdiction at Rs. 20,51,000 and the court fee of Rs. is paid thereon.

44. In the circumstance the Plaintiff prays for:

(a) A decree of permanent injunction restraining the Defendant No. 1 to 4 to give any effect to and/or to take any further steps in relation to the agreement dated 2nd April, 2005 executed with the Defendant No. 5;

(b) for a decree of permanent injunction restraining the Defendants No.1 to 5 from manufacturing the said Nicosan

23

tablet i.e. the medicine for sickle-cell disease and thereby infringing the Patents for which the Plaintiff Companies have exclusive Licence or to carry on any activities in furtherance to agreement dated 2nd April, 2005 executed between Defendant No.1 and Defendant No.5;

(c)    A decree of direction to Defendants No.1 to 4 to deliver up and cancel the agreement dated 2nd April 2005;

(d)    A decree of permanent injunction restraining the Defendants to continue with the infringement of the patents for which the Plaintiff No.1 Company has the exclusive license;

(e)    A decree directing the Defendants No.1 to 4 to register the ownership of 66.6% shares of Defendant No.1 Company in the name of Plaintiff No.1;

(f)    A decree of declaration that the allotment of shares made by Defendant No.1 to Defendants No.3 to 4 in the year 1999 is void and illegal;

(g)    A decree of rendition of accounts directing Defendants No.1 to 4 to render true and full accounts of the operation of Defendant No.1;

(h)    An order for cost in the present proceedings; and

(i)    Pass such other further orders as this Hon'ble Court may deem fit and proper in the facts and circumstances of the case.

PLAINTIFFS

Through :

Settled by :
Shri Parag P. Tripathi,
Sr. Advocate

DUTTMENON DUNMORRSETT
Advocates for the Plaintiffs
30, Nizamuddin (East),
New Delhi-110013

New Delhi
Dated : 29.10.2007

## VERIFICATION

I, Shekhar K. Basu, Authorized Rep of Plaintiff above named, do hereby

verify that the contents of paras 1 to 32 and 42 of the plaint are based on

record and believed to be true and contents of paras 33 to 41 and 43 of the

plaint are based on legal advice and believed by us to be true and last para

is prayer to this Hon'ble Court.

      Verified at New Delhi on this 2nd day of October, 2007.


**PLAINTIFFS**

# IN THE HIGH COURT OF DELHI AT NEW DELHI

## CS (OS) NO. 2151 OF 2007

### IN THE MATTER OF:

Xechem International, Inc. & Anr.                    ...Plaintiffs

                         Versus

Xechem ( India ) Pvt. Ltd. & Ors.                   ...Defendants

### AFFIDAVIT

I, Shekhar K. Basu, son of Shri Robin Kumar Basu, aged about 53 years, of 39, Heathcote Drive, Mount Kisco, New York-10549, presently at New Delhi, do hereby solemnly affirm and declare as under:

1.    That I am the Authorised Representative of the Plaintiff Companies and being duly authorized by the Plaintiff Companies am competent to affirm this affidavit.

2.    That I have read the accompanying plaint and state that the contents of paragraphs 1 to 38 are based on records of the Plaintiff Companies and believed by me to be true and those of paragraphs 39 to 44 are based on legal advice and believed by me to be true and last para is prayer to this Hon'ble Court.

3.    That the documents are true copies of their originals.

                                                    DEPONENT

### VERIFICATION:

I, the deponent above named, do hereby verify that the contents of the above affidavit are true and correct to my knowledge. No part of it is false and nothing material has been concealed therefrom.

Verified at New Delhi on this 2 day of October, 2007

                                                    DEPONENT

IN THE HIGH COURT OF DELHI

Xechen Inf.... 2151/07

Xe chen India (P) (td ....DEFENDANT/RESPORDENT

57

% 30.10.2007

Present:    Mr Parag P. Tripathi, Sr. Advocate with Ms. Karuna Dutt
           and Ms Ekta for the Plaintiff.

+ **CS (OS) 2151/2007**

*

    Register the plaint as a suit.   Issue summons, returnable on 17.03.2008 before the Joint Registrar.   The summons be served in the ordinary manner as well as by other modes prescribed under Order 5 Rule 9 of the Code of Civil Procedure, 1908 upon the plaintiff filing appropriate process fee and taking appropriate steps within 5 days.

**IA No. 12385/2007 in CS (OS) 2151/2007**

    Issue notice returnable on 13.11.2007.

    In the meanwhile, the defendants 2 to 4 shall maintain status quo with regard to their shareholdings in defendant No.1.

    The provisions of Order 39 Rule 3 CPC be complied with within three days.

    It is made clear that on the next date of hearing this application would be taken up for hearing in respect of the entire scope of the interim prayer made herein.

**IA No. 12386/2007 in CS (OS) 2151/2007**

    Renotify on 13.11.2007.

**IA No. 12387/2007 in CS (OS) 2151/2007**

    The learned counsel for the plaintiff undertakes to file the certified

copies of the documents within four weeks.

This application stands disposed of in terms of this undertaking.

**BADAR DURREZ AHMED**
**(JUDGE)**

**October 30, 2007**
SR

DIGITIZED DATA

VERIFIED / TRUE COPY

37

% 13.11.2007

Present:    Mr Parag Tripathi Sr Advocate with Mr Gaurav Miglani for
the Plaintiff.
Mr Rohit Sharma for the Defendants 1-4.

+    **CIA 12385/2007 IN CS (OS) 2151/2007**
*

The learned counsel for the defendants 1-4 seeks time to file
the reply to this application.  The same be filed within two weeks.  The
rejoinder be filed within one week thereafter.

Renotify the application for hearing on 14.12.2007.

**IA 12386/2007**.

After hearing counsel for the parties, Mr Neeraj Kumar,
Advocate, Ground Floor V Hans Bhawan, 1, Bahadur Shah Zafar Marg,
New Delhi-11002 (Ph. 9312202283)  is appointed as the Local
Commissioner to visit the premises of the defendant No.1 for the
purposes of initialing the accounts books that are being maintained by the
defendant No.1.  The defendants shall produce the photo copies of the
initialed accounts books for the perusal of this Court as and when
directed.  The Local Commissioner shall visit the said premises of the
defendant No.1 after giving notice to the counsel for the plaintiff so that
one advocate from the side of the  plaintiff shall also be present during the
said visit.  The local Commissioner  be paid  a fee of Rs 20,000/- by the
plaintiff.  The commission be carried out within three days.

The report of the Local Commissioner be filed within a week.

This application is disposed of.

**BADAR DURREZ AHMED**
**(JUDGE)**

**November 13, 2007**
*J*

19.11.2007

Present:     Ms. Anuradha Dutt with Ms. Ekta Kapil,
             Mr. Sindhu Sinha & Ms. Bhavishya Dua for the Plaintiff.

             Mr. Rahul Sharma for the defendant Nos.1 to 4

IA No.13119/ 2007 in CS(OS). 2151/2007

The Learned Counsel for the defendant Nos. 1 to 4 seeks time to file a reply
to this application. The same be filed within two weeks. The rejoinder, if
necessary, be filed within a week thereafter.

Renotify on 14.12.2007.

                                        BADAR DURREZ AHMAD
                                             (JUDGE)